1  **GLANCY PRONGAY & MURRAY LLP**
2  LIONEL Z. GLANCY (#134180)
   ROBERT V. PRONGAY (#270796)
3  JASON L. KRAJCER (#234235)
4  LEANNE H. SOLISH (#280297)
   1925 Century Park East, Suite 2100
5  Los Angeles, CA 90067
6  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
7  Email: rprongay@glancylaw.com

8  *Counsel for Lead Plaintiff Joe Cammarata*
9  *and Lead Counsel for the Class*

10           **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
11

12  TREVOR MILD, Individually            Case No.: 2:18-cv-04231-RGK-JEM
    and on Behalf of All Others Similarly
13  Situated,                           **CLASS ACTION**

14                  Plaintiff,          Hon. R. Gary Klausner
15
16          v.                          **AMENDED CLASS ACTION**
                                        **COMPLAINT FOR VIOLATIONS**
17  PPG INDUSTRIES, INC.,               **OF THE FEDERAL SECURITIES**
18  MICHAEL H. MCGARRY,                 **LAWS**
    VINCENT J. MORALES, and
19  MARK C. KELLY,                      **DEMAND FOR JURY TRIAL**
20
                    Defendants.
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      NATURE OF THE ACTION.........................................................................1

II.     JURISDICTION AND VENUE...................................................................4

III.    PARTIES.....................................................................................................5

IV.     SUMMARY OF THE FRAUD....................................................................8

      A.    PPG's Business and Background............................................................8

      B.    PPG's Earnings Management Scheme.....................................................8

      C.    The Truth Emerges................................................................................17

          1.  PPG Announces Potential Accounting Violations After Receiving An Internal Report Concerning Such Violations............................17

          2.  Shortly Thereafter, PPG Announces an Update to Its Investigation, That Its Financial Statements for the 2017 Fiscal Year and Quarters Within That Year Should No Longer Be Relied Upon, and That Kelly, PPG's Vice President, Controller, and Principal Accounting Officer, Had Been Terminated..........................................................18

          3.  PPG Provides Restated Financial Results as a Result of Its Concluded Investigation .................................................................21

             a)  As Part of the Restatement, PPG's Management Determined That a Material Weakness in PPG's Internal Control Over Financial Reporting Existed .................................................22

             b)  PPG's Remediation Efforts ...................................................23

V.      DEFENDANTS' MATERIALLY FALSE AND/OR MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD....................................25

      A.    Defendants' False and Misleading Statements Regarding PPG's Fourth Quarter and Fiscal Year 2016 Financial Results...........................................27

      B.    Defendants' False and Misleading Statements Regarding PPG's First Quarter 2017 Financial Results......................................................................34

      C.    Defendants' False and Misleading Statements Regarding PPG's Second Quarter 2017 Financial Results......................................................................38

D.      Defendants' False and Misleading Statements Regarding PPG's Third Quarter 2017 Financial Results ..................................................................43

E.      Defendants' False and Misleading Statements Regarding PPG's Fourth Quarter and Fiscal Year 2017 Financial Results................................................46

F.      Defendants' False and Misleading Statements Regarding PPG's First Quarter 2018 Financial Results .................................................................53

VI.     ADDITIONAL SCIENTER ALLEGATIONS ...............................................55

A.      PPG and Kelly Failed to Maintain Effective Internal Controls............55

B.      Defendants' GAAP Violations ...........................................................61

C.      Kelly Intentionally Manipulated PPG's Financial Results During the Class Period Despite His Extensive Experience in SEC Reporting, Internal Controls, and SOX Compliance ..................................................................63

D.      PPG's Global Code of Ethics and Code of Ethics for Senior Financial Officers ...............................................................................................66

E.      PPG's Accounting Misstatements Involve Irregularities, Not Mere Errors…………………………………………………………………..68

VII.    CORPORATE SCIENTER ALLEGATIONS ................................................73

VIII.   LOSS CAUSATION .....................................................................................74

IX.     POST-CLASS PERIOD DISCLOSURES .....................................................80

X.      CLASS ACTION ALLEGATIONS...............................................................80

XI.     APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE).........................................................................82

XII.    INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ............................................................84

XIII.   CLAIMS FOR RELIEF .................................................................................85

XIV.    PRAYER FOR RELIEF .................................................................................91

XV.     DEMAND FOR TRIAL BY JURY ...............................................................92

Lead Plaintiff Joe Cammarata ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by, and regarding, PPG Industries, Inc. ("PPG" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Lead Counsel's investigation into the factual allegations contained herein is continuing, and many of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their custody or control. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

# I.   NATURE OF THE ACTION

1.   This is a class action on behalf of persons or entities who or which purchased or otherwise acquired PPG securities between January 19, 2017 through May 10, 2018, inclusive (the "Class Period") and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.   PPG is one of the largest – if not the largest – paint and coating companies in the world. For years, it has reported stable and predictable earnings and consistently met or beat consensus analyst estimates for adjusted earnings per share, a metric that the Company has touted as one of the most important measures of its financial performance. During the spring and early summer of 2018, however, it came to light that PPG's senior-most accounting officer was engaged in an earnings management and smoothing scheme in which he intentionally manipulated

PPG's financial results with improper accounting adjustments that caused certain of the Company's financial metrics (including income from continuing operations and adjusted earnings per share) to be materially misstated.  The revelation of this fraud led to material declines in PPG's stock price and caused substantial damage to investors.

3.     On April 19, 2018, PPG announced that it had received a report through its internal reporting system alleging violations of PPG's accounting policies and procedures in relation to certain expenses that should have been accrued in the first quarter of 2018.  PPG further stated that it had immediately launched an investigation into the allegations and, as a preliminary matter, the Company had already identified approximately $1.4 million of expenses that should have been accrued in the first quarter of 2018, but that the Company was able to correct the error before the release of its results for the quarter.  PPG further disclosed that the internal report had alleged there were potentially up to $5 million in other expenses that had not been properly accrued during the first quarter of 2018 and that an investigation by PPG's Audit Committee, with the assistance of outside counsel, was ongoing.

4.     On this news, the Company's shares fell $3.55 or approximately 3.136% to close at $109.64 on April 19, 2018, damaging investors.  While this type of stock movement (~3%) is not unusual for certain stocks, for a low-volatility stock like PPG's, a price decline of 3% was rare and had only occurred a handful of other times during the course of the sixteen month Class Period.

5.     Less than a month later, on May 10, 2018, after market close, PPG announced that it had identified multiple additional accounting misstatements, including further errors in the first quarter of 2018 and the improper shifting of expenses between quarters throughout 2017.  PPG also simultaneously announced that it had fired Mark Kelly, its Controller and Principal Accounting Officer, effective immediately.  A *Wall Street Journal* article published the same day

AMENDED CLASS ACTION COMPLAINT
2

observed that PPG was investigating "irregularities" (an accounting term that denotes intentional misstatements as opposed to mere inadvertent errors) and included a comment from a former SEC official who said that the errors appeared to be intentional.

6. On this news, the Company's shares fell $5.68 or approximately 5.353% to close at $100.43 on May 11, 2018, damaging investors. There was only one other day during the Class Period when PPG's stock had declined more than 5% in a single trading session.

7. As additional evidence came to light, it became clear that Mr. Kelly had orchestrated a subtle but systematic earnings management and smoothing scheme, in which he employed a variety of improper accounting adjustments to delay the recognition of certain expenses and to misclassify certain categories of income. One of the primary purposes of this scheme was to help PPG achieve consensus analyst estimates for adjusted earnings per share. The scheme was achieved by shifting expenses from quarters in which PPG was not able to meet those estimates using honest accounting to quarters in which Mr. Kelly expected a cushion to absorb those charges. Mr. Kelly also used other accounting tricks to help artificially pad PPG's reported financial performance, such as reclassifying income from discontinued operations to income from continuing operations.

8. On June 28, 2018, PPG issued a restated annual report for fiscal 2017, which not only acknowledged multiple material misstatements in each quarter in 2017, but also identified further material misstatements in the fourth quarter and fiscal year of 2016. PPG also acknowledged a material weakness in its internal controls over financial reporting and admitted that Mr. Kelly had directed his subordinates to override PPG's internal controls during the financial close process to enter the enter improper accounting adjustments, without disclosing these overrides to others in senior management, the Audit Committee, or the Company's outside auditor. As PPG admitted, "[t]hese actions often occurred after the end of a quarter

and close to the end of the financial close process for the quarter and had the effect of positively impacting income from continuing operations reported for such quarter."   Based on PPG's own admissions and remedial actions, the intentional nature of the improper accounting adjustments directed by Mr. Kelly is obvious and well-nigh indisputable.

9.    As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.   Accordingly, Plaintiff seeks to pursue securities fraud claims under Section 10(b) of the Exchange Act against Defendants Kelly and PPG.   Plaintiff also seeks to pursue control-person claims under Section 20(a) of the Exchange Act against Defendants Michael McGarry (PPG's CEO) and Vincent Morales (PPG's CFO), as well Mr. Kelly.

## II.    JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

11.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1391(b) as the Company conducts business and maintains facilities within this judicial district.

13.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

### III.   PARTIES

14.   On August 27, 2018, the Court appointed Joe Cammarata as Lead Plaintiff.  Plaintiff, as set forth in his previously filed PSLRA certification (ECF No. 15-2), incorporated herein, purchased PPG securities during the Class Period and suffered damages as a result of the violations of federal securities laws and false and/or misleading statements and/or material omissions alleged herein.

15.   Defendant PPG is a company incorporated under the laws of Pennsylvania.  PPG's principal executive offices are located at One PPG Place, Pittsburgh, Pennsylvania.  PPG maintains principal manufacturing and distribution facilities in Sylmar, California, and principal research and development centers in Burbank, California.  PPG's common stock trades under the ticker symbol "PPG" on the New York Stock Exchange ("NYSE"), which is an efficient market.

16.   Defendant Michael H. McGarry ("McGarry") has been the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board") since September 1, 2015 and September 1, 2016, respectively.  McGarry joined PPG in 1981, serving in various roles, most recently as President and Chief Operating Officer from March 2015 until he was appointed CEO.  McGarry is a graduate from the University of Texas and completed the Advanced Management Program at Harvard Business School.

17.   Throughout the Class Period, McGarry frequently spoke to investors and analysts on conference calls.  McGarry possessed the power and authority to control the contents of the Company's public filings with the SEC.  During the Class Period, McGarry signed and certified the accuracy of PPG's Forms 10-K for the fiscal years ended December 31, 2016 and December 31, 2017, and certified the accuracy of PPG's Forms 10-Q for each quarterly period from March 31, 2017 through September 30, 2017.

18.   Defendant Vincent J. Morales ("Morales") has served as Senior Vice President and Chief Financial Officer ("CFO") of PPG since March 1, 2017.

Morales joined PPG in 1985 in the corporate controller's office, and advanced through various finance and accounting roles at PPG.  He previously was PPG's Vice President of Finance from June 2016 until he was appointed CFO.  Morales received his bachelor's degree in accounting from Robert Morris University and an MBA from the Ohio State University.

19.    Throughout the Class Period, Morales frequently spoke to investors and analysts on conference calls.  Morales possessed the power and authority to control the contents of the Company's public filings with the SEC.  During the Class Period, Morales signed and certified the accuracy of PPG's Forms 10-K for the fiscal year ended December 31, 2017 and Forms 10-Q for each quarterly period from March 31, 2017 through September 30, 2017.

20.    Defendant Mark C. Kelly ("Kelly") served as the Company's Vice President and Controller from September 2013 through May 10, 2018, when PPG terminated his employment, effective immediately.  At PPG, Kelly was the Principal Accounting Officer from at least April 24, 2017 through April 25, 2018, when he was placed on administrative leave.  As the Principal Accounting Officer, he was responsible for internal and SEC reporting, corporate financial planning and analysis, and internal controls and compliance with the Sarbanes-Oxley Act of 2002 ("SOX"), among other things.  Kelly has over 30 years of managerial financial and accounting experience.  From October 2011 to September 2013, Kelly served as the Vice President of Corporate Finance at Rockwell Holdings, Inc., where he was the Principal Accounting Officer and Treasurer and also was responsible for SEC reporting and internal controls and SOX compliance, among other things.  From 2003 to 2010, Kelly served in various management roles for Bristol-Myers Squibb, culminating in service as Vice President, Finance – Reporting and Productivity. From 1996 to 2003, Kelly served in various management roles at DaimlerChrysler, rising to Senior Manager, Treasury Planning and Project Finance.  Kelly began his career at the public accounting firm of Deloitte (formerly Deloitte & Touche), rising

from a staff accountant in audit services in 1985 to a Senior Manager in Accounting/Auditing Services in 1996.  Kelly earned an M.B.A. from Michigan State University and a B.S. in accounting from the University of Utah.  He is a certified public accountant ("CPA").

21.     Throughout the Class Period, Kelly possessed the power and authority to control the contents of the Company's public filings with the SEC.  During the Class Period, Kelly signed PPG's Form 10-K for the fiscal year ended December 31, 2017 and Forms 10-Q for each quarterly period ended March 31, 2017 through September 30, 2017.

22.     Kelly was a high-ranking officer and management-level employee whose scienter is imputable to PPG.  He was subject to PPG's Global Code of Ethics and the supplemental Code of Ethics for Senior Financial Officers and was required to "[p]rovide full, fair, accurate, timely, and understandable disclosure in reports and documents filed with the SEC as well as other public communications[,]" and to "[p]romptly report any violations . . . to the PPG Audit Committee."  *See* Sec. VI.D, *infra*.  As discussed below, Kelly was aware of and an active participant in the fraud described herein, and his knowledge is imputed to PPG for the purposes of assessing corporate scienter.

23.     Defendants McGarry, Morales, and Kelly are collectively referred to as the "Individual Defendants."  Defendant PPG and the Individual Defendants are collectively referred to as "Defendants."

24.     The Individual Defendants, because of their high-ranking positions and direct involvement in the everyday business of the Company, possessed the power and authority to control the contents of PPG's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their

1  issuance or cause them to be corrected.  The Individual Defendants are liable for the
2  false statements pleaded herein, as those statements were each "group-published"
3  information, the result of the collective actions of the Individual Defendants.

4  **IV.  SUMMARY OF THE FRAUD**

5      **A.  PPG's Business and Background**

6      25.  PPG manufactures and distributes a broad range of paints, coatings, and
7  specialty materials.  Founded in 1883, the Company became a publicly traded
8  company in 1978, when it conducted its initial public offering and became listed on
9  the NYSE.  PPG is ranked 183 on the Fortune 500, and is one of the largest – if not
10 the largest – paint and coatings companies in the world.

11     26.  According to the Company in its 2017 Annual Report, PPG's "vision is
12 to be the world's leading coatings company by consistently delivering high-quality,
13 innovative and sustainable solutions that customers trust."  In line with this vision,
14 Coatings World ranked PPG the top paint and coatings manufacturer in the world, in
15 terms of annual sales, in each of 2015, 2016, 2017, and 2018 (based on annual
16 revenues from 2014 through 2017).[1]  Fortune named PPG the most admired
17 company in the industry in 2017, and in initiating coverage of the Company, analyst
18 BMO Capital Markets noted in its March 27, 2018 report that "we believe PPG is
19 one of the best-run companies in the coatings universe, demonstrating solid and
20 relatively stable earnings, strong cash flows, and solid returns on capital."

21     **B.  PPG's Earnings Management Scheme**

22     27.  Throughout the Class Period, Defendant Kelly and, by imputation,
23 Defendant PPG engaged in an earnings management and smoothing scheme through
24 which they made improper accounting adjustments for the purpose of manipulating

25 ───────────────
   [1] *See* https://www.coatingsworld.com/heaps/view/1788/1/ (2015 ranking based on
26 2014 revenues); https://www.coatingsworld.com/heaps/view/2599/1/ (2016 ranking
   based on 2015 revenues);  https://www.coatingsworld.com/heaps/view/3619/1/
27 (2017 ranking based on 2016 revenues); https://www.coatingsworld.com/heaps/
28 view/4739/1/ (2018 ranking based on 2017 revenues).

certain financial metrics, including but not limited to net income, income from continuing operations, and adjusted earnings per diluted share from continuing operations ("adjusted EPS").[2]   This scheme caused certain of these metrics to be overstated in certain quarters, especially Q4 2016 and Q2 2017, and caused certain of these metrics to be understated in other quarters.

28.   One of the intended and actual effects of this scheme was to cause PPG to consistently satisfy or exceed consensus analyst expectations concerning adjusted EPS– a key metric focused on by PPG's securities analysts– during each of the quarters for which results were reported during the Class Period.  In quarters where PPG's adjusted EPS was below consensus analyst expectations, Defendants Kelly and PPG made certain improper accounting adjustments after the end of the financial period, and close to the end of the financial close process for that period, in order to improve the adjusted EPS that PPG would be reporting.  These improper accounting adjustments included delaying the recognition of certain expenses and reclassifying certain categories of income, which caused adjusted EPS to be artificially inflated and which was done for the purpose of satisfying consensus analyst expectations.  While these adjustments often had a negative effect on subsequent quarters, these subsequent quarters were ones for which Defendants Kelly and PPG expected a cushion that would allow PPG to still satisfy consensus adjusted EPS expectations, notwithstanding the belatedly recognized expenses. Moreover, as set forth below in ¶¶ 44-47, in certain of these subsequent quarters, Defendants Kelly and PPG made further improper accounting entries to offset the belatedly recognized expenses and allow PPG to report adjusted EPS in line with consensus analyst expectations.

---

[2] Adjusted EPS, or adjusted earnings per diluted share from continuing operations, "excludes the impact of items that cannot reasonably be expected to recur on a quarterly basis or that are not attributable to [PPG's] primary operations."  Adjusted EPS is a non-GAAP financial measure.

AMENDED CLASS ACTION COMPLAINT
9

29.    In the finance literature, earnings management is defined as "manipulating reported earnings so that they do not accurately represent economic earnings at every point in time."[3]   Earnings smoothing, on the other hand, "is a special case of earnings management involving intertemporal smoothing of reported earnings relative to economic earnings; it attempts to make earnings look less variable over time."[4]   As explained by Investopedia, "[i]ncome smoothing uses deceptive accounting techniques to level out fluctuations in net income from one period to the next.   Companies indulge in this practice because investors are generally willing to pay a premium for stocks with steady and predictable earnings streams."[5]

30.    Throughout the Class Period and for years before it, PPG's reported adjusted EPS consistently met or exceeded consensus analyst expectations.  A table comparing PPG's originally reported adjusted EPS to the consensus analyst estimate for that metric published by Bloomberg LP for every quarter between Q1 2008 and Q2 2018 is set forth below:

[Table begins on next page]

---

[3] *See* Anand Mohan Goel & Anjan V. Thakor, *Why Do Firms Smooth Earnings?*, 76 Journal of Business 151, 151 (Jan. 2003), available at http://apps.olin.wustl.edu/ faculty/thakor/Website%20Papers/Why%20Do%20Firms%20Smooth%20Earnings. pdf.

[4] *Id.*

[5] *See* https://www.investopedia.com/terms/i/income-smoothing.asp.

| Period | Consensus[6] Estimate for Adj. EPS | Actual Adj. EPS | Period | Consensus Estimate for Adj. EPS | Actual Adj. EPS |
|--------|--------|--------|--------|--------|--------|
| 2Q18 | $1.88 | $1.90 | 1Q13 | $1.54 | $1.58 |
| 1Q18 | $1.39 | $1.39 | 4Q12 | $1.53 | $1.53 |
| 4Q17 | $1.18 | $1.19 | 3Q12 | $2.21 | $2.24 |
| 3Q17 | $1.52 | $1.52 | 2Q12 | $2.37 | $2.36 |
| 2Q17 | $1.82 | $1.83 | 1Q12 | $1.79 | $1.81 |
| 1Q17 | $1.32 | $1.35 | 4Q11 | $1.27 | $1.39 |
| 4Q16 | $1.18 | $1.19 | 3Q11 | $1.93 | $1.96 |
| 3Q16 | $1.56 | $1.56 | 2Q11 | $2.01 | $2.12 |
| 2Q16 | $1.85 | $1.85 | 1Q11 | $1.34 | $1.40 |
| 1Q16 | $1.30 | $1.31 | 4Q10 | $1.13 | $1.25 |
| 4Q15 | $1.22 | $1.23 | 3Q10 | $1.46 | $1.59 |
| 3Q15 | $1.57 | $1.61 | 2Q10 | $1.48 | $1.64 |
| 2Q15 | $1.64 | $1.67 | 1Q10 | $0.63 | $0.70 |
| 1Q15 | $2.34 | $2.37 | 4Q09 | $0.74 | $0.86 |
| 4Q14 | $1.99 | $2.11 | 3Q09 | $0.90 | $0.97 |
| 3Q14 | $2.76 | $2.82 | 2Q09 | $0.75 | $0.91 |
| 2Q14 | $2.78 | $2.83 | 1Q09 | $0.13 | $0.19 |
| 1Q14 | $1.83 | $1.98 | 4Q08 | $0.41 | $0.41 |
| 4Q13 | $1.73 | $1.81 | 3Q08 | $1.31 | $1.37 |
| 3Q13 | $2.35 | $2.44 | 2Q08 | $1.55 | $1.62 |
| 2Q13 | $2.35 | $2.35 | 1Q08 | $1.09 | $1.07 |

*Note: consensus estimates for Q1 15 and earlier are adjusted for the June 2015 2-for-1 stock split*

31.   For each quarter between Q3 2012 and Q2 2018, PPG reported an adjusted EPS that met or beat the consensus estimates.  The last quarter in which PPG reported an adjusted EPS that missed the consensus estimate was in Q2 2012 (*i.e.*, six years ago), when reported adjusted EPS was $2.36 and the consensus estimate was $2.37.

---

[6] Consensus adjusted EPS estimates were pulled from Bloomberg Consensus Overview function (EEO).  Bloomberg's Standard Consensus Calculation averages the estimates and ratings of "all brokers meeting critical criteria for defining the basis on which the selected measures is provided for a given period."

AMENDED CLASS ACTION COMPLAINT

32.    Thus, for a long period of time, PPG's earnings have been very predictable, a factor that no doubt contributed to the low volatility of its stock price (*see* ¶¶ 188 and 191, *infra*) and is consistent with the Company's reputation for consistently delivering high-quality products and solid and stable financial performance (*see* ¶ 26, *supra*).  PPG's long-standing and consistent track record in meeting analyst expectations also heightened the pressure on Defendant Kelly to engage in earnings management and smoothing during portions of the Class Period when adjusted EPS fell short of the market's expectations.

33.    The Class Period begins on January 19, 2017, when PPG issued a press release announcing its financial results for the fourth quarter of 2016 ("Q4 2016") and the full year of 2016 ("FY 2016").  Among other things, PPG reported an adjusted EPS of $1.19.  That beat the Bloomberg consensus estimate of $1.18 by one penny.

34.    In reality, however, as later admitted by PPG in connection with its Restatement, PPG's reported Q4 2016 financial results were not accurate and PPG's adjusted EPS was overstated due to improper accounting adjustments directed by Defendant Kelly that artificially understated certain expenses.  First, as PPG admitted in the 2017 10-K/A, "[i]n the fourth quarter of 2016, the Company improperly reduced the payout assumption for the 2015 grant of performance-based restricted stock units from 150% to 100%, which had the effect of reducing stock-based compensation expense in that period by $6.8 million."  This misstatement "overstated previously reported Income before income taxes by $6.8 million for the quarter ended December 31, 2016."  PPG subsequently increased the payout assumption for these same restricted stock units from 100% back to 150% in Q1 2017, which caused Income before taxes to be understated by $6.8 million for Q1 2017.  Over the six months encompassing both quarters, the $6.8 million overstatement of Income in Q4 2016 was netted out by the $6.8 million understatement of Income in Q1 2017.  Importantly, however, as detailed below, the

overstatement of income in Q4 2016 was necessary for PPG to meet consensus analyst estimates for adjusted EPS in that quarter, whereas in Q1 2017 PPG had enough cushion to absorb the improper charge and still beat the analyst consensus for adjusted EPS.  This was classic income smoothing.

35.    Second, as PPG also admitted in its 2017 10-K/A, in Q4 2016, PPG "misclassified the release of the unused portion of the reserve related to the 2015 business restructuring program in the fourth quarter of 2016 of $3.4 million.  The income associated with the release of the reserve was classified as Other income rather than as a reduction to Business restructuring in the Consolidated Statement of Income.  The misclassification had no impact on Income before taxes."

36.    While the misclassification of the income from the release of the reserve did not have an impact on Income before taxes, it did have an impact on adjusted EPS, and, combined with $6.8 million understatement of stock-based compensation expense, it caused PPG to report an adjusted EPS that beat (rather than missing) consensus analyst expectations.

37.    Adjusted EPS is an after tax metric that excludes certain non-recurring items.  As PPG explained in its January 19, 2017 press release, "PPG believes investors' understanding of the company's operating performance is enhanced by the disclosure of earnings per diluted share from continuing operations adjusted for certain charges.  PPG's management considers this information useful in providing insight into the company's ongoing performance because it excludes the impact of items that cannot reasonably be expected to recur on a quarterly basis or that are not attributable to our primary operations."  While adjusted EPS is not a GAAP measure, it is an important metric that is highlighted prominently in each of PPG's earnings releases and analysts heavily focused on it.  Thus, adjusted EPS is highly material to investors.

38.    Notably, in its Restatement, PPG restated its GAAP EPS for each of the quarters restated, but it did not disclose restated figures for adjusted EPS.

AMENDED CLASS ACTION COMPLAINT
13

Nevertheless, based on the data that has been disclosed, it is possible to calculate what restated adjusted EPS would have been, had PPG decided to provide restated numbers for adjusted EPS.  As explained in the worksheet attached as Exhibit B hereto, in the absence of the accounting errors described in ¶¶ 34-35, adjusted EPS for Q4 2016 would have been $1.17 rather than $1.19, thus missing the consensus estimate of $1.18.

39.     On April 20, 2017, PPG issued a press release announcing its financial results for the first quarter of 2017 ("Q1 2017").  In that release, PPG reported an adjusted EPS of $1.35, which beat the Bloomberg consensus estimate of $1.32 by three cents.  In that quarter, as mentioned above, PPG effectively reversed the improper stock-based compensation adjustment made in the previous quarter by increasing the payout assumption for certain restricted stock units from 100% back to 150%.  While this resulted in an understatement of Income before income taxes of $6.8 million in Q1 2017, PPG had sufficient earnings in that quarter to absorb that charge and was still able to post an adjusted EPS that was above consensus estimates.  This reversal also allowed PPG to *sub silentio* remove the improper payout assumption while still beating consensus estimates in both Q4 2016 and Q1 2017.  Again, this was classic income smoothing.[7]

---

[7] PPG also made certain additional improper accounting adjustments in Q1 2017 that served to improperly increase, rather than decrease, income in that quarter, although these adjustments were not critical to achieving consensus analyst estimates for adjusted EPS.  Specifically, "[t]he Company did not properly recognize expense associated with certain customer rebates, resulting in a misstatement of Net sales in the first and second quarters of 2017.  The misstatements overstated previously reported income before income taxes by $0.4 million and $1.4 million for the quarters ended March 31, 2017 and June 30, 2017, respectively."  In addition, "[i]n the first quarter of 2017, the Company failed to appropriately update the discount rate used to calculate a long-term environmental remediation reserve, which had the effect of understating Other expense by $0.5 million in the quarter.  The misstatement overstated previously reported income before taxes by $0.5 million for the quarter ended March 31, 2017."  Together, these

AMENDED CLASS ACTION COMPLAINT

40.     On July 20, 2017, PPG issued a press release announcing its financial results for the second quarter of 2017 ("Q2 2017").  In that release, PPG reported an adjusted EPS of $1.83, which beat the Bloomberg consensus estimate of $1.82 by one cent.  However, PPG was only able to report those results due to a series of improper accounting adjustments directed by Defendant Kelly.  These adjustments netted to an $11.8 million overstatement of net income from continuing operations, and, as explained in the worksheet attached as Exhibit C hereto, in the absence of these accounting errors, PPG would have had to report an adjusted EPS of $1.80, instead of $1.83.  In other words, in the absence of the intentional accounting errors directed by Defendant Kelly, PPG would have missed the Bloomberg consensus estimate for adjusted EPS by two cents, instead of beating it by one cent, as reported.  As illustrated in the table above (¶ 30), a two cent miss was highly uncharacteristic for PPG.

41.     The improper accounting adjustments directed by Defendant Kelly in Q2 2017 largely consisted of two types: (a) the improper reclassification of gains from income from discontinued operations to income from continuing operations, and (b) the improper shifting of expenses that should have been recognized in Q2 2017 to subsequent quarters.  Both of these categories of adjustments caused an overstatement of adjusted EPS, because (i) income from continuing operations (adjusted to remove certain non-recurring items) is the numerator of adjusted EPS, whereas income from discontinued operations is not factored into adjusted EPS and (ii) the deferral of expenses to subsequent quarters increases income for the quarter from which the cost is moved.

42.     Specifically, the improper accounting adjustments in Q2 2017 included, as PPG admitted in the Restatement: (a) the improper reclassification of gains from income from discontinued operations to income from continuing operations in the

improper accounting adjustments improperly increased income before taxes by $0.9 million.

total pre-tax amount of $2.5 million; (b) improper shifting of compensation expense of $3.5 million from Q2 2017 to Q3 2017 and Q4 2017; (c) improper shifting of health care claims expense of $3.5 million from Q2 2017 to Q3 2017; (d) improper shifting of additional paid vacation expense of $0.9 million from Q2 2017 to Q4 2017; and (e) failure to properly recognize expense associated with certain customer rebates, resulting in an overstatement of reported income before taxes of $1.4 million.

43.     In the absence of the accounting adjustments described in ¶ 42, PPG's adjusted EPS for Q2 2017 would have been $1.80, rather than $1.83.  Thus, the intentional accounting adjustments directed by Defendant Kelly allowed PPG to beat the consensus estimate for adjusted EPS of $1.82, whereas it otherwise would have missed that estimate by two cents.

44.     On October 19, 2017, PPG issued a press release announcing its financial results for the third quarter of 2017 ("Q3 2017").  In that release, PPG reported an adjusted EPS of $1.52, which was in line with the Bloomberg consensus estimate of $1.52.  While reported EPS would have been even higher had it not been for the improper shifting of expenses from Q2 2017 to Q3 2017, even with those improperly shifted expenses, PPG was still able to hit the consensus estimate.  Moreover, Defendant Kelly directed further improper accounting adjustments in Q3 2017 that partially offset the expenses recognized in Q3 2017 that should have been recognized Q2 2017, and without those further adjustments, PPG would not have been able to satisfy the consensus estimate for adjusted EPS.

45.     In particular, the improper accounting adjustments in Q3 2017 included, as PPG admitted in the Restatement: (a) improper shifting of additional paid vacation expense associated with a change in the Company's vacation policy of $1.3 million from Q3 2017 to Q4 2017; and (b) improper shifting of additional pension expense of $1.0 million from Q3 2017 to Q4 2017.

46.   On January 18, 2018, PPG issued a press release announcing its financial results for the fourth quarter of 2017 ("Q4 2017") and fiscal year of 2017 ("FY 2017").   In that release, PPG reported an adjusted EPS of $1.19, which beat the Bloomberg consensus estimate of $1.18.   While reported EPS would have been even higher had it not been for the improper shifting of expenses from Q2 2017 and Q3 2017 to Q4 2017, even with those improperly shifted expenses, PPG was still able to hit the consensus estimate.   Moreover, Defendant Kelly directed a further improper accounting adjustment in Q4 2017 that partially offset the expenses recognized in Q4 2017 that should have been recognized Q2 2017 and Q3 2017. Without those further adjustments, PPG would not have been able to satisfy the consensus estimate for adjusted EPS.

47.   In particular, the improper accounting adjustment in Q4 2017 consisted of, as PPG admitted in the Restatement, the improper reclassification of gains from income from discontinued operations to income from continuing operations in the total pre-tax amount of $4.7 million.

**C.   The Truth Emerges**

    **1.   PPG Announces Potential Accounting Violations After Receiving An Internal Report Concerning Such Violations**

48.   Defendant Kelly continued in his attempts to perpetuate the fraudulent earnings management and smoothing scheme described above into the first quarter of 2018 ("Q1 2018").   His efforts were cut short, however, when a PPG employee made a report through the Company's internal reporting system during the finalization of PPG's earning release for that quarter concerning potential violations of PPG's accounting policies.   As a result of that report, PPG identified approximately $1.4 million in expenses that should have been accrued in Q1 2018 and was able to correct that error prior to the public release of PPG's results for that quarter.   The report also resulted in the initiation of an investigation by the Audit Committee of PPG's Board of Directors, which led to Defendant Kelly being placed

on administrative leave and, ultimately, to his termination and the issuance of the Restatement.

49.     On April 19, 2018, as part of its press release announcing its Q1 2018 financial results, PPG disclosed that it had "received a report through its internal reporting system concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter." The Company further disclosed that upon a preliminary review of the report, $1.4 million worth of expenses should have been accrued in the financial results for this quarter, and that PPG had updated its earnings release to reflect these expenses.

50.     PPG further disclosed that there may have been other unspecified expenses, up to $5 million in the aggregate, that were not accrued in the first quarter of 2018 financial results.  PPG announced that the Board's Audit Committee was overseeing an investigation into the report of these potential violations (the "Investigation"), but that it was unable to predict the timing or outcome of the Investigation.

51.     On this news, the Company's shares fell $3.55 or approximately 3.136% to close at $109.64 on April 19, 2018, damaging investors.

>     **2.     Shortly Thereafter, PPG Announces an Update to Its Investigation, That Its Financial Statements for the 2017 Fiscal Year and Quarters Within That Year Should No Longer Be Relied Upon, and That Kelly, PPG's Vice President, Controller, and Principal Accounting Officer, Had Been Terminated**

52.     On May 10, 2018, PPG issued a press release entitled, "PPG provides update on Form 10-Q filing and internal investigation," in which PPG disclosed, *inter alia*, that: (1) PPG's Audit Committee found evidence that improper accounting entries were made by certain employees at the direction of PPG's former Vice President and Controller, Mark Kelly; (2) Mr. Kelly was terminated as of May

10, 2018, after being placed on administrative leave on April 25, 2018; (3) PPG would be unable to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018; and (4) PPG's financial statements for the 2017 year and quarterly periods in 2017 should not be relied upon.

53.   The press release further detailed items identified as part of the Investigation that were not yet reported in PPG's Q1 2018 financial results: a failure to record an amortization expense and an adjustment to inventory; and an understatement of a health insurance accrued liability, resulting in an overall net increase to income before continuing operations, pre-tax of approximately $200,000.

54.   PPG separately noted that, apart from the Investigation, PPG had identified certain inadvertent errors with respect to Q1 2018 resulting in a net decrease of income from continuing operations of $7.8 million, pre-tax.

55.   PPG further detailed that the Investigation identified the following matters relating to the financial periods in 2017: (1) improper reclassifications of gains from income from discontinued operations to income from continuing operations of $2.1 million and $4.7 million, pre-tax, for Q2 2017 and Q4 2017, respectively; (2) improper shifting of expenses from one quarter to others, resulting in $7.9 million in expenses that should have been reported in Q2 2017, but were instead shifted to Q3 2017 and Q4 2017.  PPG explained that the Investigation was continuing and that it did not intend to provide further updates on the Investigation's results until it has concluded.

56.   Following this disclosure by PPG, in the evening of May 10, 2018, the *Wall Street Journal* published a story entitled, "PPG Delays Earnings Report and Fires Controller Amid Investigation of Financial Irregularities."   The article summarized PPG's disclosures concerning the internal investigation and accounting irregularities and noted that PPG's stock price had already declined 2.9% in post-market trading following the disclosures.  The story explicitly discussed the prospect that the improper accounting adjustments may have allowed PPG to meet analyst

expectations regarding adjusted earnings per share and quoted a former SEC official, who opined that the errors appeared to be intentional.  The article stated, in relevant part, that:

> *PPG Industries Inc. on Thursday said it fired its controller and has delayed filing its quarterly earnings report amid an internal investigation of accounting irregularities at the paint giant.*
>
> *Pittsburgh-based PPG, one of the world's largest paint and coatings makers, said it had evidence that some of its employees had made improper accounting entries at the direction of the company's now-former controller. As a result, PPG said its financial reports for 2017 "should no longer be relied upon."*
>
> *PPG said the controller, Mark Kelly, was placed on administrative leave in late April and terminated as of Thursday.* The company has appointed William Schaupp to serve as assistant controller and acting controller until a replacement for Mr. Kelly is named. Two employees who acted under the former controller's direction were reassigned to different positions within the company, away from internal control positions.
>
> Mr. Kelly couldn't be immediately reached to comment.
>
> *Shares of PPG fell 2.9% in post-market trading.*
>
> \* \* \* \*
>
> *When PPG reported first-quarter results in April, the company met analysts' expectations of $1.39 in adjusted earnings per share, according to FactSet. It wasn't immediately clear how earnings would have changed had all expenses been properly accounted for.*
>
> *Andrew M. Calamari, a former senior SEC official who is now a partner at law firm Finn Dixon & Herling, said it was difficult to understand why the company would be moving expenses around.*
>
> *"When you look at some of the things they've identified here, it does smell like there's some intent," he said.*

(Emphasis added.)

57.   Following this news, the Company's shares fell $5.68 or approximately 5.353% to close at $100.43 on May 11, 2018, damaging investors.

### 3.   PPG Provides Restated Financial Results as a Result of Its Concluded Investigation

58.   On June 28, 2018, PPG announced that it had completed its Investigation and that it was restating its audited consolidated financial statements for the years ended December 31, 2016 and 2017 (and the unaudited quarterly results for the quarters ended December 31, 2016, March 31, 2017, June 30, 2017, September 30, 2017, and December 31, 2017).   PPG also announced that it was issuing corrected financial results for the quarter ended March 31, 2018, as compared to the results for that quarter that had previously been issued in the Company's April 19, 2018 press release.

59.   PPG further stated that it had concluded that its "consolidated financial statements for the year ended December 31, 2016 included in the Original Filing and the related report of PPG's independent registered public accounting firm, PricewaterhouseCoopers LLP ("PwC"), and for the final quarterly and year-to-date period in 2016, should no longer be relied upon because of certain misstatements contained in those financial statements," after having similarly told investors on May 10, 2018 not to rely on PPG's financial statements for the year ended December 31, 2017 and the quarterly and year-to-date periods in 2017.

60.   Also on June 28, 2018, PPG issued a Form 10-K/A for the 2017 fiscal year (the "2017 10-K/A") and its belated Form 10-Q for the first quarter of 2018 ("Q1 2018 10-Q" and, together with the 2017 10-K/A, the "Restatement").   As part of the Restatement, PPG included an explanatory note in the 2017 10-K/A detailing the background of the Restatement and the Investigation.   The Investigation had identified numerous categories of misstatements in the originally reported financial results for the years ended December 31, 2016 (FY 2016) and December 31, 2017 (FY 2017), and for the quarters ended December 31, 2016 (Q4 2016), March 31,

2017 (Q1 2017), June 30, 2017 (Q2 2017), September 30, 2017 (Q3 2017), December 31, 2017 (Q4 2017), and March 31, 2018 (Q1 2018).

61.     These individual misstatements and their effect on PPG's Class Period financial results are detailed in Section V, *infra*.   Combined, these misstatements had the following overall effect on the Class Period financial periods:

a.     For Q4 2016 and FY 2016, net income from continuing operations decreased by $4 million, or $0.01 per diluted share.

b.     For Q1 2017, net income from continuing operations increased by $3 million, or $0.01 per diluted share.

c.     For Q2 2017, net income from continuing operations decreased by $7 million, or $0.03 per diluted share.

d.     For Q3 2017, net income from continuing operations increased by $1 million, or less than a cent per diluted share.

e.     For Q4 2017, net income from continuing operations increased by $1 million, or less than a cent per diluted share.

f.     For the 2017 fiscal year, net income from continuing operations decreased by $2 million, or $0.01 per diluted share.

g.     For Q1 2018, net income from continuing operations increased by $0.3 million, prior to taxes.

62.     The results of the Investigation make clear that the improper accounting entries were made to overstate certain of PPG's reported financial results, including especially income from continuing operations and adjusted EPS for the Q4 2016, FY 2016, and Q2 2017.

### a)     As Part of the Restatement, PPG's Management Determined That a Material Weakness in PPG's Internal Control Over Financial Reporting Existed

63.     In connection with the Restatement, PPG's management, including Defendants McGarry and Morales, reevaluated the effectiveness of PPG's internal

controls over financial reporting and disclosure controls and procedures and concluded that those controls and procedures were not effective as of December 31, 2016, March 31, 2017, June 30, 2017, September 30, 2017, and December 31, 2017.

64.     Particularly, management concluded that there was a material weakness in PPG's internal control over financial reporting as of December 31, 2017 and December 31, 2016.   A material weakness is a deficiency, or deficiencies, in a company's internal controls over financial reporting, and consequently there is a reasonable possibility that a material misstatement in the company's financial statements will not be detected and/or timely prevented .

65.     Management concluded that the material weakness in PPG's internal controls existed because PPG did not maintain effective controls within its financial close process.   PPG management explained in the 2017 10-K/A that Defendant Kelly had, throughout the aforementioned periods, "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process" and that these directions "were followed and not disclosed to others in senior management, the Audit Committee, or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

66.     PPG's management further concluded that this material weakness resulted in misstatements in PPG's financial statements throughout the Class Period that were not prevented or detected on a timely basis and led to the Restatement.

### b)     PPG's Remediation Efforts

67.     As part of the Restatement announcement on June 28, 2018, Defendant McGarry stated that the Company had "already begun to implement a remedial plan to address" the Investigation's findings and to improve the effectiveness of PPG's internal controls over financial reporting and disclosure controls and procedures.   He continued by saying that PPG's is "committed to take actions that are consistent with our ethics and values and fully meet the expectations of both internal and

external stakeholders.   Unwavering adherence to our core standards of financial integrity and honesty remains a top priority and focus for all PPG employees."

68.    At the time of the Restatement, as part of the Company's remediation efforts, PPG had already terminated Kelly and re-assigned the two employees acting under Kelly's direction to positions where they would no longer have a role in PPG's internal control over financial reporting or its disclosure controls and procedures.   PPG also appointed its Director of Corporate Audit Services and Assistant Controller, Financial Reporting, William Schaupp, as Acting Controller (PPG later named Mr. Schaupp as its permanent Vice President and Controller and Principal Accounting Officer).

69.    McGarry also emphasized to all of PPG's employees, and specifically to its finance employees, "the importance of acting ethically and adhering to the Company's Global Code of Ethics."

70.    In the Restatement, PPG stated that it is committed to "ensuring that a proper, consistent tone is communicated throughout the organization, including the expectation that previously existing deficiencies will be remediated through the implementation of processes and controls to ensure strict compliance with generally accepted accounting principles."   Additionally PPG listed the following additional remediation measures it planned to take:

a.    Re-emphasizing (1) PPG's commitment to ethical standards, (2) the requirements of its Code of Ethics, (3) reporting obligations, and (4) non-retaliation policy for complaints;

b.    Enhancing the corporate finance department by adding personnel with responsibility for areas identified in PPG's Investigation;

c.    Enhancing the segregation of duties in PPG's finance department;

d.    Enhancing PPG's policies and procedures relating to the preparation, approval and entry of journal entries;

1     e. Enhancing PPG's process to evaluate and adjust certain

2 significant expense accruals;

3     f. Enhancing its policies and procedures relating to inventory

4 standard cost revaluations;

5     g. Enhancing its policies and procedures concerning accounting

6 entries related to discontinued operations;

7     h. Requiring additional annual/onboarding education for finance

8 staff;

9     i. Conducting additional periodic risk assessments and targeted

10 internal audit reviews; and

11     j. Separating the financial forecasting process from financial

12 accounting.

13   71. Lastly, as part of the Restatement, PPG disclosed that it had self-

14 reported the results of its Investigation to the SEC, and thus, that the SEC is

15 currently conducting an "investigation of this matter."

16 **V. DEFENDANTS' MATERIALLY FALSE AND/OR MISLEADING**

17 **  STATEMENTS ISSUED DURING THE CLASS PERIOD**

18   72. During the Class Period, PPG filed periodic reports with the SEC,

19 including Quarterly Reports on Form 10-Q and Annual Reports on Form 10-K,

20 containing the Company's reported financial statements. The following chart

21 identifies the date, signatories, and period covered by each report:

| PPG'S QUARTERLY AND ANNUAL REPORTS FILED WITH THE SEC DURING THE CLASS PERIOD | | | | |
|---|---|---|---|---|
| *FORM* | *PERIOD* | *DATE FILED* | *SIGNATORIES* | *REFERRED TO BELOW AS* |
| 10-K | 2016 Fiscal Year | 2/16/2017 | Defendant McGarry and Former CFO Sklarsky | 2016 10-K |
| 10-Q | 2017 Fiscal 1st Quarter | 4/24/2017 | Defendants Kelly and Morales | Q1 2017 10-Q |
| 10-Q | 2017 Fiscal 2nd Quarter | 7/21/2017 | Defendants Kelly and Morales | Q2 2017 10-Q |
| 10-Q | 2017 Fiscal 3rd Quarter | 10/20/2017 | Defendants Kelly and Morales | Q3 2017 10-Q |
| 10-K | 2017 Fiscal Year | 2/15/2018 | Defendants Kelly, McGarry, and Morales | 2017 10-K |

73.    As reflected by the chart below, during the Class Period, PPG issued the following press releases announcing its financial and operating results, which were attached to Form 8-Ks filed with the SEC by the Company.   These press releases contained financial statements as were included in the Company's periodic reports.   The following chart identifies the date, signatory, and period covered by each press release:

| PRESS RELEASES ISSUED BY PPG DURING THE CLASS PERIOD ANNOUNCING THE COMPANY'S FINANCIAL RESULTS | | | |
|---|---|---|---|
| *PERIOD* | *DATE* | *SIGNATORIES* | *REFERRED TO BELOW AS* |
| 2016 Fiscal 4th Quarter and Year | 1/19/2017 | Former CFO Frank Sklarsky | FY 2016 PR |
| 2017 Fiscal 1st Quarter | 4/20/2017 | Defendant Morales | Q1 2017 PR |
| 2017 Fiscal 2nd Quarter | 7/20/2017 | Defendant Morales | Q2 2017 PR |
| 2017 Fiscal 3rd Quarter | 10/19/2017 | Defendant Morales | Q3 2017 PR |
| 2017 Fiscal 4th Quarter and Year | 1/18/2018 | Defendant Morales | FY 2017 PR |
| 2018 Fiscal 1st Quarter | 4/19/2018 | Defendant Morales | Q1 2018 PR |

74.    During the Class Period, Defendants made numerous materially false and misleading statements and omissions in PPG's SEC filings, and in earnings slides presented along with earnings conference calls.

**A.    Defendants' False and Misleading Statements Regarding PPG's Fourth Quarter and Fiscal Year 2016 Financial Results**

75.    The Class Period begins on January 19, 2017.  On that date, PPG issued its FY 2016 PR in which it announced the Company's financial results for the fourth quarter and full year of 2016.  For the fourth quarter of 2016, PPG announced (1) adjusted net income from continuing operations of $313 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.19; (3) net income from continuing operations of $77 million; (4) net income per diluted share from continuing operations (EPS) of $0.29; (5) net income of $344 million; (6) corporate expenses of $45 million; and (7) a business restructuring charge of $197 million.

76.    For the fiscal year of 2016, PPG announced in its FY 2016 PR (1) adjusted net income from continuing operations of $1.55 billion; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $5.82; (3) net income from continuing operations of $564 million; (4) net income per diluted share from continuing operations (EPS) of $2.11; (5) net income of $877 million; (6) unallocated corporate expenses of $207 million; and (7) a business restructuring charge of $197 million.

77.    On February 16, 2017, PPG issued its 2016 10-K, and reported net income from continuing operations of $77 million for the fourth quarter of 2016. For the fiscal year of 2016, PPG reported in is 2016 10-K (1) adjusted net income from continuing operations of $1.548 billion; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $5.82; (3) net income from continuing operations of $564 million; (4) net income per diluted share from continuing operations (EPS) of $2.11; (5) net income of $877 million; (6) unallocated corporate

AMENDED CLASS ACTION COMPLAINT

expenses of $207 million; (7) a business restructuring charge of $197 million; (8) selling, general, and administrative expenses of $3.662 billion, which included total stock-based compensation of $39 million; and (9) other income of $176 million.

78.    Further, in Item 8 of PPG's 2016 10-K, under the section entitled "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting," which was signed by Defendant McGarry and former CFO Sklarsky, PPG stated:

> We are responsible for the preparation of the financial statements included in this Annual Report. ***The financial statements were prepared in accordance with accounting principles generally accepted in the United States of America*** and include amounts that are based on the best estimates and judgments of management.

(Emphasis added.)

79.    The statements made in ¶¶ 75-78 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because they failed to disclose the following adverse facts:

a)    That PPG's financial results and financial statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

b)    That the Company's financial statements for the fourth quarter and fiscal year of 2016 had materially overstated PPG's net income, net income from continuing operations, adjusted net income from continuing operations, EPS, and adjusted EPS and materially understated PPG's reported selling, general and administrative

AMENDED CLASS ACTION COMPLAINT

expenses and corporate expenses (including stock-based compensation expense as part of selling, general and administrative expenses).

c)   That, as PPG later admitted in connection with its Restatement, the correction of the aforementioned errors would result in a decrease of net income from continuing operations by $4 million, or $0.01 per diluted share, for both the quarter and year ended December 31, 2016, net of tax.

d)   That, as PPG later admitted in connection with its Restatement, "[i]n the fourth quarter of 2016, the Company improperly reduced the payout assumption for the 2015 grant of performance-based restricted stock units from 150% to 100%, which had the effect of reducing stock-based compensation expense in that period by $6.8 million" and that this admittedly improper reduction "overstated previously reported Income before taxes by $6.8 million for the [quarter and] year ended December 31, 2016[.]"

e)   That, as PPG later admitted in connection with its Restatement, "the Company misclassified the release of the unused portion of the reserve related to the 2015 business restructuring program in 2016 of $3.4 million.  The income associated with the release of the reserve was classified as Other income rather than as a reduction to Business restructuring in the Consolidated Statement of Income."

f)   That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve the analyst consensus estimate for adjusted EPS for the quarter ended December 31, 2016, as described in ¶¶ 33-38.

80.   PPG later reclassified certain of its originally reported financial results for Q4 2016 and FY 2016 in the FY 2017 PR and 2017 10-K, explaining in the 2017 10-K that "[c]ertain reclassifications of prior years' data have been made to conform

to the current year presentation.   These reclassifications had no impact on our previously reported net income, cash flows or shareholders' equity."   In the 2017 10-K/A, PPG presented these reclassified figures when illustrating the effect of the Restatement on the Q4 2016 and FY 2016 financial results.   Excerpts of the 2017 10-K/A reflecting the comparison of the reclassified, originally reported results to the restated results for Q4 2016 and FY 2016 are attached hereto as Exhibit A (at pages A-23 - A24 and A-43) and incorporated herein by reference.

81.    In Item 8 of PPG's 2016 10-K, under the section entitled "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting," which was signed by Defendant McGarry and former CFO Sklarsky, PPG stated:

> We conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2016. In making this evaluation, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework (2013). Our evaluation included reviewing the documentation of our controls, evaluating the design effectiveness of our controls and testing their operating effectiveness. Based on this evaluation we have concluded that, as of December 31, 2016, the Company's internal controls over financial reporting were effective.

82.    The 2016 10-K also stated under Item 9A. Controls and Procedures:

> (a)        *Evaluation of disclosure controls and procedures.*
>
> Based on their evaluation as of the end of the period covered by this Form 10-K, the Company's principal executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and to ensure that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and

communicated to the Company's management, including its principal executive and principal financial officers, as appropriate, to allow timely decisions regarding required disclosure.

(b)      Changes in internal control over financial reporting.

There were no changes in the Company's internal control over financial reporting that occurred during the Company's most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

83.     PPG's 2016 10-K also contained certifications pursuant to Section 302 of the Sarbanes-Oxley Act of 2002[8] (the "SOX 302 Certifications"), signed by Defendant McGarry and former CFO Sklarsky in the 2016 10-K, certifying that:

1.     I have reviewed this annual report on Form 10-K of PPG Industries, Inc.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be

---

[8] SOX requires a public company to evaluate and report on the effectiveness of its internal controls over financial reporting annually and that the principal officers certify their responsibilities for financial reports in each quarterly and annual filing.

designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)   Any fraud, whether or not material, that involves management or other employees who have a significant

role in the registrant's internal control over financial reporting.

84.     PPG's 2016 10-K also contained certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (the "SOX 906 Certifications"), signed by Defendant McGarry and former CFO Sklarsky in the 2016 10-K, which further certified that:

(1)     The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and results of the operations of PPG Industries, Inc.

85.     The statements made in ¶¶ 81-84 were materially false and/or misleading for the same reasons as stated above in ¶ 79.  In addition, the statements made in ¶¶ 81-84 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because they failed to disclose the following adverse facts:

a)     That, as PPG later admitted in connection with its Restatement, PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

b)     That, as PPG later admitted in connection with its Restatement, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

c)     That Defendant Kelly's aforementioned instructions to his subordinates to override PPG's internal controls had caused material misstatements

AMENDED CLASS ACTION COMPLAINT
33

in PPG's financial statements, including the misstatements identified in ¶ 79.

d)    That Defendant Kelly had knowledge of the material weakness in PPG's internal controls and the resultant misstatements, which knowledge is imputable to PPG.

**B.    Defendants' False and Misleading Statements Regarding PPG's First Quarter 2017 Financial Results**

86.    On April 20, 2017 PPG issued its Q1 2017 PR in which it announced the Company's financial results for the first quarter of 2017, including: (1) adjusted net income from continuing operations of $351 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.35; (3) net income from continuing operations of $334 million; (4) net income per diluted share from continuing operations (EPS) of $1.29; (5) net income of $334 million; (6) net sales of $3.569 billion; (7) selling, general and administrative expenses $896 million; and (8) Other income of $11 million, net of other charges.

87.    As part of its April 20, 2017 earnings conference call, PPG published earnings slides.  On those slides, PPG reiterated all the financial figures detailed in ¶ 86 except for selling, general and administrative expenses and other net income/charges.

88.    On April 24, 2017 PPG issued its Q1 2017 10-Q, in which the Company's financial results detailed in ¶ 86 were repeated.  In the Q1 2017 10-Q, PPG separately reported other income of $25 million and other charges of $14 million, rather than netting these two figures as it did in the Q1 2017 PR.

89.    Note 1 accompanying the financial statements in the Q1 2017 10-Q stated: "The condensed consolidated financial statements included herein . . . have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America[.]"

90.     The statements made in ¶¶ 86-89 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because they failed to disclose the following adverse facts:

a)      That PPG's financial results and financial statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

b)      That the Company's financial statements for the first quarter of 2017 had materially overstated selling, general and administrative expenses and materially understated net income, net income from continuing operations, and EPS.

c)      That, as PPG later admitted in connection with its Restatement, the correction of the aforementioned errors would result in an increase of net income from continuing operations by $3 million, or $0.01 per diluted share, for the first quarter of 2017, net of tax.

d)      That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with certain customer rebates, resulting in a misstatement of Net sales in the first . . . quarter[] of 2017" and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by $0.4 million for the quarter[] ended March 31, 2017[.]"

e)      That, as PPG later admitted in connection with its Restatement, "[i]n the fourth quarter of 2016, the Company improperly reduced the payout assumption for the 2015 grant of performance-based restricted stock units from 150% to 100%, which had the effect of reducing stock-based compensation expense in that period by $6.8 million.   In the first

quarter of 2017, the Company increased the payout assumption for these same restricted stock units from 100% back to 150%," and that this admittedly improper reduction "understated previously reported Income before income taxes by $6.8 million for the quarter ended March 31, 2017."

f) That, as PPG later admitted in connection with its Restatement, "the Company failed to appropriately update the discount rate used to calculate a long-term environmental remediation reserve," and that this admitted improper failure to update the discount rate "overstated previously reported Income before taxes by $0.5 million for the quarter ended March 31, 2017."

g) That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve the analyst consensus estimate for adjusted EPS for the quarter ended December 31, 2016, as described in ¶¶ 33-39.

91. PPG later reclassified certain of its originally reported financial results for Q1 2017 in the Q1 2018 PR and Q1 2018 10-Q to conform the prior data to current year presentation. In the 2017 10-K/A, PPG presented these reclassified figures when illustrating the effect of the Restatement on the Q1 2017 financial results. Excerpts of the 2017 10-K/A reflecting the comparison of the reclassified originally reported results to the restated results for Q1 2017 are attached hereto as Exhibit A (at page A-37) and incorporated herein by reference.

92. Item 4 of PPG's Q1 2017 10-Q, entitled "Controls and Procedures," contained a disclosure concerning the effectiveness of PPG's controls and procedures that was substantively identical to the Item 9A disclosure in PPG's 2016 10-K quoted in ¶ 82, except that it referred to the "period covered by this Form 10-Q" rather than the "period covered by this Form 10-K."

93.     Attached as Exhibits 31.1 and 31.2 to the Q1 2017 10-Q were the SOX 302 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 302 Certifications of McGarry and Sklarsky contained in the 2016 10-K quoted in ¶ 83, except that they referred to "this quarterly report" rather than "this annual report on Form 10-K."

94.     Attached as Exhibits 32.1 and 32.2 to the Q1 2017 10-Q were the SOX 906 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 906 Certifications of McGarry and Sklarsky contained in the 2016 10-K quoted in ¶ 84.

95.     The statements made in ¶¶ 91-94 were materially false and/or misleading for the same reasons as stated above in ¶ 90.  In addition, the statements made in ¶¶ 91-94 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because they failed to disclose the following adverse facts:

a)     That, as PPG later admitted in connection with its Restatement, PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

b)     That, as PPG later admitted in connection with its Restatement, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

c)     That Defendant Kelly's aforementioned instructions to his subordinates to override PPG's internal controls had caused material misstatements

in PPG's financial statements, including the misstatements identified in ¶ 90.

d)   That Defendant Kelly had knowledge of the material weakness in PPG's internal controls and the resultant misstatements, which knowledge is imputable to PPG.

**C.   Defendants' False and Misleading Statements Regarding PPG's Second Quarter 2017 Financial Results**

96.   On July 20, 2017 PPG issued its Q2 2017 PR in which it announced the Company's financial results for the second quarter of 2017, including: (1) adjusted net income from continuing operations of $472 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.83; (3) net income from continuing operations of $504 million; (4) net income per diluted share from continuing operations (EPS) of $1.95; (5) net income of $501 million; (6) net sales of $3.806 billion; (7) selling, general and administrative expenses $865 million; and (8) a loss from discontinued operations of $3 million.

97.   As part of its July 20, 2017 earnings conference call, PPG published earnings slides.  On those slides, PPG reiterated all the financial figures detailed in ¶ 96 except for selling, general and administrative expenses.

98.   On July 21, 2017 PPG issued its Q2 2017 10-Q, in which the Company's financial results detailed in ¶ 96 were repeated.  In addition, the Q2 2017 10-Q reported Other income of $72 million.

99.   Note 1 accompanying the financial statements in the Q2 2017 10-Q stated: "The condensed consolidated financial statements included herein . . . have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America[.]"

100.   The statements made in ¶¶ 96-99 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the

AMENDED CLASS ACTION COMPLAINT

statements not misleading, because they failed to disclose the following adverse facts:

a)   That PPG's financial results and financial statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

b)   That the Company's financial statements for the second quarter of 2017 had materially overstated PPG's adjusted net income from continuing operations, adjusted net income from continuing operations per diluted share (adjusted EPS), net income from continuing operations, net income from continuing operations per diluted share (EPS), net sales, other income, and net income, and materially understated selling, general and administrative expenses and income from discontinued operations.

c)   That, as PPG later admitted in connection with its Restatement, the correction of the aforementioned errors would result in a decrease of net income from continuing operations by $7 million, or $0.03 per diluted share, for the second quarter of 2017, net of tax.

d)   That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with certain customer rebates, resulting in a misstatement of Net sales in the . . . second quarter[] of 2017" and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by . . . $1.4 million for the quarter[] ended . . . June 30, 2017[.]"

e)   That, as PPG later admitted in connection with its Restatement, "[c]ertain items of income related to PPG's former Glass segment were inappropriately recorded in continuing operations rather than in

AMENDED CLASS ACTION COMPLAINT

discontinued operations" and that this admittedly improper recording of income "overstated previously reported Income before income taxes by $2.5 million" and "understated previously recorded Income from discontinued operations" by $1.5 million for the second quarter of 2017, net of tax.

f)   That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with a change in the Company's vacation policy" in the second quarter of 2017, and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by $0.9 million" in the second quarter of 2017.

g)   That, as PPG later admitted in connection with its Restatement, PPG "did not properly record compensation expense related to a payment made to an employee upon his separation from the Company in the second quarter of 2017.  Rather, the expense associated with this payment was recognized in the second, third and fourth quarters of 2017" and that this admittedly improper recording of expense "overstated previously reported Income before income taxes by $3.5 million for the quarter ended June 30, 2017[.]"

h)   That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with the Company's liability for employee health care claims in the second quarter of 2017. Rather, this expense was recognized in the third quarter of 2017," and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by $3.5 million for the quarter ended June 30, 2017."

i)   That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve the analyst

consensus estimate for adjusted EPS for the quarter ended June 30, 2017, as described in ¶¶ 40-43.

101.   Item 4 of PPG's Q2 2017 10-Q, entitled "Controls and Procedures," contained a disclosure concerning the effectiveness of PPG's controls and procedures that was substantively identical to the Item 4 disclosure in PPG's Q1 2017 10-Q quoted in ¶ 92.

102.   Attached as Exhibits 31.1 and 31.2 to the Q2 2017 10-Q were the SOX 302 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 302 Certifications of McGarry and Morales contained in the Q1 2017 10-Q quoted in ¶ 93.

103.   Attached as Exhibits 32.1 and 32.2 to the Q2 2017 10-Q were the SOX 906 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 906 Certifications of McGarry and Morales contained in the Q1 2017 10-Q quoted in ¶ 94.

104.   The foregoing statements in ¶¶ 101-103 were materially false and/or misleading for the same reasons as stated above in ¶ 100.  In addition, the statements made in ¶¶ 101-103 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because they failed to disclose the following adverse facts:

a)   That, as PPG later admitted in connection with its Restatement, PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

b)   That, as PPG later admitted in connection with its Restatement, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's

independent registered public accounting firm and not otherwise detected by the Company's internal controls."

c)   That Defendant Kelly's aforementioned instructions to his subordinates to override PPG's internal controls had caused material misstatements in PPG's financial statements, including the misstatements identified in ¶ 100.

d)   That Defendant Kelly had knowledge of the material weakness in PPG's internal controls and the resultant misstatements, which knowledge is imputable to PPG.

105.   In addition, the Q2 2017 PR highlighted that Defendants "achieved higher adjusted earnings per diluted share, increasing 6 percent year-over-year," due in part through "aggressive cost management[.]"

106.   The foregoing statement was materially false and/or misleading for the same reasons as stated above in ¶ 100.  In addition, the statement made in ¶ 105 was materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because it failed to disclose that, as admitted in the Restatement, part of this "aggressive cost management" included PPG's admittedly improper reductions in cost due to Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

107.   The Q2 2017 PR also stated that "All figures presented for the current . . . year have been recast to reflect PPG's former Glass segment as discontinued operations."

108.   The foregoing statement was materially false and/or misleading for the same reasons as stated above in ¶ 100 and ¶ 100.e).

### D.   Defendants' False and Misleading Statements Regarding PPG's Third Quarter 2017 Financial Results

109.   On October 19, 2017, PPG issued its Q3 2017 PR in which it announced the Company's financial results for the second quarter of 2017, including: (1) adjusted net income from continuing operations of $392 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.52; (3) net income from continuing operations of $392 million; (4) net income per diluted share from continuing operations (EPS) of $1.52; (5) net income of $609 million; (6) cost of sales of $2.1 billion; and (7) selling, general and administrative expenses $905 million.

110.   As part of its October 19, 2017 earnings conference call, PPG published earnings slides.  On those slides, PPG reiterated all the financial figures detailed in ¶ 109 except for selling, general and administrative expenses.

111.   On October 20, 2017, PPG issued its Q3 2017 10-Q, in which the Company's financial results detailed in ¶ 109 were repeated.

112.   Note 1 accompanying the financial statements in the Q3 2017 10-Q stated: "The condensed consolidated financial statements included herein . . . have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America[.]"

113.   The statements made in ¶¶ 109-112 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because they failed to disclose the following adverse facts:

      a)     That PPG's financial results and financial statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of Defendant

1  Kelly's (and, by imputation, Defendant PPG's) illicit earnings
2  management scheme and improper accounting entries.

b)  That the Company's financial statements for the third quarter of 2017 had materially overstated the Company's selling, general and administrative expenses, and materially understated cost of sales, adjusted net income from continuing operations, net income from continuing operations, and net income.

c)  That, as PPG later admitted in connection with its Restatement, the correction of the aforementioned errors would result in an increase of net income from continuing operations by $1 million for the third quarter of 2017, net of tax.

d)  That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with a change in the Company's vacation policy" in the third quarter of 2017, and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by . . . $1.3 million for the quarter[] ended . . . September 30, 2017[.]"

e)  That, as PPG later admitted in connection with its Restatement, PPG "did not properly record compensation expense related to a payment made to an employee upon his separation from the Company in the second quarter of 2017.  Rather, the expense associated with this payment was recognized in the second, third and fourth quarters of 2017" and that this admittedly improper recording of expense "understated previously reported Income before taxes by $1.4 million" in the third quarter of 2017.

f)  That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize expense associated with the Company's liability for employee health care claims in the second quarter of 2017.

Rather, this expense was recognized in the third quarter of 2017," and that this admittedly improper recognition of expense "understated previously reported Income before taxes by $3.5 million for the quarter ended September 30, 2017."

g) That, as PPG later admitted in connection with its Restatement, PPG "did not properly recognize pension expense" in the third quarter of 2017 and that this admittedly improper recognition of expense "overstated previously reported Income before income taxes by $1.0 million for the quarter ended September 30, 2017[.]"

h) That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve the analyst consensus estimate for adjusted EPS for the quarters ended June 30, 2017 and September 30, 2017, as detailed in ¶¶ 40-45.

114. Item 4 of PPG's Q3 2017 10-Q, entitled "Controls and Procedures," contained a disclosure concerning the effectiveness of PPG's controls and procedures that was substantively identical to the Item 4 disclosure in PPG's Q1 2017 10-Q quoted in ¶ 92.

115. Attached as Exhibits 31.1 and 31.2 to the Q3 2017 10-Q were the SOX 302 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 302 Certifications of McGarry and Morales contained in the Q1 2017 10-Q quoted in ¶ 93.

116. Attached as Exhibits 32.1 and 32.2 to the Q3 2017 10-Q were the SOX 906 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 906 Certifications of McGarry and Morales contained in the Q1 2017 10-Q quoted in ¶ 94.

117. The foregoing statements in ¶¶ 114-116 were materially false and/or misleading for the same reasons as stated above in ¶ 113. In addition, the statements made in ¶¶ 114-116 were materially false and/or misleading when made and/or

omitted to state material facts necessary to make the statements not misleading because they failed to disclose the following adverse facts:

    a)    That, as PPG later admitted in connection with its Restatement, PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

    b)    That, as PPG later admitted in connection with its Restatement, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

    c)    That Defendant Kelly's aforementioned instructions to his subordinates to override PPG's internal controls had caused material misstatements in PPG's financial statements, including the misstatements identified in ¶ 113.

    d)    That Defendant Kelly had knowledge of the material weakness in PPG's internal controls and the resultant misstatements, which knowledge is imputable to PPG.

**E.    Defendants' False and Misleading Statements Regarding PPG's Fourth Quarter and Fiscal Year 2017 Financial Results**

118.    On January 18, 2018, PPG issued its FY 2017 PR in which it announced the Company's financial results for the fourth quarter and full year of 2017.  For the fourth quarter of 2017, PPG announced (1) adjusted net income from continuing operations of $304 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.19; (3) net income from continuing operations of $184 million; (4) net income per diluted share from continuing

operations (EPS) of $0.72; (5) net income of $184 million; (6) cost of sales of $2.117 billion; (7) selling, general and administrative expenses of $912 million; and (8) Other income of $17 million, net of other charges.

119.   For the fiscal year of 2017, PPG announced (1) adjusted net income from continuing operations of $1.513 billion; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $5.87; (3) net income from continuing operations of $1.408 billion; (4) net income per diluted share from continuing operations (EPS) of $5.46; (5) net income of $1.628 billion; (6) net sales of $14.750 billion; (7) cost of sales of $8.204 billion; (8) selling, general and administrative expenses of $3.570 billion; (9) Other income of $90 million, net of other charges; and (10) income from discontinued operations of $220 million.

120.   As part of its January 18, 2018 earnings conference call, PPG published earnings slides.  On those slides, PPG reiterated all the financial figures detailed in ¶ 118 except for: (1) cost of sales; (2) selling, general and administrative expenses; and (3) net Other income/charges.

121.   These earnings slides also reiterated the adjusted earnings per diluted share from continuing operations (adjusted EPS) and net sales figures for the fiscal year of 2017 listed in ¶ 119.

122.   On February 15, 2018 PPG issued its 2017 10-K, in which the Company's financial results detailed in ¶ 119 were repeated, except for the following changes due to a $37 million higher net charge than what was announced in the FY 2017 PR "related to the enactment of the U.S. Tax Cuts and Jobs Act": (1) adjusted net income from continuing operations of $1.513 billion; (2) net income from continuing operations of $1.371 billion; (3) net income per diluted share from continuing operations (EPS) of $5.32; and (4) net income of $1.591 billion.   In addition, the breakdown between Other income and Other charges was detailed, with PPG reporting Other charges of $64 million and Other income of $154 million for the 2017 fiscal year.

123.    The 2017 10-K also revised the following financial results for the fourth quarter of 2017 due to a $37 million higher net charge than that announced in the FY 2017 8-K "related to the enactment of the U.S. Tax Cuts and Jobs Act": (1) net income from continuing operations of $147 million; (2) net income per diluted share from continuing operations (EPS) of $0.58; and (3) net income of $147 million.

124.    Further, in Item 8 of PPG's 2017 10-K, under the section entitled "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting," which was signed by Defendants McGarry and Morales, PPG stated:

> We are responsible for the preparation of the financial statements included in this Annual Report. ***The financial statements were prepared in accordance with accounting principles generally accepted in the United States of America*** and include amounts that are based on the best estimates and judgments of management.

(Emphasis added.)

125.    The statements made in ¶¶ 118-124 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because they failed to disclose the following adverse facts:

a)    That PPG's financial results and financial statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

b)    That the Company's financial statements for the fourth quarter of 2017 had materially understated PPG's net income from continuing operations, cost of sales, income from discontinued operations, and net income, and materially overstated selling, general and administrative

expenses and other income, and further that, as PPG later admitted in connection with its Restatement:

i.  The correction of the aforementioned errors would result in an increase of net income from continuing operations by $1 million, for the quarter ended December 31, 2017, net of tax.

ii.  "Certain items of income related to PPG's former Glass segment were inappropriately recorded in continuing operations rather than in discontinued operations" and that this admittedly improper recording of income "overstated previously reported Income before income taxes by" $4.7 million and "understated previously recorded Income from discontinued operations" by $2.9 million for the fourth quarter of 2017, net of tax.

iii.  PPG "did not properly recognize expense associated with a change in the Company's vacation policy in the second and third quarters of 2017[,]" that instead, "the entire amount of expense associated with this change was recognized in the fourth quarter of 2017[,]" and that this admittedly improper recognition of expense "understated previously reported Income before taxes by $2.2 million for the quarter ended December, 31, 2017."

iv.  PPG "did not properly record compensation expense related to a payment made to an employee upon his separation from the Company in the second quarter of 2017.  Rather, the expense associated with this payment was recognized in the second, third and fourth quarters of 2017" and that this admittedly improper recording of expense "understated previously reported Income before taxes by" $2.1 million" in the fourth quarter of 2017.

v.  PPG "did not properly recognize pension expense" in the fourth quarter of 2017 and that this admittedly improper recognition of

AMENDED CLASS ACTION COMPLAINT

expense "understated previously reported Income before taxes by $1.0 million for the quarter ended December 31, 2017."

c) That the Company's financial statements for the fiscal year of 2017 had materially overstated the Company's adjusted net income from continuing operations, adjusted net income from continuing operations per diluted share (adjusted EPS), net income from continuing operations, net income from continuing operations per diluted share (EPS), net sales, selling, general and administrative expenses, Other income, and materially understated cost of sales, income from discontinued operations, and further that, as PPG later admitted in connection with its Restatement:

i. The correction of the aforementioned errors would result in a decrease of net income from continuing operations by $2 million, or $0.01 per diluted share, for the year ended December 31, 2017, net of tax.

ii. PPG "did not properly recognize expense associated with certain customer rebates, resulting in a misstatement of Net sales in 2017" and that this admittedly improper recognition of expense "overstated previously reported Income before taxes by $1.8 million for the year ended December 31, 2017."

iii. "Certain items of income related to PPG's former Glass segment were inappropriately recorded in continuing operations rather than in discontinued operations" and that this admittedly improper recording of income "overstated previously reported Income before income taxes from continuing operations by $7.2 million" and "understated previously recorded Income from discontinued operations" by $4.5 million for the year ended December 31, 2017, net of tax.

416577.9                                AMENDED CLASS ACTION COMPLAINT

iv.   "In the fourth quarter of 2016, the Company improperly reduced the payout assumption for the 2015 grant of performance-based restricted stock units from 150% to 100%, which had the effect of reducing stock-based compensation expense in that period by $6.8 million.  In the first quarter of 2017, the Company increased the payout assumption for these same restricted stock units from 100% back to 150%," and that this admittedly improper reduction "understated previously reported Income before income taxes by $6.8 million for the year ended December 31, 2017."

v.   "[T]he Company failed to appropriately update the discount rate used to calculate a long-term environmental remediation reserve," and that this admitted improper failure to update the discount rate "overstated previously reported Income before taxes by $0.5 million for the year ended December 31, 2017."

d)   That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve the analyst consensus estimate for adjusted EPS for the quarters ended December 31, 2016, June 30, 2017, September 30, 2017, and December 31, 2017, as described in ¶¶ 33-47.

126.   Item 8 of PPG's 2017 10-K, under the section entitled "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting," and signed by McGarry and Morales, contained a disclosure that was substantively identical to the Item 8 disclosure in PPG's 2016 10-K quoted in ¶ 81.

127.   Item 9A of PPG's 2017 10-K, under the section entitled, "Controls and Procedures." contained a disclosure that was substantively identical to the Item 9A disclosure in PPG's 2016 10-K quoted in ¶ 82.

128.   Attached as Exhibits 31.1 and 31.2 to the 2017 10-K were the SOX 302 Certifications of McGarry and Morales, respectively, which were substantively identical to the SOX 302 Certifications of McGarry and Sklarsky in PPG's 2016 10-K quoted in ¶ 83.

129.   Attached as Exhibits 32.1 and 32.2 to the Q3 2017 10-Q were the SOX 906 Certifications of McGarry and Morales, respectively, which were substantively identical to SOX 906 Certifications of McGarry and Sklarsky in PPG's 2016 10-K quoted in ¶ 84.

130.   The foregoing statements in ¶¶ 126-129 were false and misleading for the same reasons as stated above in ¶ 125.   In addition, the statements made in ¶¶ 126-129 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading because they failed to disclose the following adverse facts:

a)   That, as PPG later admitted in connection with its Restatement, PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting.

b)   That, as PPG later admitted in connection with its Restatement, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

c)   That Defendant Kelly's aforementioned instructions to his subordinates to override PPG's internal controls had caused material misstatements in PPG's financial statements, including the misstatements identified in ¶ 125.

d)      That Defendant Kelly had knowledge of the material weakness in PPG's internal controls and the resultant misstatements, which knowledge is imputable to PPG.

**F.      Defendants' False and Misleading Statements Regarding PPG's First Quarter 2018 Financial Results**

131.   On April 19, 2018, PPG issued its Q1 2018 PR in which it announced the Company's financial results for the first quarter of 2018.  For the first quarter of 2017, PPG announced (1) adjusted net income from continuing operations of $350 million; (2) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.39; (3) net income from continuing operations of $347 million; (4) net income per diluted share from continuing operations (EPS) of $1.38; (5) net income of $353 million; (6) selling, general and administrative expenses of $903 million; (7) an amortization expense of $34 million.

132.   As part of its April 19, 2018 earnings conference call, PPG published earnings slides.  On those slides, PPG reiterated all the financial figures detailed in ¶ 131 except for: (1) selling, general and administrative expenses; and (2) the amortization expense.

133.   The statements made in ¶¶ 131 and 132 were materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because they failed to disclose the following adverse facts:

a)      That PPG's financial results were materially misstated because of Defendant Kelly's (and, by imputation, Defendant PPG's) illicit earnings management scheme and improper accounting entries.

b)      That the Company's financial results for the first quarter of 2018 had materially understated the Company's net income from continuing operations, and net income, and materially overstated PPG's amortization and selling, general and administrative expenses.

c)   That, as PPG later admitted in connection with its Restatement, the correction of the aforementioned errors would result in an increase to net income from continuing operations by $0.3 million, for the first quarter of 2018, prior to income tax.

d)   That, as PPG later admitted in connection with its Restatement, PPG "fail[ed] to record amortization expense in the amount of $1.4 million to correct for amortization of an intangible asset that was inadvertently not recorded over a three-year period and discovered in March 2018[.]"

e)   That, as PPG later admitted in connection with its Restatement, PPG understated "a health insurance accrued liability in the amount of $0.5 million[.]"

f)   That, as PPG later admitted in connection with its Restatement, PPG "fail[ed] to record an adjustment increasing the value of inventory in PPG's Europe, Middle East and Africa region in the amount of $2.2 million due to inflation of raw materials costs[.]"

g)   That the aforementioned accounting errors were intentional and made for the purpose of, *inter alia*, helping PPG achieve analyst consensus estimates for adjusted EPS, as detailed in ¶¶ 27-47, 48.

134.   PPG also stated in the Q1 2018 PR:

As PPG's earnings release was being finalized, the company received a report through its internal reporting system concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter. Based on preliminary review, the company identified approximately $1.4 million of expense that should have been accrued in the first quarter, and the earnings reported in this release reflect the accrual of such $1.4 million of expenses. The report also alleges that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter.

135.  This statement was materially false and/or misleading when made and/or omitted to state material facts necessary to make the statements not misleading, because it failed to disclose that these "potential violations of PPG's accounting policies and procedures" were actually intentional and made for the purpose of, *inter alia*, helping PPG achieve analyst consensus estimates for adjusted EPS.

## VI.  ADDITIONAL SCIENTER ALLEGATIONS

### A.  PPG and Kelly Failed to Maintain Effective Internal Controls

136.  Defendants PPG and Kelly failed to comply with their obligations imposed by the SEC to maintain books and records in sufficient detail to reflect the transactions of the Company and to prepare financial statements in accordance with GAAP.  Section 13(b) 2 of the Exchange Act, entitled *Periodical and Other Reports*, states the following with respect to books and records and internal controls:

> Every issuer which has a class of securities registered pursuant to section 12 and every issuer which is required to file reports pursuant to section 15(d) shall:
>
> A.  make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;
>
> B.  devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that–
>
> > i.  transactions are executed in accordance with management's general or specific authorization;
> >
> > ii.  transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;
> >
> > iii.  access to assets is permitted only in accordance with management's general or specific authorization; and

iv.    the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

137.   A good system of internal controls helps management achieve its objectives related to the effectiveness and efficiency of its operations, the reliability of its financial reporting, and compliance with applicable laws and regulations.  It is management's responsibility to develop and implement internal controls necessary to ensure that it maintains adequate books and records.  This is made clear in SEC regulations and in a report prepared by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"), Internal Control – Integrated Framework (the "COSO Report").[9]

138.   The COSO Report defines internal control as a process that is "designed to provide reasonable assurance regarding the achievement of objectives" related to the effectiveness and efficiency of operations, the reliability of financial reporting, and compliance with applicable laws and regulations.  More broadly, a system of internal control also includes the actions taken by a company's board of directors, management at all levels, and employees in running the business.

139.   The COSO Report requires that financial statements prepared for external purposes be fairly presented in conformity with GAAP and regulatory requirements.   To prepare financial statements in conformity with GAAP, management's responsibility is acknowledged in a set of standards known as generally accepted auditing standards ("GAAS").   COSO Report, Executive

---

[9] Generally accepted auditing standards codified in AU §319, Consideration of Internal Control in a Financial Statement Audit, is based on the internal control framework described in the COSO Report.   The COSO report was issued in September 1992 as a four-volume set. Additional modifications and updates of the framework have been issued with the most recent Integrated Framework being issued in 2013 as a three-volume set.

Summary.  GAAS outlines the responsibilities of an auditor, but also explains that management is responsible for its own financial reporting:

> The financial statements are management's responsibility.  The auditor's responsibility is to express an opinion on the financial statements.  ***Management is responsible for adopting sound accounting policies and for establishing and maintaining internal control*** that will, among other things, initiate, record, process, and report transactions (as well as events and conditions) consistent with management's assertions embodied in the financial statements.  The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management.  The auditor's knowledge of these matters and internal control is limited to that acquired through the audit.  Thus, ***the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility***.

AU §110.03 (emphasis added).

140.  Borrowing from generally accepted auditing standards, the COSO Report defines fair presentation as the following:

- the accounting principles selected and applied have general acceptance;

- the accounting principles are appropriate in the circumstances;

- the financial statements are informative of matters that may affect their use, understanding and interpretation; and

- the financial statements reflect the underlying transactions and events in a manner that presents the financial position, results of operations and cash flows stated within a range of acceptable limits, that is, limits that are reasonable and practical to attain in financial statements.[10]

141.  The COSO Report defines five components of an internal control framework that are needed to enable a business to achieve its objectives: (1) the

---

[10] *See* COSO Report, Chapter 3; *see also* Statement on Auditing Standards No. 69, The Meaning of "Present Fairly in Conformity With Generally Accepted Accounting Principles" in the Independent Auditor's Report (New York: AICPA, 1992).

AMENDED CLASS ACTION COMPLAINT

control environment, (2) risk assessment, (3) control activities, (4) information and communications and (5) monitoring.

142. PPG's management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rule 13a-15(f) under the Exchange Act. The Company's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.

143. The term "reliable" as used in the COSO Report requires that financial statements prepared for external purposes be fairly presented in conformity with GAAS and regulatory requirements. Reliability of financial reporting applies to published financial statements, including interim and consolidated financial statements, and selected financial data, such as earnings releases, derived from these financial statements.

144. Internal control over financial reporting, as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act, is a process designed by, or under the supervision of, the CEO and CFO and is effected by the Board, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external reporting purposes in accordance with GAAP. Internal control over financial reporting includes those policies and procedures that:

a. pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company;

b. provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. GAAP, and that the receipts and expenditures of the Company are being made only

in accordance with appropriate authorization of management and the board of directors; and

c. provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

145. Everyone in an organization has responsibility for internal controls. However, the chief executive officer sets the "tone at the top" that affects integrity, ethics, and other factors of a positive control environment. "In any organization, 'the buck stops' with the chief executive.   He or she has ultimate ownership responsibility for the internal control system. . . .  The influence of the CEO on an entire organization cannot be overstated."  COSO Report, Chapter 8, p. 84.  The chief executive fulfills this duty by providing leadership and direction to senior managers and reviewing the way they are controlling the business.

146. The Addendum to the COSO Report makes it clear that the company's chief accounting officer – in this case, Defendant Kelly was that officer during the Class Period – plays a critical role with respect to the internal control system.

147. Specifically, Defendant Kelly failed to comply with SEC regulations and the requirements of COSO.  As described herein there was a material weakness in the internal controls at PPG that were necessary to prepare accurate financial statements and ensure compliance with regulatory filing requirements applicable to public companies.  A material weakness is defined by the SEC as "a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the registrant's annual or interim financial statements will not be prevented or detected on a timely basis."  PPG's internal control system failed to live up to the standards as set forth in the five elements of the internal control framework described above in ¶ 141. Defendants failed to maintain an effective control environment that focused on achieving consistent application of accounting policies and procedures and strict

adherence to GAAP, "because a material weakness in internal control over financial reporting related to ineffective controls within the Company's financial close process existed" during the Class Period.

148.   In each of PPG's 2016 10-K and 2017 10-K, PPG, through Defendant McGarry, Defendant Morales, and former CFO Sklarsky, stated that PPG's controls over financial reporting were effective.   Furthermore, in each of PPG's 2016 10-K, Q1 2017 10-Q, Q2 2017 10-Q, Q3 2017 10-Q, and 2017 10-K, PPG, through Defendant McGarry, Defendant Morales, and former CFO Sklarsky, certified that each of the following were disclosed: (i) any change in internal control over financial reporting that occurred during that fiscal period that is reasonably likely to materially affect PPG's internal control over financial reporting; (ii) "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting"; and (iii) any fraud – material or not material – "that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

149.   These statements were false and materially misleading when made, as admitted by PPG in issuing its Restatement.

150.   In particular, Defendants PPG and Kelly omitted to disclose the "material weakness in internal control over financial reporting related to ineffective controls with the Company's financial close process" that existed at the time of each of the reporting dates for financial periods—namely, that Kelly was directing "subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others."   The existence of this material weakness enabled PPG to manage its earnings figures, and particularly, allowed PPG to meet or beat consensus estimates for Q4 2016 and Q2 2017.

151.   As a result of the material internal control weaknesses described above, PPG and Kelly failed to comply with SEC regulations and the requirements of

AMENDED CLASS ACTION COMPLAINT

COSO.   The Company failed to "ensur[e] that a proper, consistent tone is communicated throughout the organization," and "to ensure strict compliance with [GAAP]" "through the implementation of process and controls."

152.   As part of the Restatement, PPG committed to: (i): enhancing its corporate finance departing by adding personnel with responsibility for the financial close process; (ii) enhancing the segregation of duties in the finance department – including separating the financial forecasting process from financial accounting; and (iii) requiring "additional annual/onboarding education for finance staff.

### B.   Defendants' GAAP Violations

153.   Federal regulations strictly govern what must be included in documents filed with the SEC.   In particular, federal regulations required PPG to comply with GAAP, which are those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time.[11]   Specifically, SEC Regulation S-X requires that interim financial statements as filed with the SEC be prepared in accordance with GAAP. (17 C.F.R. § 210.10-01(a)).   Filings that do not comply with GAAP are "presumed to be misleading or inaccurate."   17 C.F.R. § 210.4- 01(a)(1).

154.   Furthermore, the fact that PPG restated its financial statements and disclosed that its financial statements issued during the Class Period should not be relied upon is an admission that they were false and misleading when originally

---

[11] Effective for financial statements issued after September 15, 2009, the Financial Accounting Standards Board ("FASB") established the FASB Accounting Standards Codification ("ASC") as the source of authoritative GAAP recognized by the FASB to be applied by nongovernmental entities.   Rules and interpretive releases of the SEC under authority of the federal securities laws are also sources of authoritative GAAP for SEC registrants.   In addition to rules and interpretive releases, the SEC issues Staff Accounting Bulletins that represent practices followed by the staff in administering SEC disclosure requirements, and Staff Announcements and Observer comments at Emerging Issues Task Force meetings to publicly announce its views on certain accounting issues for SEC registrants.   (ASC 105-10-05-1).

issued. (Accounting Principles Board Opinion ("APB") No. 20 at ¶¶ 7-13; Financial Accounting Standards Board Statement No. 154 at ¶ 25).

155.   Given these various improper accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

a.   The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" (APB No. 28, 10);

b.   The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" (FASB Statement of Concepts No. 1, ¶ 34);

c.   The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" (FASB Statement of Concepts No. 1, ¶ 40);

d.   The principle that "financial reporting should provide information about an enterprise's financial performance during a period" (FASB Statement of Concepts No. 1, ¶ 42);

e.   The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" (FASB Statement of Concepts No. 1, ¶ 50);

f.   The principle that "financial reporting should be reliable in that it represents what it purports to represent" (FASB Statement of Concepts No. 2, ¶¶ 58-59);

g.      The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" (FASB Statement of Concepts No. 2, ¶ 79); and

h.      The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" (FASB Statement of Concepts No. 2, ¶ 95).

156.   Furthermore, the SEC prohibits the management of earnings.   On September 28, 1998, in response to growing concerns about registrants' managing earnings to achieve earnings estimates, then-SEC Chairman Arthur Levitt gave a speech titled "The Numbers Game."   One earnings management gimmick that SEC Chairman Levitt addressed in his speech was abusive revenue recognition practices. In response to Chairman Levitt's comments regarding abusive earnings management, the SEC issued staff accounting bulletins to address earnings management problems, including Staff Accounting Bulletin No. 99 ("SAB 99").

157.   SAB 99 provides that misstatements of a financial statement item for the purpose of managing earnings to mask a change in earnings or other trends or to hide a failure to meet analyst consensus expectations for the enterprise are material under GAAP.   "It is unlikely that it is ever 'reasonable' for registrants to record misstatements or not to correct known misstatements – even immaterial ones – as a part of an ongoing effort directed by or known to senior management for the purposes of 'managing' earnings." SAB 99.

**C.      Kelly Intentionally Manipulated PPG's Financial Results During the Class Period Despite His Extensive Experience in SEC Reporting, Internal Controls, and SOX Compliance**

158.   Despite decades of experience in financial reporting, SOX compliance, and internal controls, during the Class Period, Kelly intentionally manipulated PPG's financial results after the end of the financial quarter in order to present better results for PPG's income from continuing operations for such quarter.

159.   Kelly was PPG's Vice President and Controller, and as part of this position, was also the Company's Principal Accounting Officer.   In these roles, Kelly publicly represents that he was the "Principal Accounting Officer responsible for internal and SEC reporting, corporate financial planning and analysis, . . . internal controls[,] and SOX compliance."

160.   According to PPG's bylaws, as its Controller, Kelly was an officer of the Company and responsible to "keep or cause to be kept all books of account and accounting records" of PPG.   Kelly, as PPG's Controller, was also charged with "determin[ing] all accounting policies and procedures[.]"   PPG's Audit Committee Charter also explains that management – *i.e.*, Kelly – is "responsible for maintaining appropriate accounting and financial reporting principles and policies and internal controls and procedures designed to ensure compliance with applicable accounting standards and laws and regulations."

161.   Kelly, a CPA, previously held similar roles, including being the Principal Accounting Officer and Treasurer at Rockwood Holdings, Inc., where he was "responsible for internal and SEC reporting, corporate financial planning and analysis, . . . [and] internal controls and SOX compliance," among others.   Prior to his positions at Rockwood, Kelly spent seven years at Bristol-Myers Squibb, where he was similarly responsible for financial and SOX reporting, internal controls, and SOX compliance during his tenure.   Kelly began his career over 30 years ago at Deloitte, culminating in supervising and planning the worldwide audit of General Motors Corporation.

162.   Despite Kelly's decades of experience in auditing, SEC reporting, internal controls, and SOX compliance, Kelly improperly directed his subordinates to override PPG's internal controls in order to make improper adjustments in order to positively impact PPG's income from continuing operations and related financial figures.

163.   On information and belief, Kelly was incentivized to manipulate the income from continuing operations figures to enhance his compensation.  Indeed, as explained in PPG's 2017 and 2018 Proxy Statements, filed with the SEC on March 9, 2017 and March 8, 2018, respectively, for both the 2016 and 2017 fiscal year, "[a]nnual incentive compensation of PPG's executives and senior managers is partially (30 percent) based on personal goals that tie to overall corporate business goals, with the remainder based on company and business financial performance." The potential payout of the Company performance component of this incentive was largely "measured by adjusted earnings-per-diluted share from continuing operations (weighted 70%)[.]"

164.   For the 2016 fiscal year, the adjusted earnings-per-diluted share from continuing operations was $5.99 for compensation purposes, based on the application of "certain non-operating adjustments to the actual earnings-per-diluted share from continuing operations."  These adjustments included $0.55 for a business restructuring charge.  The payout performance "schedule yielded a payout of 123% for the result of $5.99 per share."

165.   For the 2017 fiscal year, the adjusted earnings-per-diluted share from continuing operations was $6.01 for compensation purposes, based on the application of "certain non-operating adjustments to the actual earnings-per-diluted share from continuing operations."  The payout performance "schedule yielded a payout of 81% for the result of $6.01 per share."

166.   As explained herein (*see* Sec. IV.B, *supra*), Kelly was uniquely positioned to manipulate PPG's financial results in order to positively affect income from continuing operations.  Not only was he responsible for internal and SEC financial reporting, internal controls, and SOX compliance, but Kelly was also responsible for corporate financial planning and analysis.  Thus, PPG created an opportune environment in which Kelly was able to manipulate PPG's financial results.  Indeed, in the Restatement, PPG determined that among the remedial

measures it needed to make were to "enhance segregation of duties in the finance department" and "separate the financial forecasting process from financial accounting."   This remedial measure was tantamount to an admission that the Company's previous allocation of duties among its senior officers, coupled with the Company's incentive compensation structure, created improper incentives for officers with financial accounting duties to tailor the Company's financial reporting in order to satisfy financial forecasting objectives.   By separating the financial forecasting process from financial accounting and segregating the duties in the finance department, PPG sought to prevent future circumstances in which controllers or other accounting employees would have a financial incentive to engage in earnings management as Kelly had done.

### D.   PPG's Global Code of Ethics and Code of Ethics for Senior Financial Officers

167.   The Individual Defendants, including Kelly, as well as "all directors and employees worldwide" were and are required to comply with PPG's Global Code of Ethics, which "embodies [PPG's] global principles and practices relating to the ethical conduct of [PPG's] business and [PPG's] long-standing commitment to honesty, fair dealing and compliance with all laws affecting our business."

168.   The Global Code of Ethics, in the section "Our Shareholders: Business and Financial Records" states that PPG's standard is:

> Timely and accurate creation of all PPG commercial and financial information and records is at the core of our commitment to do business ethically and with integrity.   It reflects on PPG's reputation and credibility, and ensures that PPG meets its legal and regulatory obligations.   ***We commit to creating only PPG business and financial records that fully and accurately reflect PPG's business activities, consistent with generally accepted accounting principles, standards, PPG policies, and regulations for accounting and financial reporting.***

169.   The section continues:

What Everyone Should Know

Ensuring accurate and complete business and financial records is every employee's responsibility.

All financial transactions . . . must be accurately recorded and supported by documentation that clearly and accurately states their purpose.

PPG is legally required to maintain proper internal accounting controls and accurate financial and other business records.

Your Role

■■ Develop and maintain efficient and effective processes with appropriate internal controls that properly reflect transactions or events, as well as prevent or detect inappropriate transactions.

■■ Develop and maintain business and financial records that are complete, accurate, and timely. . . .

                                        * * * *

■■ Raise a concern if you become aware of actions, transactions, accounting, or reporting that are questionable or otherwise inconsistent with PPG's values and the protection of PPG's reputation, such as financial results that seem inconsistent with underlying performance; *circumvention of review and approval procedures*; and incomplete or misleading communications about the substance or reporting of a transaction.

170.   In addition, PPG has a supplemental Code of Ethics for Senior Financial Officers (the "Financial Officer Code of Conduct") that is applicable to the Company's principal executive officer, principal financial officer, principal accounting officer, controller or persons performing similar functions.   Thus, as PPG's principal accounting officer and controller, this additional code of ethics specifically applied to Kelly.

171.   This Financial Officer Code of Conduct explains that "PPG promotes ethical conduct in the practice of financial management in all locations throughout

AMENDED CLASS ACTION COMPLAINT

the world.  Senior financial officers hold an important and elevated role in corporate governance.  They are uniquely capable and empowered to ensure that stakeholders' interests are appropriately balanced, protected, and preserved."

172.   The Financial Officer Code of Conduct required the Individual Defendants to comply with the following:

1.   Act with honesty and integrity, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships.

2.   Provide full, fair, accurate, timely, and understandable disclosure in reports and documents filed with the SEC as well as other public communications.

3.   Comply with laws of federal, state, and local governments applicable to PPG, and the rules and regulations of regulatory agencies.

4.   Promptly report violations of this Supplement to the PPG Audit Committee.

5.   Be accountable for promoting adherence to this Supplement.

173.   The Financial Officer Code of Conduct further noted that any amendment or waiver of either PPG's Global Code of Ethics or the supplemental Financial Officer Code of Conduct may be made by PPG's Board or a committee of the Board, and "must be promptly disclosed to shareholders. . . .  This ensures that in the rare instance that a waiver is sought by a senior financial officer that it undergoes an additional level of scrutiny by the highest governance authority of the Company."

### E.   PPG's Accounting Misstatements Involve Irregularities, Not Mere Errors

174.   In the accounting literature, accountants recognize a difference between the term "error" and the term "irregularity" when referring to inaccuracies in financial statements:

AMENDED CLASS ACTION COMPLAINT

The difference between the two has nothing to do with the accuracy of the reported numbers—one or the other may apply even where numbers are equally wrong.  The difference has to do with the intent of the individual by whom the incorrect numbers have been provided.  *Errors* are defined to be accidental inaccuracies.  *Irregularities* are defined to be inaccuracies that are deliberate.

Why did the literature distinguish between the two?  Because the distinction between an accounting *error* and an accounting *irregularity* is comparable (to paraphrase one American jurist) to the difference between a dog that has been stumbled over and a dog that has been kicked.  Where a company finds an accounting error, it does its best to fix it and move on.  If the accounting misstatement has truly been accidental, in many cases the federal securities laws will not even allow shareholders to sue.

Where the misstatement is an irregularity, the situation is completely different.  When financial statements are misstated because of an irregularity, someone has not made an innocent mistake.  Someone has deliberately lied.  And the resulting concern is that somebody or a group of people is dishonest and is lying to everyone about financial performance.  So the company is not in a position in which it can just fix the numbers and move on.  Some level of corporate housecleaning is going to be involved.

Michael R. Young, *Accounting Irregularities and Financial Fraud: A Corporate Governance Guide* 2-4 (3d ed. 2006) (emphasis in original).

175.   In this case, PPG did not specifically use the term "irregularity" in describing the accounting misstatements that gave rise to the Restatement. Nevertheless, a number of indicators demonstrate that PPG understood that the principal misstatements that gave rise to the Investigation and that were corrected by the Restatement were not mere errors, but were in fact irregularities.

176.   First, in its summary of the Restatement, PPG identified two different types of misstatements and used two different sets of terms to describe those types of misstatements.   Certain of the misstatements were described as "inadvertent errors" whereas other of the misstatements were described as "improper" accounting adjustments.  *See, e.g.*, Ex. A at A-2, A-19 – A-21, A-25 – A-27.  The fact that PPG

described certain of the misstatements, but not all of them, as "inadvertent errors" was a tacit acknowledgment that certain of the errors were not inadvertent, *i.e.*, that they were irregularities. For example, in the Background of the Restatement section of the 2017 Form 10-K/A, PPG said the following:

> On April 16, 2018, we received a report through our internal reporting system alleging violations of our accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter of 2018. Based on our initial review at that time, we identified approximately $1.4 million of expenses (including legal fees, property taxes and performance-based compensation) that should have been accrued in the first quarter of 2018 and that were then reflected in our earnings for the quarter ended March 31, 2018, released on April 19, 2018. In addition, the report alleged that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter.
>
> The Audit Committee of the Board of Directors (the "Audit Committee") oversaw an investigation of the matters set forth in the internal report with the assistance of outside counsel and forensic accountants. The investigation identified the following items with respect to the quarter ended March 31, 2018, in addition to the approximately $1.4 million of expenses described above: (1) failure to record amortization expense in the amount of $1.4 million to correct for amortization of an intangible asset that was inadvertently not recorded over a three-year period and discovered in March 2018; (2) understatement of a health insurance accrued liability in the amount of $0.5 million; and (3) failure to record an adjustment increasing the value of inventory in our Europe, Middle East and Africa region in the amount of $2.2 million due to inflation of raw materials costs which, when corrected, had a positive effect on income in the first quarter of 2018. These three items resulted in a net increase to income from continuing operations before income taxes of approximately $0.3 million.
>
> ***The investigation also identified certain inadvertent errors with respect to the quarter ended March 31, 2018***. Correction of such inadvertent errors, together with the matters discussed in the immediately preceding paragraph, resulted in a net decrease in income from continuing operations before income taxes of $5.7 million for the quarter ended March 31, 2018. The correction of these inadvertent

AMENDED CLASS ACTION COMPLAINT

errors also resulted in a net decrease in income from continuing operations before income taxes of $2.3 million for the year ended December 31, 2017.

The investigation identified the following items with respect to the year ended December 31, 2017: (1) ***improper reclassifications*** of gains from income from discontinued operations to income from continuing operations in total pretax amounts of $2.5 million in the quarter ended June 30, 2017 and $4.7 million in the quarter ended December 31, 2017; (2) ***improper shifting*** of pre-tax expenses between quarterly periods in 2017, including a total of $3.5 million in compensation expense recorded in the third and fourth quarters of 2017 that should have been recorded in the quarter ended June 30, 2017; an additional expense accrual for health care claims in the amount of $3.5 million recorded in the third quarter of 2017 that should have been recorded in the quarter ended June 30, 2017; additional expense for paid vacation in the amount of $2.2 million recorded in the quarter ended December 31, 2017 that should have been recorded in the second and third quarters of 2017; and additional pension expense in the amount of $1.0 million recorded in the fourth quarter of 2017 that should have been recorded in the quarter ended September 30, 2017.

On May 10, 2018, management, in consultation with the Audit Committee and our independent registered public accounting firm, PricewaterhouseCoopers LLP ("PwC"), concluded that our consolidated financial statements for the year ended December 31, 2017 included in the Original Filing and the related report of PwC, and for the quarterly and year-to-date periods in 2017, should no longer be relied upon because of certain misstatements contained in those financial statements.

The investigation identified the following items with respect to the year ended December 31, 2016: (1) ***improper classification*** in the consolidated statement of income of the release of a reserve related to the Company's 2015 business restructuring program in the amount of $3.4 million and (2) an ***improper reduction*** in the payout assumption for certain performance-based restricted stock units that had the impact of recognizing a $6.8 million reduction in stock based compensation expense in the fourth quarter of 2016. In the first quarter of 2017, the payout assumption for these same performance-based restricted stock units was increased, resulting in $6.8 million of stock-based compensation expense in the first quarter of 2017 that would not have

been recorded if the payout assumption had not been reduced in the fourth quarter of 2016.

Ex. A at A-2 – A-3 (Emphasis added.)

177.  Second, PPG's description of how the misstatements were effectuated indicates that they were irregularities.   According to PPG, Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."   That Kelly had to "direct" his subordinates to "improperly override" the Company's internal controls suggests an intentional instruction to make an improper accounting adjustment, rather than a simple calculation error or a good faith difference of opinion regarding the application of certain accounting principles.   Moreover, PPG's description suggests that Kelly affirmatively concealed the decision to override the Company's internal controls from others in senior management, the Audit Committee, and the Company's outside auditor (an inference that is also supported by the fact that the way the error came to light was by someone making a report using the Company's internal reporting system).

178.  Third, the timing, nature and directionality of the adjustments support the conclusion that the misstatements were intentional.   PPG acknowledged that "[t]hese actions often occurred *after the end of the quarter* and *close to the end of the financial close process* for the quarter and *had the effect of positively impacting income from continuing operations* reported for such quarter."   (Emphasis added.) Thus, the misstatements typically did not occur within the natural course of the quarter, but after the quarter had ended (and, presumably, after Kelly was able to determine whether PPG had achieved its financial targets with respect to income from continuing operations, adjusted EPS, etc.).   The fact that many of the errors

AMENDED CLASS ACTION COMPLAINT

involved shifting expenses to later quarters and required an override of internal controls further suggests that it was not the case that PPG only became aware of the expenses at a later time, but instead that Kelly made an affirmative decision to instruct his subordinates to push expenses into a later quarter.  As discussed *supra* at ¶¶ 33-43, the improper accounting adjustments also operated to bring PPG's adjusted EPS in line with consensus estimates in Q4 2016 and Q2 2017, which strongly supports a conclusion of intentionality.

179.  Fourth, the fact that Defendant Kelly was promptly terminated further supports the conclusion that PPG's Audit Committee determined that the errors were not merely inadvertent or made in good faith.  Kelly was not retained as a consultant or transferred to another position (as is often the case following a restatement in which a corporation determines it needs new leadership but wants to maintain a tie with valued former management).  Nor did Kelly voluntarily resign. He was fired.

180.  Finally, as discussed *supra* at ¶ 56, the *Wall Street Journal* article published on May 10, 2018 supports the conclusion that the misstatements were not simply errors, but "irregularities."  The article quoted a former SEC official who said that "When you look at some of the things they've identified here, it does smell like there's some intent."  And that article was written before the more damning evidence of wrongdoing in the 2017 Form 10-K/A had been made public.  The article also directly referred to the possible effect of the accounting misstatements on adjusted EPS, raising the obvious inference of earnings management, which was subsequently corroborated by the data PPG provided in the Restatement.

## VII.  CORPORATE SCIENTER ALLEGATIONS

181.  Throughout the Class Period, Defendant Kelly served as PPG's Vice President and Controller.  As Controller, Defendant Kelly was one of only a handful of employees subject to the Financial Officer Code of Conduct, which as discussed *supra* at ¶¶ 170-173, is a separate code of conduct applicable only to the Company's

most senior financial officers.  The Company's Controller is one of only a small group of senior financial officers that the Company has designated as being subject to the Financial Officer Code of Conduct.  Furthermore, Defendant Kelly was PPG's Principal Accounting Officer from at least April 24, 2017, if not earlier.  Defendant Kelly signed each of the following SEC filings on behalf of PPG: the Q1 2017 10-Q, the Q2 2017 10-Q, the Q3 2017 10-Q, and the 2017 10-K.  Defendant Kelly, therefore, acted with apparent authority to speak on behalf of the Company and his statements were made with the imprimatur of the Company that selected him to speak on its behalf.  Moreover, as Controller, Kelly was highly involved in the preparation, review, finalization, and issuance of the Company's financial statements, and investors relied on his honesty and integrity.

182.  Based on the foregoing, Defendant Kelly's actions and scienter are imputable to PPG at all times during the Class Period.  Defendant Kelly acted as an agent of PPG, both with respect to the SEC filings that he signed and also with respect to the SEC filings and earnings releases that he assisted in preparing and/or that he oversaw or participated in the accounting for.  Therefore, Defendant Kelly's state of mind is imputable to PPG for all of the challenged statements in this Complaint, whether or not he personally signed those statements.

## VIII. LOSS CAUSATION

183.  Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic losses suffered by Plaintiff and the Class.

184.  During the Class Period, as a result of the open, well-developed, and efficient market for PPG's stock, the prices of PPG's stock fell when the misrepresentations alleged herein, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed to investors and the artificial inflation was removed over time from the price of PPG's stock.  Defendants' wrongful conduct, alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.  Defendants'

misrepresentations and omissions caused and maintained the artificial inflation in PPG's stock price throughout the Class Period until Defendants began to disclose the truth regarding the Company's financial condition to the market.

185.   The truth regarding PPG's financial condition was revealed, and the concealed risks materialized, in part on April 19, 2018; and in part on May 10, 2018. As a direct result of these partial disclosures, the price of PPG's stock declined precipitously on heavy trading volume.

186.   On April 19, 2018, during early trading hours, PPG issued a press release entitled, "PPG Reports First Quarter 2018 Financial Results," in which PPG disclosed that it had received a report concerning potential violations of its accounting policies, that it had identified certain expense(s) that should have been accrued in the first quarter, and that an investigation was ongoing.   The press release stated, in relevant part, that:

> As PPG's earnings release was being finalized, the company received a report through its internal reporting system concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter. Based on preliminary review, the company identified approximately $1.4 million of expense that should have been accrued in the first quarter, and the earnings reported in this release reflect the accrual of such $1.4 million of expenses. The report also alleges that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter. The Audit Committee of the company's Board of Directors is overseeing an investigation of the matters set forth in the report, with the assistance of outside counsel. The company is currently unable to predict the timing or outcome of the investigation and will move with diligence.

187.   On this news, the Company's shares fell $3.55 or approximately 3.136% to close at $109.64 on April 19, 2018, damaging investors.

188.   This one-day price decline was material, as reflected by, *inter alia*, the following facts:

a.      PPG's stock is a relatively low-volatility stock.  For purposes of assessing the volatility of PPG's stock price and the significance of its price movements, Plaintiff calculated the standard deviation of the percentage change in PPG's daily stock price during the period of January 19, 2017 through May 11, 2018, inclusive (the "Comparison Period").[12]   During the Comparison Period, the mean change in PPG's stock price was 0.01834% and the standard deviation from that mean was 1.1706%, meaning that approximately 68% of the daily price changes would be expected to be between -1.15226% and 1.18894% in a standard normal distribution.  Accordingly, during a substantial majority of the trading days in the Comparison Period, PPG's stock price did not move more than 1.2% in either a positive or negative direction.

b.      The 3.136% price decline on April 19, 2018 has a Z-score of -2.69, meaning that the percentage change in PPG's stock price on that date was 2.69 standard deviations below the mean.  In a standard normal distribution, this Z-score corresponds to a p-value of 0.0035, meaning that the likelihood of such a large price decline occurring just by random chance is only 0.35%.

c.      During the 331 trading days in the Comparison Period, there were only 6 trading days in which PPG's stock price declined more than 3% and only 9 trading days in which PPG's stock price moved more than 3% in either direction.

189.  On May 10, 2018, after market close, PPG issued a press release entitled, "PPG provides update on Form 10-Q filing and internal investigation," in which PPG disclosed, *inter alia*, that (1) PPG's Audit Committee found evidence that improper accounting entries were made by certain employees at the direction of

---

[12] The Comparison Period is one day longer than the Class Period, in order to include for comparison purposes the movement of PPG's stock price on May 11, 2018, the day following the corrective disclosure on May 10, 2018, which is the final day of the Class Period.

PPG's former Vice President and Controller, Mark Kelly; (2) Mr. Kelly was terminated as of May 10, 2018; (3) PPG would be unable to timely file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018; and (4) PPG's financial statements for the 2017 year should not be relied upon.  The press release stated, in relevant part, that:

> **PPG provides update on Form 10-Q filing and internal investigation**
>
> PITTSBURGH, May 10, 2018 - PPG (NYSE:PPG) today announced that it has filed a Form 12b-25 Notification of Late Filing with the U.S. Securities and Exchange Commission regarding its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018.
>
> As previously disclosed on April 19, 2018, PPG received a report through its internal reporting system alleging violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter of 2018. Based on its initial review at that time, PPG identified approximately $1.4 million of expenses (including legal fees, property taxes and performance-based compensation) that should have been accrued in the first quarter of 2018 and that were then reflected in PPG's earnings for the quarter ended March 31, 2018 released on April 19, 2018. In addition, the report alleged that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter.
>
> ***The Audit Committee of the Company's Board of Directors is overseeing an investigation of the matters set forth in the report, with the assistance of outside counsel and forensic accountants. To date, the investigation has identified the following items not yet reflected in our March 31, 2018 results as reported in our April 19, 2018 press release and which impact the quarter ended March 31, 2018, in addition to the approximately $1.4 million of expenses described above: (1) failure to record amortization expense in the amount of $1.4 million to correct for amortization of an intangible asset that was inadvertently not recorded over a three-year period and discovered in March 2018; (2) understatement of a health insurance accrued liability in the amount of $500,000; and (3) failure to record an adjustment increasing the value of inventory in our Europe, Middle***

*East and Africa region in the amount of $2.1 million due to inflation of raw materials costs (which, when corrected, would have a positive effect on income in the first quarter of 2018, resulting in a net increase to income from continuing operations before income taxes from these three items of approximately $200,000).*

Apart from the investigation, the Company has identified certain inadvertent errors with respect to the quarter ended March 31, 2018. *The Company has quantified errors that would result in a net decrease in income from continuing operations before income taxes of approximately $7.8 million but may quantify additional errors prior to the filing of the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2018.* These errors will be corrected as appropriate.

*In addition to the matters identified by the investigation relating to the quarter ended March 31, 2018, the investigation to date has also identified improper reclassifications of gains from income from discontinued operations to income from continuing operations, in total pre-tax amounts of $2.1 million in the quarter ended June 30, 2017 and $4.7 million in the quarter ended December 31, 2017. The investigation to date has also identified improper shifting of pre-tax expense between quarterly periods in 2017 as follows: (1) a total of $3.4 million in compensation expense recorded in the third and fourth quarters of 2017 that should have been recorded in the quarter ended June 30, 2017 and (2) additional expense accrual for health care claims in the amount of $3.5 million recorded in the third and fourth quarters of 2017 that should have been recorded in the quarter ended June 30, 2017. The investigation is continuing and there is no assurance that additional items will not be identified. The Company does not intend to provide additional updates on the results of the investigation until it is concluded or the Company determines that further disclosure is appropriate or necessary.*

*The investigation has found evidence that the improper accounting entries were made by certain employees at the direction of the Company's former vice president and controller. The former vice president and controller was put on administrative leave as of April 25, 2018, and his employment with the Company was terminated as of May 10, 2018.* Two employees who acted under his direction have been re-assigned to different positions within the Company where they will

not have a role in PPG's internal control over financial reporting nor its disclosure controls and procedures.

***In light of the matters set forth above relating to periods in 2017, as well as the ongoing investigation with respect to such periods, the Company, in consultation with the Audit Committee of the Board of Directors and the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP ("PwC"), concluded that the Company's consolidated financial statements for the year ended December 31, 2017 included in its Annual Report on Form 10-K and the related report of PwC, and for the quarterly and year-to-date periods in 2017, should no longer be relied upon.***

The Company is working diligently to complete its investigation, but is currently unable to predict the timing or outcome of the investigation. PPG has self-reported information concerning this investigation to the Securities and Exchange Commission. As a result of the ongoing investigation, PPG will not be able to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 by the deadline of May 10, 2018 and has filed a Form 12b-25 Notification of Late Filing. PPG is currently unable to predict when it will be able to file its Quarterly Report.

(Emphasis added.)

190.    Following the Company's release of the May 10, 2018 press release, the Company's shares fell $5.68 or approximately 5.353% to close at $100.43 on May 11, 2018, damaging investors.

191.    This one-day price decline was material, as reflected by, *inter alia*, the following facts:

d.      As explained in ¶ 188.a, PPG's stock is a relatively low-volatility stock.  During the Comparison Period, the mean change in PPG's stock price was 0.01834% and the standard deviation from that mean was 1.1706%, meaning that approximately 68% of the daily price changes would be expected to be between -1.15226% and 1.18894% in a standard normal distribution.  Thus, during a substantial majority of the trading days in the Comparison Period, PPG's stock price did not move more than 1.2% in either a positive or negative direction.

e.     The 5.353% price decline on May 11, 2018 has a Z-score of -4.59, meaning that the percentage change in PPG's stock price on that date was 4.59 standard deviations below the mean.  In a standard normal distribution, this Z-score corresponds to a p-value of 0.0000022, meaning that the likelihood of such a large price decline occurring just by random chance is only 0.00022%.

f.     During the 331 trading days in the Comparison Period, there were only 2 trading days in which PPG's stock price declined more than 5% and only 3 trading days in which PPG's stock price moved more than 5% in either direction.

## IX.     POST-CLASS PERIOD DISCLOSURES

192.   On June 28, 2018, PPG issued the 2017 Form 10-K/A, the Q1 2018 10-Q, and a press release that summarized certain of the findings of the Investigation and the Restatement (as well as a Form 8-K that attached the aforementioned press release as an exhibit).

193.   A number of the key disclosures provided in the 2017 Form 10-K/A are summarized at ¶¶ 60-71, *supra*.  Among other things, the 2017 Form 10-K/A disclosed that PPG had self-reported to the SEC information concerning PPG's internal investigation of the accounting matters underlying the Restatement, and that SEC was conducting an investigation that is still ongoing.

194.   Selected excerpts from the 2017 Form 10-K/A are attached hereto as Exhibit A to this Complaint and are incorporated by reference, as if fully stated herein.

## X.     CLASS ACTION ALLEGATIONS

195.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired PPG's securities between January 19, 2017 through May 10, 2018, inclusive and who were damaged thereby (the "Class").  Excluded

from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

196.   The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, PPG's securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of PPG shares were traded publicly during the Class Period on the NYSE.   As of January 31, 2018, PPG had 249,880,613 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by PPG or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

197.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

198.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

199.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.   whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of PPG;

c.      whether Defendants knew or deliberately disregarded that their statements were false and misleading;

d.      whether the price of PPG securities were artificially inflated because of Defendants' conduct complained of herein; and

e.      to what extent the members of the Class have sustained damages and the proper measure of damages.

200.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## XI.   APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

201.   The market for PPG's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, PPG's securities traded at artificially inflated prices during the Class Period.  On January 26, 2018, the Company's stock closed at a Class Period high of $121.47 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of PPG's securities and market information relating to PPG, and have been damaged thereby.

202.   During the Class Period, the artificial inflation of PPG's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the

AMENDED CLASS ACTION COMPLAINT

Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PPG's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of PPG and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

203.  At all relevant times, the market for PPG's securities was an efficient market for the following reasons, among others:

a.   PPG stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b.   As a regulated issuer, PPG filed periodic public reports with the SEC and/or the NYSE;

c.   PPG regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d.   PPG was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace; and/or

e.   The average daily trading volume for PPG securities during the Class Period was approximately 1,459,995 shares, with more than 249.88 million

shares of stock outstanding as of January 31, 2018, and a market capitalization reaching almost $30.911 billion during the Class Period.

204.   As a result of the foregoing, the market for PPG's securities promptly digested current information regarding PPG from all publicly available sources and reflected such information in PPG's stock price. Under these circumstances, all purchasers of PPG's securities during the Class Period suffered similar injury through their purchase of PPG's securities at artificially inflated prices and a presumption of reliance applies.

205.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## XII.   INAPPLICABILITY OF THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE

206.   The statutory safe harbor and/or bespeaks caution doctrine applicable to forward-looking statements under certain circumstances do not apply to any of the allegedly false statements pleaded in this Complaint.

207.   The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful

cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

208.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of PPG who knew that the statement was false when made.

## XIII.  CLAIMS FOR RELIEF

### FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### <u>Promulgated Thereunder Against Defendant PPG and Defendant Kelly</u>

209.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

210.   During the Class Period, Defendant Kelly and, by imputation, Defendant PPG carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase PPG's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendant Kelly and, by imputation, Defendant PPG took the actions set forth herein.

211.   Defendant Kelly and, by imputation, Defendant PPG (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for PPG's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

212. Defendant Kelly and, by imputation, Defendant PPG, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about PPG's financial well-being and prospects, as specified herein.

213. Defendant Kelly and, by imputation, Defendant PPG employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PPG's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PPG and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

214. Each of the Individual Defendant's primary liability, and/or controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these

defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

215. PPG's liability as a corporation is predicated, alternatively, on (i) general principles of corporate scienter, (ii) principles of agency law, and/or (iii) principles of vicarious liability pursuant to the doctrine of respondeat superior. The mental states of Defendant Kelly and the mental states of the non-party employees directed by Defendant Kelly to override the Company's internal controls and/or to enter the improper accounting entries may be imputed to PPG in connection with each of the false statements and misleading statements alleged herein.  Each of the acts of Defendant Kelly and the aforementioned non-party employees were conducted within the respective responsibilities and scopes of authority of each of these individuals as employees of PPG.  PPG is liable for each of the false and misleading statements made on its behalf, and the mental states of each of its employees who made, approved, participated in, caused, or furnished information for inclusion or incorporation into, those statements are imputable to PPG.

216. Defendant Kelly and, by imputation, Defendant PPG had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing PPG's financial well-being and prospects from the investing public and supporting the artificially inflated price

of its securities.   As demonstrated by these Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

217.   As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of PPG's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired PPG's securities during the Class Period at artificially high prices and were damaged thereby.

218.   At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.   Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that PPG was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their PPG securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

219.   By virtue of the foregoing, Defendant Kelly and, by imputation, Defendant PPG have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

220.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

221.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

222.   The Individual Defendants acted as controlling persons of PPG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

223.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

224.   While each of the Individual Defendants was, at all relevant times, a controlling person with respect to Defendant PPG, Defendants McGarry and

Morales were also, at all relevant times, controlling persons with respect to Defendant Kelly directly.

225.   Pursuant to Section 4.9 of the Bylaws of PPG Industries, Inc., the Controller of PPG is "[s]ubject to the control of the Board of Directors[.]"  More specifically, Section 4.9 provides in relevant part:

> ***Subject to the control of the Board of Directors, the Controller shall*** determine all accounting policies and procedures, including, without limiting the generality of the foregoing, matters relating to depreciation, depletion, valuation of inventories, the method of creating reserves and accruals, and the establishment of the value of land, buildings, equipment, securities and other assets and shall perform all other acts authorized or required of the Controller by law and shall have such other powers and ***perform such other duties as the Board of Directors may specify***. The Controller may delegate to one or more Assistant Controllers any of the Controller's powers and duties. In the absence of the Controller or during Controller's inability to act, the Controller's powers and duties shall be performed by one or more Assistant Controllers. ***If the office of Controller is vacant, the Controller's duties shall be performed by the officer designated by the Board of Directors***.

(Emphasis added.)

226.   At all relevant times during the Class Period, Defendant McGarry served not only as the Company's CEO but also as the Chairman of its Board of Directors.  Accordingly, as the Chairman of the Board, Defendant McGarry had the power to control or influence Defendant Kelly's actions, including with respect to the particular transactions giving rise to the securities violations as alleged herein. Defendant McGarry also exercised such control as CEO, given his status as the chief executive officer of the Company.

227.   Defendant Morales has served as the Company's CFO since March 1, 2017 and before that served as PPG's Vice President of Finance since June 2016. Given PPG's organizational structure, which provided that the Company's senior accounting officers held both accounting and financial forecasting duties (at least

prior to the remediation measures taken in connection with the Restatement), Plaintiff is informed and believes that the Controller was siloed within the Finance function or department within PPG and that the Controller therefore reported to, directly or indirectly, the CFO of the Company (at least prior to the remediation measures taken in connection with the Restatement).   Accordingly, Defendant Morales had the power to control or influence Defendant Kelly's actions, including with respect to the particular transactions giving rise to the securities violations as alleged herein.

228.   As set forth above, Defendant PPG and Defendant Kelly each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.   By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

# XIV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)   declaring the action to be a proper class action pursuant to Fed. R. Civ. P. 23;

(b)   awarding compensatory damages in favor of Plaintiff and all other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorney's fees and expert fees; and

(d)   awarding equitable, injunctive, and other relief as the Court may deem just and proper.

## XV.   DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 21, 2018

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Robert V. Prongay*

Lionel Z. Glancy
Robert V. Prongay
Jason L. Krajcer
Leanne H. Solish
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

*Counsel for Lead Plaintiff Joe Cammarata
and Lead Counsel for the Class*

## **<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.   On September 21, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 21, 2018, at Los Angeles, California.


<u>*s/ Robert V. Prongay*</u>
Robert V. Prongay

## Mailing Information for a Case 2:18-cv-04231-RGK-JEM Trevor Mild v. PPG Industries, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Gregory L Demers**
  gregory.demers@ropesgray.com,courtalert@ropesgray.com

- **Tiffany E Engsell**
  tiffany.engsell@dechert.com

- **David I Hurwitz**
  dhurwitz@birdmarella.com,docket@birdmarella.com,spalmieri@birdmarella.com

- **Michael L Kichline**
  michael.kichline@dechert.com

- **Jason L Krajcer**
  jkrajcer@glancylaw.com,jason-krajcer-8666@ecf.pacerpro.com,info@glancylaw.com

- **Andrew J Levander**
  andrew.levander@dechert.com,nycmanagingclerks@dechert.com

- **R Daniel O'Connor**
  daniel.oconnor@ropesgray.com

- **Anne Johnson Palmer**
  anne.johnsonpalmer@ropesgray.com,matthew.haut@ropesgray.com,CourtAlert@ropesgray.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Leanne Heine Solish**
  lsolish@glancylaw.com,leanne-heine-solish-7266@ecf.pacerpro.com

- **David H Stern**
  david.stern@dechert.com,theresa.miletich@dechert.com,alex.spjute@dechert.com,susan.spencer@dechert.com,danielle.mayr@dechert.com

- **Catherine V Wigglesworth**
  catherine.wigglesworth@dechert.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)