UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | December 21, 2018 |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER Re: Defendants PPG Industries, Inc.; Vincent J. Morales; and Michael H. McGarry's Motion to Dismiss [DE 52] and Defendant Mark C. Kelly's Motion to Dismiss [DE 53]

## I.  INTRODUCTION

On September 21, 2018, Lead Plaintiff Joe Cammarata[1] filed a first-amended complaint ("FAC") on behalf of persons or entities (collectively, "Plaintiffs") who or which purchased or otherwise acquired PPG securities between January 19, 2017 and May 10, 2018 (the "class period"). Plaintiffs allege violations of the Securities Exchange Act of 1934 against PPG Industries, Inc. ("PPG"), Michael J. McGarry ("McGarry"), Vincent J. Morales ("Morales"), and Mark C. Kelly ("Kelly") (collectively, "Defendants").

PPG is a Fortune-500 company that manufactures and distributes paints, coatings, and specialty materials. During the class period, McGarry served as PPG's Chief Executive Officer and Chairman of the Board of Directors, Morales served as PPG's Senior Vice President and Chief Financial Officer, and Kelly served as PPG's Vice President and Controller. While McGarry and Morales currently maintain their respective roles with PPG, Kelly's employment was terminated on May 10, 2018.

Plaintiffs allege the following claims: (1) violation of section 10(b) of the Exchange Act and rule 10b-5 against Defendants PPG and Kelly; and (2) violation of section 20(a) of the Exchange Act against Defendants McGarry, Morales, and Kelly. Presently before the Court are Defendant PPG, McGarry, and Morales's Motion to Dismiss [DE 52] and Defendant Kelly's Motion to Dismiss [DE 53]. For the following reasons, the Court **DENIES** both motions.

## II.  BACKGROUND

Plaintiffs allege the following facts in the FAC, which the Court takes as true for the purposes of

---

[1] On August 27, 2018, the Court granted Cammarata's motion to be appointed lead plaintiff in place of Trevor Mild. (Order re Mot. Appt. Lead Pl. & Approval of Counsel, ECF No. 44.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

this order.

On April 19, 2018, PPG publicly announced that it received an internal report revealing potential violations of internal accounting policies and procedures. (FAC ¶¶ 49, 186, ECF No. 51.) Based on its preliminary review of the report, PPG discovered that $1.4 million worth of expenses should have been accrued in its financial results for the first quarter of 2018 and that there may have been other unspecified expenses, totally up to $5 million, that were not accrued in the first quarter of 2018. (FAC ¶¶ 49–50.) PPG also disclosed that, because of the internal report and the preliminary findings, the Audit Committee of PPG's Board of Directors would immediately launch an investigation. (FAC ¶ 50.)

On May 10, 2018, PPG announced that the investigation found evidence of improper accounting entries that were made by employees at the direction of Kelly. (FAC ¶ 52.) The investigation identified improper reclassification of gains from income from discontinued operations to income from continuing operation in the amounts of $2.1 million for the second quarter of 2017 and $4.7 million for the fourth quarter of 2017. (FAC ¶ 189.) The investigation also discovered an improper shifting of expenses—in the amount of $6.9 million—from the second quarter of 2017 to the third and fourth quarters of the same year. (*Id.*) Based on these finding, PPG advised that its annual and quarterly financial results from 2017 should not be relied upon and that it would be unable to timely file financial reports for the first quarter of 2018. (*Id.*) PPG also announced that Kelly's employment with PPG had been terminated, effective immediately, and that it had self-reported the investigation to the Securities and Exchange Commission ("SEC"). (*Id.*)

On June 28, 2018, PPG announced that it had concluded its investigation. (FAC ¶ 58.) Based on the investigation's findings, PPG issued restatements for its annual consolidated financial statements for 2016 and 2017, as well as quarterly financial statements for the fourth quarter of 2016 and all quarters in 2017. (*Id.*) PPG also issued a SEC Form 10-K/A report for the 2017 fiscal year and a SEC Form 10-Q for the first quarter of 2018 (collectively, the "Restatement"). (FAC ¶ 60.) The Restatement explained that the investigation identified numerous categories of misstatements in PPG's financial reports that had been issued during the class period. (*Id.*) The Restatement also found that Kelly had "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process" and that his directions "were followed and not disclosed to others in senior management, the Audit Committee, or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls." (FAC ¶ 65.)

Based on these facts, Plaintiffs allege that Kelly engaged in a "smoothing scheme in which he intentionally manipulated PPG's financial results with improper accounting adjustments" that caused some of PPG's financial metrics—including income from continuing operations and adjusted earnings per share—to be materially misstated, which led to declines in PPG's stock price and caused damage to investors. (FAC ¶ 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

### III.     JUDICIAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Courts must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations or unwarranted inferences when deciding on the motion. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005).

Securities fraud class actions, however, must meet the higher, more exacting pleading standards of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy this standard, a "complaint must 'identify the who, what, when, where, and how the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

The PSLRA requires that "a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002). The PSLRA requires that "the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). The PSLRA also requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at § 78u–4(b)(1)(B); *Or. Pub. Emps, Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).

### IV.     JUDICIAL NOTICE

When ruling on a Rule12(b)(6) motion to dismiss a section 10(b) action, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

12(b)(6) motions to dismiss, in particular, [1] documents incorporated into the complaint by reference, and [2] matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document is "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Such documents are considered part of the pleading and are therefore presumed true for purposes of a motion to dismiss.

A court may also consider matters that are subject to judicial notice. *Tellabs*, 551 U.S. at 322. Judicial notice is appropriate for facts "not subject to reasonable dispute" that are generally known or are capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendants ask the Court to take judicial notice of various documents attached to their motions to dismiss. (PPG's Request for Judicial Notice, ECF No. 52-1; Kelly's Request for Judicial Notice, ECF No. 53-1.) PPG submits three documents for judicial notice, which are copies of its SEC Form 10-Q filings from first quarter 2017, third quarter 2017, and first quarter 2018. (PPG's Request for Judicial Notice Exs. A–C, ECF No. 52-2–4.) In addition, Kelly submits two documents for judicial notice, PPG's Proxy Statements from 2017 and 2018. (Kelly's Request for Judicial Notice Exs. 1–2, ECF No. 53-3–4.)

Plaintiffs also request that the Court take judicial notice of documents attached to their opposition to PPG, McGarry, and Morales's motion to dismiss. (Pls.' Request of Judicial Notice, ECF No. 57-1.) Plaintiffs submit two documents for judicial notice, PPG's Second Quarter 2017 Earning Release and PPG's Prospectus Supplement to Prospectus dated August 1, 2016. (Pls.' Request for Judicial Notice Exs. A–B, ECF No. 57-2–3.)

Federal courts routinely take judicial notice of SEC filings. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006). The Court therefore **GRANTS** the parties' requests and will consider these documents in ruling on the motions. The Court does not, however, consider these documents in order to determine the truth of the statements contained therein, but instead considers them to determine what statements were made and how these statements relate to the allegations in the FAC. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) .

**V.     DISCUSSION**

Defendant PPG and Defendant Kelly move to dismiss both claims in the FAC. The Court addresses each claim in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

### A. Plaintiffs' Section 10(b) Claim

Plaintiffs' first claim is that Defendants violated section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, promulgated under the authority of section 10(b). Section 10(b) makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" 15 U.S.C. § 78j(b). Rule 10b-5 provides:

> It shall be unlawful for any person . . .
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Section 10(b) and Rule 10b-5 create a private right of action "which resembles, but is not identical to, common-law tort actions for deceit and misrepresentation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). The basic elements for a private action under section 10(b) and Rule 10b-5 are: (1) material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Dura*, 544 U.S. at 341–42; *Metzler Inv. GMBH v. Corinthian Colleges*, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008).

Defendants argue that Plaintiffs' fail to adequately plead (1) material misrepresentation and (2) scienter.

#### i. *Material Misrepresentation*

Plaintiffs allege that PPG's quarterly and annual reports filed with the SEC—including the 2016 10-K Form, the Q1 2017 10-Q Form, the Q2 2017 10-Q Form, the Q3 2017 10-Q Form, and the 2017 10-K Form—were misstated. Plaintiffs also allege that PPG announced these financial statements should not be relied on and restated—i.e., reissued—the financial statements. Plaintiffs further allege that Kelly was responsible for the misstatements, since PPG's internal investigation found that the improper accounting entries were made by employees at Kelly's direction.

Defendants do not contest Plaintiffs allegations that the misstatements were false. Instead, Defendants contend that the misstatements were immaterial because Plaintiffs only alleged minor accounting adjustments that both increased and decreased PPG's reported income.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

To adequately plead materiality, a plaintiff must allege that there is was "a substantial likelihood that the disclosure of the omitted facts would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levison*, 485 U.S. 224, 231–32 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Questions of materiality are typically questions of fact left for the jury, and the issue may be resolved as a matter of law only where the misstatements are so obviously unimportant "that reasonable minds cannot differ on the question of materiality." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011).

Plaintiffs assert that PPG's misstatements caused certain financial metrics—such as net income, income from continuing operations, and adjusted earnings per diluted share from continuing operations ("adjusted EPS")—to be overstated in certain quarters, especially the fourth quarter of 2016 and the second quarter of 2017. (FAC ¶ 27.) For example, PPG initially reported an adjusted EPS of $1.19 for the fourth quarter of 2016, which outperformed the consensus estimate of $1.18. (FAC ¶ 38.) Following the Restatement, however, the adjusted EPS for the fourth quarter of 2016 was below the consensus estimate at $1.17. (*Id.*) Likewise, PPG initially reported an adjusted EPS of $1.83 for the second quarter of 2017, surpassing consensus estimates of $1.82, but the actual adjusted EPS was $1.80 after the misstatements were corrected. (FAC ¶¶ 40, 43.) Plaintiffs assert that PPG had a reputation for consistently meeting or exceeding consensus estimates, (FAC ¶ 30-31), that adjusted EPS is one of the key financial metrics upon which PPG's securities analysts focus, (FAC ¶ 28), and that it is a metric "highlighted prominently in each of PPG's earning releases" (FAC ¶ 37).

Moreover, "while improper accounting requiring a restatement does not, by itself, establish materiality, it can be used as evidence." *United States v. Reyes*, 660 F.3d 454, 470 (9th Cir. 2011). Thus, given PPG's issuance of the Restatement and the allegations that the Restatement caused key financial metrics to be overstated, the Court cannot determine that the misstatements are so unimportant that reasonable investors could not find the misstatements to be material.

Accordingly, the Court find that Plaintiffs adequately allege that the misstatements were material.

      ii.    <u>Scienter</u>

The PSLRA requires that a securities fraud complaint state particular facts showing that the defendants acted with the required state of mind, or scienter. *Daou Sys.*, 411 F.3d at 1022. In the securities fraud context, scienter is the intent to deceive, manipulate, or defraud. *Tellabs*, 551 U.S. at 313-14. In the Ninth Circuit, the scienter requirement is satisfied when the defendant acts intentionally or with reckless disregard in making false material statements. *Daou Sys.*, 411 F.3d at 1022. The scienter analysis focuses on the state of mind of defendants at the time the false statements were made. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

To adequately plead reckless disregard, Plaintiffs must allege specific facts indicating a level of reckless disregard that strongly suggests actual intent. *Metzler*, 540 F.3d at 1066 (quoting *In re Silicon Valley Graphics Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999)). The Ninth Circuit defines deliberate recklessness as "an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (emphasis in original) (finding that "*mere* recklessness or a motive to commit fraud" is not enough) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)).

In analyzing the sufficiency of a plaintiff's scienter allegations, the Court takes a holistic approach to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets the standard." *Tellabs*, 551 U.S. at 322-23. Additionally, the court must take into account plausible opposing inferences. *Id.* at 323. "A plaintiff . . . must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 328. A strong inference of scienter is defined as more than merely plausible or reasonable, but "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Id.* at 314.

Here, Plaintiffs contend that they plead facts sufficient to give rise to a strong inference of scienter. Plaintiffs also contend that Kelly's scienter should be imputed to PPG. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (finding that scienter of individual defendants can be imputed to their company).

Specifically, Plaintiffs allege that: (1) Kelly engaged in a "smoothing scheme" where he shifted income from one quarter to another, which adjusted certain financial metrics in order to meet consensus analyst estimates; (2) Kelly engaged in this scheme to enhance his compensation; (3) this scheme involved making several accounting adjustments in violation of Generally Accepted Accounting Principles ("GAAP"); (4) Kelly directed his subordinates to improperly override internal controls in order to enter improper accounting adjustments; (5) Kelly did not inform other PPG officers about the overrides; (6) Kelly's position at PPG and his professional experience suggest that the improper accounting adjustments were not innocent mistakes; (7) Kelly was terminated in connection with PPG's Restatement; and (8) PPG announced several changes to internal controls procedures in the Restatement. As explained below, the Court finds that, collectively, these allegations give rise to a strong inference of scienter.

PPG and Kelly argue that Plaintiffs fail to adequately plead the scienter. Both present similar arguments, which the Court addresses together. At the outset, however, the Court notes that most of their arguments against a finding of scienter are based on a review of Plaintiffs' allegations in isolation. As discussed above, the Court will not review and dispose of these allegations individually. Each constitutes only one of the facts relevant to the Court's holistic analysis of scienter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

Defendants first counter that Plaintiffs' alleged "smoothing scheme" is flawed because Plaintiffs do not allege that Kelly benefitted from the scheme. Defendants argue that Plaintiffs purported scheme is based on moving earnings across various quarters to meet analysts' estimates, but that Kelly's compensation was not tied to quarterly earnings or consensus estimates. Defendants also fault Plaintiffs for failing to allege that Kelly made stock sales during the class period and contend that such failure negates any inference of scienter. But, even though facts showing a lack of motive are relevant, failure to allege motive is not fatal. *Matrixx*, 563 U.S. at 48. Therefore, while the Court is skeptical of Plaintiffs' motive allegations, this is simply a factor that weighs against a finding of scienter.

Next, Defendants contend that PPG's Restatement is insufficient to suggest a strong inference of scienter. As Defendants correctly point out, the Ninth Circuit has held that "the mere publication of a restatement is not enough to create a strong inference of scienter." *Zucco*, 552 F.3d at 999. Here, however, Plaintiffs allege PPG admitted in the Restatement that Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process" and that his directions were followed. (FAC ¶ 65.) Unlike the plaintiffs in *Zucco*, Plaintiffs allegations are not based on the bare assertion that PPG restated its financials, but rather on the specific statements within the Restatement. *See Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1209 (D. Or. 2006) (finding plaintiffs allegations insufficient to establish strong inference of scienter because defendant had "not admitted to any override of internal controls").

Defendants also raise issue with the fact that Plaintiffs allegations of GAAP violations and internal controls overrides are conclusory. "[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, *without more*, does not establish scienter." *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (emphasis added) (quoting *In re Software Toolworks, Inc.*, 50 F.3d 615, 627 (9th Cir. 1994)). As for the alleged GAAP violations, Plaintiffs allege that PPG and Kelly prepared financial results that were in violation of GAAP, and they list numerous principles that they contend were violated. But Plaintiffs fail to plead particularized facts showing how PPG and Kelly violated the principles listed in the FAC. Given the PSLRA's heightened-pleading standard, the threadbare assertion that PPG and Kelly prepared financial statements in violation of GAAP does not suggest a strong inference of scienter.

As to the allegation that Kelly directed employees to override internal controls, however, Plaintiffs fare better. Defendants, again, correctly point out that the mere allegations of deficient internal controls, *without more*, are insufficient to create a strong inference of scienter, *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1364–65 (C.D. Cal. 2014). Here, Plaintiffs plead that Kelly and his subordinates overrode internal controls to enter improper accounting adjustments. (FAC ¶¶ 65, 162, 177, 189.) Plaintiffs assert that they did so "after the end of each quarter and close to the end of the financial close process." (FAC ¶ 178.) Plaintiffs also allege that PPG's Global Code of Ethics requires employees "to maintain proper internal accounting controls." (FAC ¶ 169.) Plaintiffs further allege, based on additional admissions by PPG in the Restatement, that Kelly did not disclose the fact that he overrode internal controls to PPG's other corporate officers. (FAC ¶ 65.) The Court finds that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

this allegation alone is suspicious. This allegation coupled with the allegation that employees overrode the internal controls to enter improper accounting adjustments moves the needle towards an inference of scienter.

This finding is further supported by Plaintiffs' allegations that Kelly's experience and position create an inference of scienter. Of course, simply having an extensive background in accounting or holding a high-level position at Fortune-500 company is not always suggestive of scienter. But here, the allegations that Kelly served as PPG's Controller and Principal Accounting Officer and that he had 30 years of experience in finance and accounting add a piece to the scienter puzzle. That is, Kelly's position and background make it more likely that he knew or recklessly disregarded the impact that misrepresentations in the financial reports would have on investors.

Lastly, Defendants contend that Kelly's termination of employment and PPG's remedial measures do not influence the scienter analysis. The Court disagrees. "A resignation or termination provides evidence of scienter only when it is accompanied by additional evidence of the defendant's wrongdoing." *E.g.*, *In re Int'l Rectifier Corp. Secs. Litigation*, 2:07-cv-02544-JFW-VBK, 2008 WL 4555794 at *16 (C.D. Cal. May 23, 2008). Here, Plaintiffs allege additional evidence. Plaintiffs allege that Kelly was placed on administrative leave shortly after PPG announced that it had received an internal report alleging violations of internal accounting policies and procedures. (FAC ¶¶ 48–49.) Then, on May 10, 2018, PPG announced that its initial investigation found evidence of improper accounting entries and that Kelly's employment had been terminated, effective immediately. Moreover, Plaintiffs allege that on June 28, 2018, PPG announced that it had concluded its investigation and that it was instituting a remedial plan to address the investigation's findings. (FAC ¶¶ 58, 67.) Based on the timing of Kelly's termination and PPG's announcement of remedial measures, the Court finds that these allegations add to the inference of scienter.

Viewing Plaintiffs' allegations in totality, an inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The Court therefore finds that Plaintiffs plead facts sufficient to suggest Kelly knew of or recklessly turned a blind eye to the misrepresentations in the financial reports that PPG issued during the class period.

Accordingly, the Court **DENIES** Kelly's Motion to Dismiss Plaintiffs' section 10(b) claim.

        *iii.*    <u>Imputing Kelly's Scienter to PPG</u>

The Court must now determine whether Kelly's scienter should be imputed to PPG. As explained above, the scienter of individuals can be imputed to their employer. *Nordstrom*, 54 F.3d at 1435. That is, conduct by a corporation's senior controlling officers may be attributed to the corporation itself to establish corporate liability on section 10(b) claims when those officers "were acting within the scope of their apparent authority." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (explaining that principles of agency law apply in the context of Rule 10b-5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

PPG does not dispute that Kelly acted within the scope of his apparent authority. Instead, PPG contends that agency law's so-called "adverse interest exception" bars imputation to PPG because Kelly's actions were averse to PPG. In *ChinaCast*, the corporate defendant raised a similar argument, which the Ninth Circuit rejected, explaining that—just as in agency law—"there is an exception to the exception: the adverse interest rule collapses in the face of an innocent third party." *Id*. at 477. Nevertheless, PPG contends that, even though Plaintiffs are innocent third parties, the adverse exception applies here because the Ninth Circuit's holding in *ChinaCast* was narrowly tailored to the facts of the case. Specifically, PPG argues that the adverse exception did not apply in *ChinaCast* because the company was aware of potential misconduct and continued to ignore it. PPG further contends that, since Plaintiffs allege that PPG addressed Kelly's misconduct as soon as it was brought to PPG's attention, the adverse exception should apply, and Kelly's scienter should not be imputed to PPG.

The Court is not convinced. The *ChinaCast* court made clear that its holding was not narrowly tailored to the facts before it:

> Assuming a well-pled complaint, we recognize that, having a clean hands plaintiff eliminates the adverse interest exception in fraud on the market suits because a bona fide plaintiff will always be an innocent third party. The gymnastic exercise of imposing a general rule of imputation followed by analyzing the applicability of the exception to the exception becomes unnecessary.

*Id*. at 479.

The Court therefore rejects PPG's argument and finds that Plaintiffs adequately allege that Kelly's scienter should be imputed to PPG. Accordingly, the Court **DENIES** PPG's motion as to Plaintiffs' section 10(b) claim.

### B.      Plaintiffs' 20(a) Claim

Plaintiffs' second claim is that Defendants Kelly, McGarry, and Morales violated section 20(a) of the Exchange Act of 1934. Section 20(a) confers liability on those who direct others to commit violations of the Exchange Act, stating:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-04231-RGK-JEM | Date | |
|---|---|---|---|
| Title | **MILD v. PPG INDUSTRIES, INC.** | | |

To allege a violation of section 20(a), a plaintiff must establish (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator. *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

McGarry and Morales's lone argument is that Plaintiffs fail to allege a primary violation. Since the Court finds that Plaintiffs adequately allege a section 10(b) claim, the Court **DENIES** McGarry and Morales's motion as to Plaintiffs' section 20(a) claim.

Kelly raises an additional argument. Relying on an out-of-circuit, district court order, Kelly contends that he cannot be held liable as both a primary violator and a control person. *See In re Banco Bradesco S.A. Secs. Litig.*, 277 F. Supp. 3d 600, 668 (S.D.N.Y. 2017). However, as Plaintiffs correctly point out, the same line of authority Kelly relies upon has also made it clear that it is permissible to pursue both claims at the motion to dismiss stage of litigation. *See In re Alstom*, 454 F. Supp. 2d 187, 210–11 (S.D.N.Y. 2006). The Court therefore **DENIES** Kelly's motion as to Plaintiffs' section 20(a) claim.

## VI. CONCLUSION

In light of the foregoing, the Court **DENIES** Defendants PPG, Morales, and McGarry's Motion to Dismiss [DE 52] and **DENIES** Defendant Kelly's Motion to Dismiss [DE 53].

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PG |