1

**GLANCY PRONGAY & MURRAY LLP**

2

LIONEL Z. GLANCY (#134180)
PETER A. BINKOW (#173848)

3

ROBERT V. PRONGAY (#270796)

4

JASON L. KRAJCER (#234235)
LEANNE H. SOLISH (#280297)

5

1925 Century Park East, Suite 2100

6

Los Angeles, CA 90067
Telephone: (310) 201-9150

7

Facsimile: (310) 201-9160

8

Email: lglancy@glancylaw.com

9

*Counsel for Lead Plaintiff Joe Cammarata*

10

*and Lead Counsel for the Class*

11

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

12

13

TREVOR MILD, Individually
and on Behalf of All Others Similarly
Situated,

14

15

Plaintiff,

16

v.

17

18

PPG INDUSTRIES, INC.,
MICHAEL H. MCGARRY,

19

VINCENT J. MORALES, and
MARK C. KELLY,

20

21

Defendants.

Case No.: 2:18-cv-04231-RGK-JEM

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
LEAD PLAINTIFF'S UNOPPOSED
MOTION FOR (I) PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT,
(II) CERTIFICATION OF THE
SETTLEMENT CLASS, AND
(III) APPROVAL OF NOTICE TO
THE SETTLEMENT CLASS**

Date:    July 1, 2019
Time:    9:00 a.m.
Crtm.:   850
Judge:   Hon. R. Gary Klausner

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE ACTION...................1

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..............1

     A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class .................................................................... 4

     B.    The Settlement is the Product of Arm's Length Negotiations Between Experienced Counsel............................................................. 5

     C.    The Relief Provided for the Settlement Class is Adequate................... 6

          1.    The Settlement Amount................................................. 6

          2.    The Cost, Risk, and Delay of Trial and Appeal ......................... 8

          3.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval .................................................................10

     D.    All Settlement Class Members Are Treated Equitably....................... 12

     E.    The Remaining Ninth Circuit Factors Are Satisfied........................... 13

          1.    The Extent of Discovery Completed and the Stage of the Proceedings at Which Settlement Was Achieved Strongly Supports Preliminary Approval ................................................13

          2.    The Recommendations of Experienced Counsel......................14

IV.   The Proposed Class Notice Should Be Approved...........................................14

     A.    The Method of Notice is Adequate ....................................... 14

     B.    The Content of the Notice is Adequate............................... 15

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ...........................16

i

A.   Numerosity – Rule 23(a)(1) ................................................................. 17

B.   Commonality – Rule 23(a)(2) ............................................................. 17

C.   Typicality – Rule 23(a)(3) ................................................................. 18

D.   Adequacy – Rule 23(a)(4) ................................................................. 19

E.   Predominance and Superiority – Rule 23(b)(3) ................................... 19

VI.   PROPOSED SETTLEMENT SCHEDULE .................................................... 20

VII.   CONCLUSION ........................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1977)..................................................................................17, 19

*Churchill Village, L.L.C. v. General Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...................................................................15

*Dubin v. Miller*,
  132 F.R.D. 269 (D. Colo. 1990) ..............................................................18

*Eisenberg v. Gagnon*,
  766 F.2d 770 (3d Cir. 1985) .....................................................................19

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................................2

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) .....................................................................9

*Gribble v. Cool Transports Inc.*,
  2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)..........................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................3, 4, 16

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ....................................................................18

*IBEW v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012)...............................................6

*Ikuseghan v. Multicare Health System*,
  2016 WL 3976569 (W.D. Wash. July 25, 2016)........................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ......................................7, 8, 12

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................................ 10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ...................................................... 10

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) .................................................... 12

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...................................................... 2

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................ 12

*In re Enron Corp. Sec. & ERISA Litig.*,
    2003 WL 22494413 (S.D. Tex. July 24, 2003) .................................................... 15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................................ 14

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ........................................................ 19

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................... 11

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................... 8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. 2009) .................................................................. 7, 9

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................ 11, 13

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 .......................................................................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................... 11

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................. 4

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................... 2

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ................................................ 8

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ............................................................... 9

*Jaffe v. Morgan Stanley & Co., Inc.*,
   2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .............................................. 17

*Karam v. Corinthian Colleges Inc.*,
   2017 WL 4070889 (C.D. Cal. July 7, 2017) ..................................... 17, 18

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...................................................... 8

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................. 9

*Roberti v. OSI Systems, Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ............................................ 5

*Santos v. Camacho*,
   2007 WL 81868 (D. Guam Jan. 9, 2007) ............................................... 16

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
   2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ........................................... 15

*Swinton v. SquareTrade, Inc.*,
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ...................................... 3, 4

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) .......................................................... 10

v

MEMORANDUM OF POINTS AND AUTHORITIES

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) ........................................................................17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .....................................................................17, 19

STATUTES

15 U.S.C. §78u-4(a)(4) ................................................................................................12

15 U.S.C. §78u-4(a)(7) ................................................................................................16

RULES

Fed. R. Civ. P. 23 ...............................................................................................*passim*

## I.   __INTRODUCTION__

Lead Plaintiff Joe Cammarata ("Lead Plaintiff"), on behalf of himself and the proposed Settlement Class, respectfully seeks preliminary approval of the $25,000,000 all cash settlement ("Settlement") he has reached with defendants PPG Industries, Inc. ("PPG"), Michael H. McGarry, and Vincent J. Morales (collectively, with PPG, the "PPG Defendants"), and Mark C. Kelly (collectively, with the PPG Defendants, the "Defendants").[1]   This memorandum outlines the Settlement's parameters, demonstrates why preliminary approval should be granted, and proposes a schedule for final approval of the Settlement.  It also establishes why the Court should: (i) certify the proposed Settlement Class; and (ii) approve the form and manner of providing notice of the Settlement to Settlement Class Members.  Defendants support preliminary approval and do not oppose Plaintiff's motion.

## II.   __FACTUAL AND PROCEDURAL HISTORY OF THE ACTION__

The Solish Declaration is an integral part of this submission.  For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action (¶¶2-16); the nature of the claims asserted (¶4); the negotiations leading to the Settlement (¶¶17-18); some of the risks and uncertainties of continued litigation (¶¶24-25); and the terms of the Plan of Allocation for distribution of the Net Settlement Fund (¶¶26-30).

## III.   __THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL__

The Ninth Circuit and courts throughout the country recognize that public

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 1, 2019 ("Stipulation") or the Declaration of Leanne H. Solish in Support of Lead Plaintiff's Unopposed Motion for (I) Preliminary Approval of Class Action Settlement, (II) Certification of the Settlement Class, and (III) Approval of Notice to the Settlement ("Solish Declaration" or "Decl."), filed concurrently herewith.  A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration.  Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Declaration.

policy strongly favors settlements for resolving disputes, especially in complex class actions. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").   Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation.   Moreover, the settlement of such complex cases greatly contributes to the conservation of scarce judicial resources.   *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court.").

Fed. R. Civ. P. 23(e) requires court approval for any settlement of a class action.  Settlement approval is a two-step process (*see In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015)), and Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."   Rule 23(e)(2)—which governs final approval—now requires courts to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

    (A)    have the class representatives and class counsel adequately represented the class;

    (B)    was the proposal negotiated at arm's length;

    (C)    is the relief provided for the class adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3); and

MEMORANDUM OF POINTS AND AUTHORITIES

1      (D)    does the proposal treat class members equitably relative to each other.

2 *See* Fed. R. Civ. P. 23(e)(2).

3      These factors are not, however, exclusive.  The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 918); *Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The [Rule 23(e)(2)] considerations . . . were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement.").  For this reason, the Ninth Circuit's traditional factors used to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant.  The traditional factors are: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."[2]  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Swinton*, 2019 WL 617791, at *5 ("The Court will therefore consider the Rule 23(e)(2) factors along with the factors developed by courts in the Eighth Circuit.").

      In sum, although the factors by which a settlement is evaluated may have changed in some respects, what has not changed is that "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate."  Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918);

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

*see also Swinton*, 2019 WL 617791, at *5 (stating that "[t]hese changes are mostly form over substance, but they do focus the Court's analysis" and that "[t]he requirement that a settlement be 'fair, reasonable, and adequate' is nothing new.").

As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representative[] and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class during both the litigation of this Action and its settlement.  Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel, GPM, have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country for more than 26 years.  *See* Ex. 2 (GPM firm resume).  As discussed more fully in

Sec. III.E.1, *infra*, Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation, including conducting an extensive investigation, as well as substantial motion practice and discovery. *See also* ¶¶2-16. Lead Plaintiff and Lead Counsel have, therefore, adequately represented the Settlement Class.

**B.      The Settlement is the Product of Arm's Length Negotiations Between Experienced Counsel**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See Ikuseghan v. Multicare Health System*, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) ("This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation.").

As noted in the Solish Declaration, the proposed Settlement was achieved only after an all-day, in-person mediation session, followed by additional arm's length negotiations, and a mediator's recommendation by a former U.S. District Court Judge Layn R. Phillips, a well-respected third-party neutral. ¶17. As part of the mediation process, Lead Counsel and Defendants' Counsel prepared detailed mediation statements, including exhibits, concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. *Id.* Many issues were explored in-depth and with substantial input from the mediator. It simply cannot be disputed that the negotiations were conducted at arm's length by experienced counsel who were well-aware of the strengths and weaknesses of the case and the Defendants' defenses.[3] Accordingly, this factor weighs in favor of preliminary approval.

---

[3] *See, e.g.*, *Roberti v. OSI Systems, Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8,

**C.     The Relief Provided for the Settlement Class is Adequate**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

**1.     The Settlement Amount**

The $25,000,000 cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Here, Lead Plaintiff alleged that class members suffered losses following two partial corrective disclosures: one on April 19, 2018 and one on May 10, 2018.  Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed in each of his claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury fully accepted Plaintiff's loss causation and damages arguments—*i.e.*, Lead Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $428.2 million.  Thus, the $25 million Settlement Amount represents approximately 5.8% of the total ***maximum*** damages *potentially* available in this Action.  In comparison, the median recovery in securities class actions in 2018 was approximately 2.6% of estimated damages, and for similar actions with damages estimated between $400-$599 million, the median recovery was 1.8% of estimated damages.  *See* ¶24, Ex. 3 (Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019) at p. 36, Fig. 28 and p. 35, Fig. 27); *see also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev.

---

2015) (recognizing the arms'-length nature of the negotiation because it was "conducted with the help of Judge Layn R. Phillips," and the settlement was a result of a full-day mediation session, follow up negotiations, and the acceptance of the mediator's recommendation).

Oct. 19, 2012) (approving settlement where recovery was 3.5% of maximum damages and noting "this amount is within the median recovery in securities class actions settled in the last few years").

This was, however, Lead Plaintiff's best case scenario, and Defendants had raised a number of arguments concerning loss causation and damages at the mediation that—if accepted—would have substantially reduced recoverable damages.  For example, if Lead Plaintiff failed to establish loss causation with respect to the April 19, 2018 disclosure, the Class's estimated maximum recoverable damages would be reduced to $310.4 million, which equates to a recovery of 8.1%.  Defendants also raised an argument in relation to the May 10, 2018 corrective disclosure concerning the speed of a price adjustment in an efficient market.  If that argument were accepted by the Court and jury, it had the potential to drastically reduce the Class's recoverable damages.  According to Lead Plaintiff's damages expert, if Lead Plaintiff failed to establish loss causation with respect to the April 19, 2018 disclosure and the Court and/or jury fully accepted Defendants' arguments concerning the speed of the price adjustment in connection with the May 10, 2018 disclosure, the maximum recoverable damages would be between approximately $17 million and $30.5 million.  Under this scenario, the settlement would represent between 82% and 147% of recoverable damages.  ¶25.  In light of these risks concerning loss causation and the proper calculation of damages, the Settlement Amount is well within the range of reasonableness.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for

damages.").

## 2. The Cost, Risk, and Delay of Trial and Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Securities fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner*, 2006 WL 903236, at *8.

Here, there is no question that continued litigation would have been costly, risky, and drawn out. Indeed, even though Lead Plaintiff prevailed at the motion to dismiss stage, the Court's decision regarding Lead Plaintiff's motion class certification was pending at the time the Settlement was reached. Although Lead Plaintiff believes the motion was meritorious, Defendants raised plausible arguments contesting class certification, and thus class certification was not a foregone conclusion. Had Lead Plaintiff failed to obtain class certification, the benefit to the Settlement Class would been eliminated. Moreover, even assuming class certification was achieved, the Court could have revisited certification at any time—presenting a continuous risk that this case, or particular claims, might not be

maintained on a class-wide basis through trial.  *See, e.g.*, *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1041 (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *See Marsh & McLennan*, 2009 WL 5178546, at *6 ("the uncertainty surrounding class certification supports approval of the Settlement").

Furthermore, even if Lead Plaintiff prevailed at the class certification stage, he would still have to **prove** his claims.  This would be no small task and Lead Plaintiff and Lead Counsel recognize the significant risk, time, and expense involved in prosecuting Lead Plaintiff's claims against Defendants through completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.  Further depositions would have to be taken and expert discovery completed. Defendants' expected motions for summary judgment would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain.  *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").

In addition, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[4]

_____

[4] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing

In sum, even if Lead Plaintiff were to prevail after trial and appeals, there is no guarantee that he would have obtained a judgment greater than the $25 million Settlement.  There was, as in any complex securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future.  *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").  By contrast, the Settlement provides a favorable, immediately-realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.

### 3. Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

*First*, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.   Here, JND Legal

---

jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

Administration ("JND"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.  ¶30.  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[5]

**Second**, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 27% to compensate them for the services they rendered on behalf of the Settlement Class. ¶37.  A proposed attorneys' fee of up to 27% of the Settlement Fund is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex securities class action cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) (a 33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding 33% fee in $27,783,000 settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶18.

---

[5] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶15.

***Third***, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement which establishes certain conditions under which PPG may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of PPG common stock, request exclusion (or "opt out") from the Settlement.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### D.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.   As explained in the Solish Declaration at ¶¶26-30, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.[6] Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiff, this factor supports preliminary approval of the proposed Settlement.[7]

---

[6] Courts have repeatedly approved similar plans.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *AOL Time Warner*, 2006 WL 903236, at *17.

[7] Pursuant to the PSLRA, Lead Plaintiff will separately seek reimbursement of costs and expenses incurred as result of his representation of the Settlement Class.  *See* 15 U.S.C. §78u-4(a)(4).

**E.     The Remaining Ninth Circuit Factors Are Satisfied**

    **1.     The Extent of Discovery Completed and the Stage of the Proceedings at Which Settlement Was Achieved Strongly Supports Preliminary Approval**

The relevant inquiry under this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See Mego*, 213 F.3d at 459. The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement. *See id.*

Here, Lead Plaintiff and Lead Counsel obtained sufficient information about the facts underlying the claims to evaluate the proposed Settlement, by, among other things:

- Conducting a thorough investigation of the claims asserted in the Action, which included an in-depth review and analysis of: (i) PPG's SEC filings, press releases, investor conferences calls, and other public statements; (ii) publicly available documents, announcements, and news articles concerning PPG; (iii) research reports prepared by securities and financial analysts regarding PPG; (iv) interviews with former employees and other potential witnesses with relevant information; and (v) consultations with accounting, loss causation and damages experts (¶5);

- Drafting the comprehensive and detailed Complaint based on this extensive investigation and legal research into the applicable claims (¶4);

- Researching and preparing extensive briefing in response to Defendants' motions to dismiss and successfully defeating those motions (¶6);

- Engaging in extensive discovery, including, *inter alia*, propounding and responding to numerous discovery requests, collecting and producing approximately 14,000 pages of documents, and conducting along with their accounting experts, a targeted review and analysis of the approximately 2.2 million pages of documents produced by Defendants (¶¶8-11);

- Fully briefing a motion for class certification, which required consulting a market efficiency expert, preparing and defending the depositions of Lead Plaintiff and his market efficiency expert, deposing the PPG Defendants' market efficiency expert, and submitting a class certification reply brief (¶15); and

- Drafting a mediation brief, including exhibits, containing detailed analyses of the strengths, risks, and potential issues in the litigation and participating in a mediation overseen by a well-respected neutral (¶17).

Thus, at the time the Settlement was reached, Lead Plaintiff and his counsel obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise the merits of the Settlement. Accordingly, this factor supports preliminary approval of the Settlement.

### 2. The Recommendations of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Gribble v. Cool Transports Inc.*, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"). Here, Lead Counsel have extensive experience in securities litigation, have obtained a thorough understanding of the strengths and weaknesses of the Action, and believe that the Settlement is fair, reasonable, and adequate. Consequently, this factor supports preliminary approval. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2-3 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

### IV. The Proposed Class Notice Should Be Approved

### A. The Method of Notice is Adequate

Rule 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or

compromise shall be given to all members of the class in such manner as the Court directs.  Here, Lead Counsel propose to mail, by first class mail, individual copies of the Notice and Claim Form (together the "Notice Packet") to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.   ¶31.   Contemporaneously with the mailing of the Notice Packet, downloadable copies of the Notice and the Claim Form will be posted on a website developed for the Settlement.[8]  The website will also allow online claim submission. ¶32.  No more than ten (10) business days after mailing the Notice Packet, the Summary Notice will also be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.  ¶33.

Courts routinely find that these methods of notice are sufficient.  Thus, Lead Plaintiff respectfully submits that the proposed notice program provides "the best notice practicable under the circumstances" and should be approved.  *In re Enron Corp. Sec. & ERISA Litig.*, 2003 WL 22494413, at *3 (S.D. Tex. July 24, 2003).

## B.   The Content of the Notice is Adequate

As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses.  *See Stratton v. Glacier Ins. Adm'rs, Inc.*, 2007 WL 274423, at *14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."); *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if

---

[8] www.PPGIndustriesSecuritiesLitigation.com.

it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

The proposed notice program satisfies Rule 23(c)(2) by setting forth in plain, easily understandable language: (i) the nature of the action; (ii) the Settlement Class definition; (iii) a description of the claims and defenses at issue; (iv) the ability of Settlement Class Members to enter an appearance through counsel; (v) the Settlement Class Member's ability to be excluded from the Settlement Class and the process for exclusion; and (vi) the binding effect of a class judgment. *See* ¶35.

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. §78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Notice; (ii) statement of plaintiff recovery, and the estimated recovery per damaged share; (iii) statement of potential outcomes of case; (iv) statement of attorneys' fees or costs sought; (v) identification of lawyers' representatives; and (vi) reasons for settlement. ¶36.

Further, the notice program will provide clear information about the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement and other relief to be requested by Lead Plaintiff and Lead Counsel. *See* ¶37; *see also Santos v. Camacho*, 2007 WL 81868, at *7 (D. Guam Jan. 9, 2007) (notice approved where class members would be mailed a notice and notice would also be published, and where the proposed notice adequately described the facts of the case, the members of the class, the settlement terms, information regarding attorney fees, information on how class members may object to the settlement, and contact information for class counsel and defense counsel).

## V.   <u>THE SETTLEMENT CLASS SHOULD BE CERTIFIED</u>

The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only as long as the class meets the certification requirements under Rule 23. *See Hanlon*, 150 F.3d at 1019. Under Rule 23(a), a

class may be certified if the following four factors are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *See e.g.*, *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) are satisfied. *Id*. Under subsection (b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id*.; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).[9] As discussed below and in Lead Plaintiff's motion for class certification, the class meets the requirements under Rule 23. *See generally* D.E. 75.

### A.    Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be so large that joinder of all class members is impracticable. Throughout the Class Period, PPG's stock was actively traded on NYSE, the company had an average of over 254 million shares outstanding, and had an average weekly trading volume of 6,180,997 shares. Thus, numerosity is satisfied. *See e.g.*, *Karam v. Corinthian Colleges Inc.*, 2017 WL 4070889, at *2 (C.D. Cal. July 7, 2017) (numerosity satisfied because it was safe to "infer that well over 40 individuals purchased" stock during the class period where there existed over 86 million shares of stock and the average weekly trading volume was over 10 million shares.)

### B.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) is satisfied where the proposed class representative(s) share at least one question of law or fact with the claims of the prospective class. *Wehner v.*

---

[9] "Whether the trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1977).

*Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).   Here, there are numerous questions of law and fact common to the Settlement Class.   If the Action were to proceed, common questions would include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) whether Defendants knowingly or recklessly disregarded that their statements and omissions were false and misleading; (iv) whether the price of PPG common stock was artificially inflated during the Settlement Class Period; and (v) whether the Settlement Class Members have sustained damages and the proper measure of such damages. Thus, commonality is satisfied.   *See e.g.*, *Corinthian*, 2017 WL 4070889, at \*2 (finding commonality is satisfied where there existed similar common questions of law and fact).

### C.      Typicality – Rule 23(a)(3)

The typicality requirement recognizes that a class representative "with claims typical of the class will, in pursuing and defending his own self-interest in the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990).   "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted).

Here, the claims of Lead Plaintiff and the Settlement Class arise from the same alleged conduct by Defendants.   Lead Plaintiff alleges that he, like the other Settlement Class Members, purchased PPG common stock at artificially inflated prices because the Defendants, in violation of the federal securities laws, issued materially false and/or materially misleading statements during the Settlement Class Period.   The proof that Lead Plaintiff would present to establish his claims would also prove the claims of the rest of the Settlement Class.   Further, Lead Plaintiff is

1  not subject to any unique defenses that would make him an atypical Settlement
2  Class Member.

3  **D.  Adequacy – Rule 23(a)(4)**

4  The adequacy factor requires a finding that the representative parties will
5  fairly and adequately protect the interests of the class.  *Wolin* 617 F.3d at 1172.  As
6  set forth Sec. III.A, *supra*, Lead Plaintiff and Lead Counsel have adequately
7  represented the Settlement Class.

8  **E.  Predominance and Superiority – Rule 23(b)(3)**

9  Under Rule 23(b)(3), a class may be certified if a court finds that common
10 questions of law or fact predominate over individual questions, and that a class
11 action is superior to other available methods for the fair and efficient adjudication of
12 the controversy.   The predominance test is met here because the same set of
13 operative facts applies to each Settlement Class Member.  *See In re First Capital*
14 *Holdings Corp. Fin. Prods. Sec. Litig.*, 1993 WL 144861, at \*6 (C.D. Cal. Feb. 26,
15 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in
16 federal securities actions where the proposed class members have all been injured by
17 the same alleged course of conduct.").   Further, the fact that a class action is the
18 superior method to efficiently and effectively pursue the claims alleged here is
19 shown by the fact that if Lead Plaintiff and each of the Settlement Class Members
20 were to bring individual actions, they each would be required to prove the same
21 wrongdoing by Defendants to establish liability.  *See Eisenberg v. Gagnon*, 766 F.2d
22 770, 785 (3d Cir. 1985) (class actions are a particularly appropriate and desirable
23 means to resolve claims based on securities laws).   Finally, damages suffered by
24 individual Settlement Class Members are not sufficient to make it economical to
25 prosecute separate actions in order to recover individual losses sustained as a result
26 of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S.
27 at 617 ("'The policy at the very core of the class action mechanism is to overcome
28 the problem that small recoveries do not provide the incentive for any individual to

bring a solo action . . . .  A class action solves this problem[.]'") .  Accordingly, class certification for the purposes of settlement is appropriate.

## VI.   PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Notice Packet to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 business days after the Notice Date |
| Deadline for Lead Plaintiff to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days from the Notice Date |

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement and enter the accompanying Preliminary Approval Order.

1   DATED: June 2, 2019                    **GLANCY PRONGAY & MURRAY LLP**

2

3                                          By: */s/ Leanne H. Solish*
                                           Lionel Z. Glancy
4                                          Peter A. Binkow
                                           Robert V. Prongay
5                                          Jason L. Krajcer
6                                          Leanne H. Solish
                                           1925 Century Park East, Suite 2100
7                                          Los Angeles, California 90067
8                                          Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160
9                                          lsolish@glancylaw.com

10
                                           *Counsel for Lead Plaintiff Joe Cammarata*
11                                         *and Lead Counsel for the Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On June 2, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 2, 2019, at Los Angeles, California.


*s/ Leanne H. Solish*
Leanne H. Solish