**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
PETER A. BINKOW (#173848)
ROBERT V. PRONGAY (#270796)
JASON L. KRAJCER (#234235)
LEANNE H. SOLISH (#280297)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com

*Counsel for Lead Plaintiff Joe Cammarata and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR MILD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PPG INDUSTRIES, INC., MICHAEL H. MCGARRY, VINCENT J. MORALES, and MARK C. KELLY,<br><br>Defendants. | Case No.: 2:18-cv-04231-RGK-JEM<br><br>**DECLARATION OF LEANNE H. SOLISH IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, (II) CERTIFICATION OF THE SETTLEMENT CLASS, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**<br><br>Date: July 1, 2019<br>Time: 9:00 a.m.<br>Crtm.: 850<br>Judge: Hon. R. Gary Klausner |

I, Leanne H. Solish, hereby declare and state as follows:

1. I am an attorney admitted to practice before this Court. I am an associate with the law firm of Glancy Prongay & Murray LLP, the Court-appointed Lead Counsel[1] for Lead Plaintiff and the proposed Settlement Class. I have personal knowledge of the facts set forth herein and if called upon to testify thereto, I could and would do so. I submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Unopposed Motion for (I) Preliminary Approval of Class Action Settlement, (II) Certification of the Settlement Class, and (III) Approval of Notice to the Settlement Class.

## I. HISTORY OF THE LITIGATION AND DISCOVERY

2. The above-captioned action (the "Action") was filed on May 20, 2018. D.E. 1.

3. By Order dated August 27, 2018, the Court appointed Joe Cammarata to serve as Lead Plaintiff in the Action, and approved his selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class. D.E. 44.

4. On September 21, 2018, Lead Plaintiff filed and served his Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against: (a) defendants PPG Industries, Inc. ("PPG") and Mark C. Kelly ("Kelly") under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; and (b) defendants Michael H. McGarry, Vincent J. Morales, and Kelly under Section 20(a) of the Exchange Act.[2] D.E. 51. Among other things, the Complaint alleges that

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement ("Stipulation") attached hereto as Exhibit 1.

[2] The term "PPG Defendants" refers collectively to defendants PPG, McGarry and Morales, and the term "Defendants" refers collectively to the PPG Defendants and

violations of PPG's accounting policies and procedures caused material misstatements in PPG's financial reporting. The Complaint further alleged that the price of PPG's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

5. In preparation for filing the Complaint, Lead Counsel conducted an extensive investigation into PPG and the allegations. This investigation included, among other things: (i) an in-depth review and analysis of (a) PPG's Securities and Exchange Commission filings, press releases, investor conferences calls, and other public statements, (b) publicly available documents, announcements, and news articles concerning PPG, and (c) research reports prepared by securities and financial analysts regarding PPG; (ii) interviews with numerous former employees and other potential witnesses with relevant information; and (iii) consultations with accounting, loss causation and damages experts.

6. On October 5, 2018, the PPG Defendants and Defendant Kelly each filed a motion to dismiss the Complaint. D.E. 52-53. On October 22, 2018, Lead Plaintiff filed his papers in opposition and, on November 5, 2018, the PPG Defendants and Defendant Kelly filed reply papers. D.E. 57-60. On December 21, 2018, the Court entered its Order denying Defendants' motions to dismiss the Complaint. D.E. 62.

7. On January 4, 2019, the PPG Defendants and Defendant Kelly each filed answers to the Complaint. D.E. 63-64.

8. With the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") having been lifted following the denial of the motions of dismiss, the Parties exchanged initial disclosures on January 25, 2019, and thereafter commenced fact discovery. On February 1, 2019, Lead

---

defendant Kelly.

1 Plaintiff served document requests on Defendants, and on that same day, Defendant
2 Kelly served document requests on the PPG Defendants.

3       9. On February 4, 2019, the Court held a scheduling conference. A
4 Scheduling Order was entered that same day. D.E. 66. Pursuant to that Scheduling
5 Order, Plaintiffs were required to file a motion for class certification by March 10,
6 2019 (*i.e.*, within 34 days of the scheduling conference). The Scheduling Order also
7 set a discovery cut-off date of July 31, 2019 and a trial date of October 29, 2019.

8       10. On February 12, 2019, Defendant Kelly served document requests on
9 Lead Plaintiff. On February 13, 2019, the PPG Defendants served document
10 requests on Lead Plaintiff and separately on Defendant Kelly.

11       11. Pursuant to the document requests, the PPG Defendants and Defendant
12 Kelly produced approximately 2.2 million pages of documents of which Lead
13 Counsel, along with their accounting experts, conducted a targeted review and
14 analysis. Lead Plaintiff produced approximately 14,000 pages of documents to the
15 Defendants. Throughout March and April 2019, the Parties exchanged
16 correspondence concerning a number of outstanding discovery disputes in relation
17 to the Parties' documents requests, and the Parties conducted a meet and confer
18 concerning certain of these disputes on April 8, 2019. The Parties' discussions on
19 these issues were ongoing at the time of settlement.

20       12. On February 27, 2019, the Parties filed a stipulation to continue the
21 hearing on Plaintiffs' forthcoming motion for class certification in order to allow the
22 Parties to conduct a mediation before former United States District Judge Layn R.
23 Phillips. *See* D.E. 69. The stipulation, however, proposed that the briefing schedule
24 set forth in the Scheduling Order be maintained. *Id.* On March 5, 2019, the Court
25 approved the stipulation. D.E. 72.

26       13. On March 4, 2019, Defendant Kelly served interrogatories on the PPG
27 Defendants, to which the PPG Defendants served responses. On March 20, 2019,
28 Lead Plaintiff served requests for admission on Defendant PPG.

14. On February 28, 2019, the Parties filed a Stipulation and [Proposed] Protective Order Governing the Production, Exchange, and Filing of Confidential Material. D.E. 70. On March 25, 2019, the Court entered and so-ordered this protective order. D.E. 78 (the "Protective Order").

15. On March 8, 2019, Lead Plaintiff filed his motion for class certification, together with the expert report of Dr. David Tabak of NERA Economic Consulting, regarding market efficiency. Defendants deposed Lead Plaintiff and Dr. Tabak on March 19, 2019 and March 27, 2019, respectively. On April 1, 2019, the PPG Defendants filed their opposition to class certification, to which Defendant Kelly filed a notice of joinder. With their opposition, the PPG Defendants submitted the expert report of Dr. Paul Zurek of Cornerstone Research, whom Lead Plaintiff deposed on April 4, 2019. On April 8, 2019, Lead Plaintiff filed his reply in support of his motion for class certification, together with the rebuttal expert report of Dr. Tabak.

16. In connection with the class certification briefing, both sides submitted a substantial volume of materials under seal pursuant to the terms of the Protective Order and the Local Rules of this Court. *See* D.E. 82; D.E. 83; D.E. 84; D.E. 94; D.E. 95; D.E. 96; D.E. 102; D.E. 103; D.E. 104; D.E. 105; D.E. 106; D.E. 107.; D.E. 110; D.E. 111. The Court granted these applications, holding that the Parties had demonstrated good cause and compelling reasons for the materials to be maintained under seal. *See* D.E. 101; D.E. 109.

## II.  MEDIATION AND SETTLEMENT

17. On April 22, 2019, Lead Counsel and Defendants' Counsel met with former United States District Court Judge Layn R. Phillips, a highly experienced, neutral mediator, who presided over a full-day mediation between the Parties in New York. In advance of the mediation session, the Parties each submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation and damages. The session

1  ended without an agreement to settle.  However, Judge Phillips informed the Parties
2  that he would be making a mediator's proposal.

3      18.    Shortly thereafter, Judge Phillips presented a mediator's
4  recommendation that the Action be settled for $25,000,000.  He also undertook to
5  conduct further discussions with the Parties.  The Parties thereafter accepted the
6  mediator's proposal, which was memorialized in a term sheet (the "Term Sheet")
7  executed on May 8, 2019.  The Term Sheet sets forth, among other things, the
8  Parties' agreement to settle and release all claims asserted against Defendants in the
9  Action in return for a cash payment by or on behalf of Defendants of $25,000,000
10 for the benefit of the Settlement Class, subject to certain terms and conditions and
11 the execution of a customary "long form" stipulation and agreement of settlement
12 and related papers.

13     19.    On June 1, 2019, the Parties executed the Stipulation.  Under the terms
14 of the Settlement, the Parties agreed, subject to Court approval, to certification of a
15 Settlement Class defined as: as all persons and entities who or which purchased or
16 otherwise acquired PPG common stock between January 19, 2017 through May 10,
17 2018, inclusive, and who were damaged thereby.  *Id.*, ¶1(rr).[3]

18     20.    Under the terms of the proposed Settlement, the Parties have agreed
19 that Lead Plaintiff and each of the other Settlement Class Members shall waive and
20 release each and every Released Plaintiffs' Claim (including Unknown Claims)

---

[3] Excluded from the Settlement Class are Defendants; members of the Immediate Family of each of the Individual Defendants; the current or former Officers and/or directors of PPG; any person, firm, trust, corporation, Officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants; and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.  Stipulation ¶1(rr).

5
DECLARATION OF LEANNE H. SOLISH

against the Defendants and the other Defendants' Releasees in exchange for a payment by or on behalf of Defendants of $25,000,000 in cash, as set forth in greater detail in paragraphs 4-8 of the Stipulation.

21. The Released Plaintiffs' Claims are defined in the Stipulation (*see* Stipulation, ¶ 1(mm)) as any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments, and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that were: (i) made in the Action; or (ii) could have been asserted in any forum and that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase, acquisition, and sale of PPG common stock during the Settlement Class Period. Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

22. Defendants' Releasees are defined in the Stipulation (*see* Stipulation, ¶ 1(m)) as Defendants, their current and former officers, directors, agents, parents, spouses, heirs, executors, representatives, trustees, auditors, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, attorneys, insurers, reinsurers, and any person or entity who claims by, through, or on behalf of Defendants, in their capacities as such.

23. Based upon their investigation, prosecution, and mediation of the case, Lead Plaintiff and Lead Counsel have concluded that the Settlement is fair,

reasonable, and adequate to Lead Plaintiff and the other members of the Settlement Class, and in their best interests.

24. Indeed, the Settlement is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Here, Lead Plaintiff alleged that Class members suffered losses following two partial corrective disclosures: one on April 19, 2018 and one on May 10, 2018. Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed in each of his claims at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury fully accepted Lead Plaintiff's loss causation and damages arguments, with no disaggregation for potentially confounding information on the days of the stock price drops—*i.e.*, Lead Plaintiff's **best case scenario** – the total ***maximum*** damages would be approximately $428.2 million. Thus, the $25 million Settlement Amount represents approximately 5.8% of the total ***maximum*** damages *potentially* available in this Action. In comparison, the median recovery in securities class actions in 2018 was approximately 2.6% of estimated damages, and for similar actions with damages estimated between $400-$599 million, the median recovery was 1.8% of estimated damages. *See* Ex. 3 attached hereto (Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019) at p. 36, Fig. 28 and p. 35, Fig. 27.

25. Furthermore, Defendants raised a number of arguments concerning loss causation and damages at mediation, which had the potential of substantially reducing Plaintiff's recoverable damages. For example, if Lead Plaintiff failed to establish loss causation with respect to the April 19, 2018 disclosure, Lead Plaintiff's estimated damages would be $310.4 million, which equates to a recovery of 8.1%. In their opposition to class certification, Defendants also raised an argument in relation to the May 10, 2018 corrective disclosure concerning the speed

of a price adjustment in an efficient market. If that argument were to be accepted by the Court and jury, it had the potential to drastically reduce the Class's recoverable damages. According to Lead Plaintiff's damages expert, if Lead Plaintiff failed to establish loss causation with respect to the April 19, 2018 disclosure and the Court and/or jury fully accepted Defendants' arguments concerning the speed of the price adjustment in connection with the May 10, 2018 disclosure, the maximum recoverable damages would be between approximately $17 million and $30.5 million. Under this scenario, the settlement would represent between 82% and 147% of recoverable damages.

### III. SUMMARY OF THE NOTICE AND PLAN OF ALLOCATION

#### A. The Plan of Allocation

26. The proposed Plan of Allocation is detailed in the long-form Notice and incorporated by reference into the Stipulation. *See* Stipulation at ¶1(ff); Notice (attached as Exhibit A-1 to the Stipulation), at pp. 15-22. The Notice will be mailed to Settlement Class Members, will be posted online at www.PPGIndustriesSecuritiesLitigation.com (the "Settlement Website"), and is downloadable.

27. The proposed Plan of Allocation was drafted with the assistance of Lead Plaintiff's damages consultant and is comparable to plans of allocation approved in numerous other securities class actions.[4] The Plan of Allocation

---

[4] The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the Securities Exchange Act of 1934, as opposed to losses caused by market, industry, or Company-specific factors – or factors unrelated to the allegations – and takes into consideration when each Claimant purchased and/or sold PPG shares. Courts have repeatedly approved similar plans. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128,

allocates the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms on a *pro rata* basis based on the amount of each Claimant's Recognized Claim. The Net Settlement Fund consists of the $25 million Settlement Amount, plus accrued interest, after deduction of (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court (which may include reimbursement to Lead Plaintiff for his costs and expenses incurred in representing the Settlement Class); and (iv) any attorneys' fees awarded by the Court. *Id.*, at ¶1(z). Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

28. The proposed Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of PPG common stock was artificially inflated during the period from January 19, 2017 and May 10, 2018, inclusive, due to Defendants' alleged materially false and misleading statements.

29. The proposed Plan of Allocation is based on the premise that the decrease in the price of PPG common stock following the two corrective disclosures on April 19, 2018, and May 10, 2018 may be used to measure the alleged artificial inflation in the price of PPG common stock prior to this disclosure.

30. Additionally, JND Legal Administration ("JND"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any deficiencies in their Claims or request the Court to review a denial of their Claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the

---

145-46 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc. Securities and ERISA Litigation,* 2006 WL 903236, at *17 (S.D.N.Y Apr. 6, 2006).

Net Settlement Fund (per the Plan of Allocation), after Court-approval. JND has substantial experience serving as the claims administrator in securities class action cases and was selected by Lead Counsel following a request for proposal process in which JND was the low bidder. *See* Ex. 4 attached hereto (JND resume).

### B. The Notice Program

31. In accordance with the terms of the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to mail, by first-class mail, individual copies of the Notice and Claim Form (together the "Notice Packet") to all Settlement Class Members who can be identified through reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.

32. Contemporaneously with the mailing of the Notice Packet, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form the Settlement Website. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

33. Additionally, no more than ten (10) business days after the Notice Packet is mailed, the Summary Notice will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

34. Courts routinely find that these methods of notice are sufficient, and Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.

### C. The Contents Of The Notice

35. The proposed notice program informs Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or the proposed request for attorneys' fees and

reimbursement of Litigation Expenses. Specifically, the proposed notice sets forth: (i) the nature of the action (*see* Notice at pp. 2, 6-8); (ii) the Settlement Class definition (*see* Notice at pp. 1, 9, Summary Notice at p. 1); (iii) a description of the claims and defenses at issue (*see* Notice at pp. 6-8); (iv) the ability of Settlement Class Members to enter an appearance through counsel (*see* Notice at p. 26); (v) the Settlement Class Member's ability to be excluded from the Settlement Class and the process for exclusion (*see* Notice at p. 23-24, Summary Notice at p. 2); and (vi) the binding effect of a class judgment (*see* Notice at pp. 5, 11-14, Summary Notice at p. 2).

36. Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Notice (*see* Notice at pp. 1-5); (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share (*see* Notice at pp. 2-3, 14-22); (iii) a statement of potential outcomes of case (*see* Notice at pp. 9-10); (iv) a statement of attorneys' fees or costs sought (*see* Notice at pp. 3, 22); (v) identification of lawyers' representatives (*see* Notice at pp. 3, 24, 27); and (vi) reasons for settlement (*see* Notice at pp. 3-4, 9-10).

37. Further, the Notice includes a description of the Plan of Allocation, and states that Lead Counsel intend to seek up: (i) to 27% of the Settlement Fund for attorneys' fees; and (ii) up to $735,000 for reimbursement of out-of-pocket litigation expenses, which may include reimbursement of Lead Plaintiff's costs and expenses, all to be paid from (and out of) the Settlement Fund. And finally, the notice program will provide clear information about the date, time, and location of the Settlement Hearing and the process for submitting an objection to the Settlement and other relief to be requested by Lead Plaintiff and Lead Counsel. *See* Notice at pp. 4-5, 24-26, Summary Notice at p. 2.

## IV. LIST OF EXHIBITS

38. Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and Agreement of Settlement dated June 1, 2019. Annexed as exhibits to the Stipulation are:

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Preliminary Approval Order |
| A-1 | Notice |
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| B | Final Judgment and Order |

39. Attached hereto as Exhibit 2 is a true and correct copy of the law firm resume of Glancy Prongay & Murray LLP.

40. Attached hereto as Exhibit 3 is a true and correct copy of excerpts from a report by NERA Economic Consulting, Inc., entitled "Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review."

41. Attached hereto as Exhibit 4 is a true and correct copy of the resume of the proposed claims administrator, JND Legal Administration.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 2nd day of June, 2019, in Los Angeles California.

*s/ Leanne H. Solish*
Leanne H. Solish

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On June 2, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 2, 2019, at Los Angeles, California.

*s/ Leanne H. Solish*
Leanne H. Solish