**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
PETER A. BINKOW (#173848)
ROBERT V. PRONGAY (#270796)
JASON L. KRAJCER (#234235)
LEANNE H. SOLISH (#280297)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR MILD, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>         v.<br><br>PPG INDUSTRIES, INC., MICHAEL H. MCGARRY, VINCENT J. MORALES, and MARK C. KELLY,<br><br>Defendants. | Case No.: 2:18-cv-04231-RGK-JEM<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Hearing Date:  October 21, 2019<br>Time:              9:00 a.m.<br>Location:        850<br>Judge:            Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................... 1

II.     HISTORY OF THE LITIGATION ............................................................. 3

III.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION
        SETTLEMENTS ....................................................................................... 3

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 5

        A.   Lead Plaintiff and Lead Counsel Have Adequately Represented
             the Settlement Class ................................................................. 5

        B.   The Settlement Was Reached After Substantial Litigation and
             Arm's Length Negotiations Between Experienced Counsel
             Conducted Under the Auspices of a Well-Respected Mediator .......... 6

        C.   The Settlement Relief Provided to the Settlement Class is
             Adequate in Light of the Costs and Risks of Further Litigation
             and Other Relevant Factors ................................................... 8

             1.   The Strength of Lead Plaintiff's Case and the Significant
                  Risks of Continued Litigation ........................................ 8

             2.   The Risks of Maintaining Class Action Status Throughout
                  Trial .......................................................................... 13

             3.   The Amount Obtained in the Settlement Supports
                  Approval ..................................................................... 13

             4.   The Complexity, Expense, and Likely Duration of
                  Litigation ................................................................... 15

             5.   Other Factors Established by Rule 23(e)(2)(C) Support
                  Final Approval ........................................................... 15

        D.   The Settlement Treats Class Members Equitably Relative to
             Each Other ............................................................................. 17

        E.   The Positive Reaction of the Settlement Class Supports
             Settlement Approval ............................................................. 17

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
        ADEQUATE .......................................................................................... 19

VI.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED ........ 20

VII.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ........................... 20

VIII.  CONCLUSION ............................................................................ 20

# TABLE OF AUTHORITIES

<u>CASES</u>

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. Apr. 29, 2014)......................................15

*Atlas v. Accredited Home Lenders Holding Co.*,
  2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..........................................7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..............................................................................9

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................*passim*

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................................10

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. 2018) ....................................................4

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................10, 11, 12

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ................................7, 12

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................6, 8

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ....................................17

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)....................................7, 15

*In re LJ Int'l Inc. Sec. Litig.*,
  2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ....................................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................... 13, 14

*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................... 13, 18, 19

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................... 5

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................... 8

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................ 9

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 233- (E.D. Mich. 2016) ............................................... 16

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ................................. 15

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ..................................................... 14

*Ohio Public Emps. Ret. Sys. v. Federal Home Loan Mortg. Corp.*,
  2018 WL 3861840 (N.D. Ohio, 2018) .......................................... 9, 10

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................... 6

STATUTES

15 U.S.C. § 78u-4(a)(7) .................................................................. 20

<u>RULES</u>

Fed. R. Civ. P. 23 ................................................................................................*passim*

# I.   PRELIMINARY STATEMENT[1]

After substantial motion practice, discovery, and litigation, Lead Plaintiff, through his counsel, has obtained a $25,000,000 all cash, non-reversionary settlement for the benefit of the Settlement Class.  As described below and in the Glancy Declaration, the Settlement is an excellent result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.  In fact, the Settlement represents between 5.8% and 147% of the Settlement Class's maximum recoverable class-wide aggregate damages, which is an extremely favorable result when compared to the median recovery in securities class action settlements with similar aggregate damages.  Moreover, the Settlement was reached only after extensive, arm's-length negotiations conducted by experienced counsel with the assistance of former District Court Judge Layn R. Phillips ("Judge Phillips"), and it is the result of a mediator's recommendation that followed an all-day mediation session and follow-up negotiations.  The Settlement is, therefore, both substantively and procedurally fair.

Lead Plaintiff's and Lead Counsel's substantial efforts and well-developed understanding of the strengths and weaknesses of the Action also support final approval.  Lead Plaintiff's efforts, which are detailed in the Glancy Declaration, included, among other things: (i) a comprehensive factual investigation aided by experienced accounting, loss causation and damages experts; (ii) rigorous analysis of PPG's public filings and Defendants' public statements; (iii) review of news articles and analyst reports about the Company; (iv) interviews of numerous former PPG employees in connection with the drafting of the 95-page Amended Complaint;

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated June 1, 2019 (D.E. 119-1) (the "Stipulation") or in the concurrently filed Declaration of Lionel Z. Glancy ("Glancy Decl." or "Glancy Declaration").   Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Glancy Declaration.  Unless otherwise indicated, all emphasis is added and quotations and citations are omitted.

(v) successfully opposing PPG Defendants' and Defendant Kelly's motions to dismiss, including researching and drafting two opposition briefs; (vi) further consultations with experts on accounting, loss causation and damages related issues; (vii) review and analysis of over 2.2 million pages of documents produced by Defendants; (viii) review, compilation, and production of 14,000 pages of discovery to the Defendants; (ix) preparing for and defending Lead Plaintiff's full-day deposition; (x) fully briefing class certification, including the submission of an expert and rebuttal expert report on market efficiency; (xi) preparing for and defending Lead Plaintiff's market efficiency expert's deposition and deposing the Defendants' expert on market efficiency; and (xii) preparation of a detailed mediation statement, along with exhibits.  ¶¶ 6(a)-(i).  In view of the foregoing, Lead Plaintiff and his counsel had a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement before entering into it and presenting it to the Court.

Lead Plaintiff and Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.  Their belief is supported by, among other things, the certainty of an $25 million recovery today versus the significant risk of a smaller or even no recovery following years of additional litigation; an analysis of the facts adduced to date; past experience in litigating complex securities class actions; the serious disputes between the Parties concerning the merits and damages; and the favorable reaction of the Settlement Class.  ¶¶ 7, 48-63, 70-88, 98, 107, 119.  Lead Plaintiff, therefore, respectfully submits that the Settlement is fair, reasonable and adequate.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval.  More than 270,000 copies of the Notice Packet have been sent to potential Settlement Class Members and, as of September 11, 2019, only 11 requests for exclusion and no objections have been

received.  ¶ 98 & Ex. 3 ("Ewashko Decl.") ¶¶ 12, 17.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed in conjunction with Lead Plaintiff's damages expert and is designed to fairly and equitably distribute the proceeds of the Settlement to Settlement Class Members.  ¶¶ 99-107.  Lead Plaintiff respectfully submits that it too should be approved.

For these reasons, and those set forth below and in the Glancy Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.   HISTORY OF THE LITIGATION

The Glancy Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a more fulsome description of, *inter alia*, the factual history of the Action and nature of the claims asserted (¶¶ 11-17, 21-24); the work done by Lead Plaintiff and Lead Counsel to prosecute the Action (¶¶ 18-57); the negotiations leading to the Settlement (¶¶ 58-67); the risks and uncertainties of continued litigation (¶¶ 70-91); and the terms of the Plan of Allocation (¶¶ 99-107).

## III.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  As recently amended, Rule 23(e)(2) sets forth four specific factors to consider when determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee's notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. 2018).

To evaluate the substantive fairness of the settlement, courts in the Ninth Circuit have considered the "*Hanlon* factors:"

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 at 1026 (9th Cir. 1998). As explained below and in the Glancy Declaration, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Hanlon* factors, demonstrates that the Settlement warrants Court approval.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

The Court should consider whether the "class representative[] and class counsel have adequately represented the class" when determining whether to approve a class action settlement.  Fed. R. Civ. P. 23(e)(2)(A).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").  Additionally, Lead Plaintiff was involved in the litigation and worked with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class. Ex. 1 ¶¶5-7 ("Cammarata Decl.")

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel, Glancy Prongay & Murray LLP ("GPM"), has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country.  *See* Ex. 5 (GPM firm resume).  Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims

throughout the litigation by, among other things, conducting an extensive investigation of the claims through a detailed review of all publicly available documents, drafting a detailed 95-page Amended Complaint, successfully contesting Defendants' motions to dismiss, engaging in fact and class certification-related expert discovery, and fully briefing class certification.  ¶¶ 6(a)-(i), 18-57.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel, both Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.  Preliminary Approval Order, D.E. 121 at 4.  This factor supports final approval of the Settlement.

**B.     The Settlement Was Reached After Substantial Litigation and Arm's Length Negotiations Between Experienced Counsel Conducted Under the Auspices of a Well-Respected Mediator**

The Court must also consider whether the settlement was "negotiated at arm's length" in weighing approval of a class-action settlement.  Fed. R. Civ. P. 23(e)(2)(B).  Circumstances related to this "procedural" fairness determination of a settlement traditionally include (i) understanding of the strength [and weakness] of the plaintiff's case[2] based on factors like "the extent of discovery completed and the stage of the proceedings;"[3] (ii) the "experience and views of counsel;"[4] and (iii) the absence of any indicia of collusion.[5]  Each of these factors supports approval of the Settlement.

Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

---

[2] *Hanlon*, 150 F.3d at 1026 (first factor).

[3] *See id.* (fifth factor).

[4] *See id.* (sixth factor).

[5] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts also recognize that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).

Here, the Settlement merits a presumption of fairness because it is the product of extensive arm's length negotiations facilitated by a well-respected mediator, Judge Phillips, who has significant experience mediating securities class actions and other complex litigation. *See id.* at *3; *see also* ¶¶ 62-65; *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement and describing the settlement negotiations as fair because "they were closely supervised by the Honorable Layn Phillips (Ret.) and conducted at arm's length by experienced and competent counsel.").[6]

Moreover, the Parties and their counsel were knowledgeable about the strengths and weaknesses of this case before reaching an agreement to settle. Among other things, Lead Counsel conducted a detailed, substantive investigation into the allegations of the case, performed extensive legal research in briefing Defendants' motions to dismiss and Lead Plaintiff's motion for class certification,[7] consulted with accounting, loss causation and damages experts, and reviewed and analyzed the over 2.2 million pages of documents Defendants produced in discovery.   ¶¶ 6(a)-(i), 18-57.   Under these circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class supports its approval. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

---

[6] Judge Phillips not only mediated the Settlement, he also supports it. Ex. 2 ¶¶18-19 ("Phillips Decl.").

[7] The briefing also included Lead Counsel's submission of an expert report and a rebuttal report on market efficiency by Dr. David Tabak. ¶¶ 53-55.

Furthermore, the Lead Plaintiff also supports the Settlement.  *See* Cammarata Decl. ¶¶ 6-7; *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress intent to foster involvement of Lead Plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations").

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit.  *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").

## C.  The Settlement Relief Provided to the Settlement Class is Adequate in Light of the Costs and Risks of Further Litigation and Other Relevant Factors

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C). This factor essentially incorporates four of the traditional *Hanlon* factors: (1) the strength of Lead Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in the settlement.  *See Hanlon*, 150 F.3d at 1026.  As demonstrated below, each of these factors supports approval of the Settlement.

### 1.  The Strength of Lead Plaintiff's Case and the Significant Risks of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including

the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Lead Plaintiff and Lead Counsel believe the asserted claims have considerable merit, but also recognize that the risks of continued litigation were substantial. With class certification fully briefed and pending at the time of settlement, overcoming this hurdle was the most immediate and critical next step for Lead Plaintiff. While Lead Counsel was confident that all of the elements required under Rule 23 had been met and that the class would be certified, Defendants had significant arguments to the contrary. ¶ 70. Furthermore, Defendants' motion(s) for summary judgment was anticipated. Lead Plaintiff and Lead Counsel were cognizant that an adverse decision on either motion would have presented a significant hurdle to recovering damages on behalf of the Settlement Class, and may well have resulted in a much smaller recovery or no recovery at all.

In their opposition to Lead Plaintiff's motion for class certification, Defendants made a number of adequacy and typicality arguments, and further asserted that the proposed class failed to satisfy the predominance requirement of Rule 23(b)(3) for two reasons. ¶¶ 70, 85-86. First, Defendants argued that Lead Plaintiff and the proposed class could not invoke the fraud-on-the market theory of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) because Lead Plaintiff did not adequately establish that the market for PPG's stock is efficient, *i.e.*, that the stock price rapidly reflects all publicly available information. ¶ 86. Second, Defendants argued that Lead Plaintiff had not demonstrated that damages can be calculated using a common method as purportedly required by *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). *Id.* While Lead Plaintiff strongly believed that these arguments were incorrect, there was no guarantee that the Court would have agreed. ¶ 85; *see Ohio Public Emps. Ret. Sys. v. Federal Home Loan Mortg. Corp.*, 2018 WL 3861840, at *20 (N.D. Ohio, 2018) (denying renewed motion for class

certification based on failure to demonstrate market efficiency and failure to set forth a class-wide damages methodology).

Likewise, in order to defeat a summary judgment motion and to prevail at trial, Lead Plaintiff and Lead Counsel would have to prove that Defendants' statements and omissions were false and misleading, that Defendants knew or were reckless in not knowing that their statements and omissions were false and misleading at the time made, and that those statements and omissions were corrected and caused recoverable damages for the Settlement Class. ¶ 70. Lead Plaintiff anticipated that Defendants would present strong arguments challenging Lead Plaintiff's pleading and proof on all of those elements in their expected motion for summary judgment and/or at trial. *Id.*

**Materiality:** Defendants forcefully argued in their motion to dismiss, and would undoubtedly argue in a motion for summary judgment and/or at trial, that the alleged misstatements were not material. ¶ 72. Although Lead Plaintiff believes there is evidence to support a finding that meeting consensus estimates for adjusted EPS was important to the Individual Defendants, which could support a finding of materiality, Defendants have argued, and would likely continue to argue, that the alleged accounting adjustments were minor and had the effect of both increasing ***and*** decreasing PPG's income over certain periods during the Settlement Class Period. *Id.* Defendants further argued that the restatement of PPG's financial statements had a trivial impact on adjusted EPS (ranging from a few pennies to no change at all in two quarters), and that in the context of a $14 billion company, these adjustments would not be material to any reasonable investor. *Id.*

**Scienter:** Defendants would have almost certainly moved for summary judgment on the element of scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016); *In re Am. Bank Note*

*Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001).  Here, while Lead Plaintiff believes that the evidence would have established Defendants' scienter, Defendant Kelly strongly objected to certain disclosures made by PPG and further argued that these disclosures did not imply purposeful misconduct.  ¶ 74. Defendants also would have claimed that Defendant Kelly had no motive to commit fraud, as evidenced by his lack of insider stock sales during the Settlement Class Period and the lack of impact the alleged earnings smoothing scheme would have had on Defendant Kelly's incentive compensation.  *Id.*  PPG also would have likely continued to claim that even if Lead Plaintiff could establish scienter on behalf of Defendant Kelly, his scienter could not be imputed to the Company, because it too was a victim of the alleged earnings smoothing scheme.  ¶ 75.

**Loss Causation and Damages**: Lead Plaintiff also faced substantial challenges in proving that the revelation of the truth about Defendants' alleged false and misleading statements and omissions caused declines in the price of PPG's common stock, and in establishing class-wide damages.  ¶ 76.  Even if Defendants were unsuccessful in opposing class certification, Defendants would have most certainly continued to assert similar arguments to their *Comcast* challenge in challenging loss causation and damages at summary judgment and at trial.  ¶ 78. For example, Defendants and their expert argued that the announcement on April 19, 2018 was part of a detailed Company announcement that included PPG's quarterly financial results for Q1 2018, and other disappointing news, and thus any stock price decline flowing therefrom would need to be disaggregated from the other confounding news.  *Id.*  Defendants' expert on market efficiency also argued that the entire price decline on May 11, 2018 (following the May 10, 2018 after-hours, corrective disclosure) could not constitute a proper measure of inflation if PPG traded in an efficient market.  ¶ 79.  And, Defendants and their expert argued that neither the April 19, 2018 announcement nor the May 10, 2018 announcement disclosed the exact amount of the restatement, which meant that the stock price

declines on those days did not present an accurate measure of the alleged inflation in the stock price prior to those declines. ¶ 80. If any of these foregoing arguments was accepted by the Court or a jury, then the Settlement Class's class-wide damages would have been greatly reduced. ¶ 81.

Additionally, Lead Plaintiff would have to proffer expert testimony to **prove**: (i) what the "true value" of PPG's common stock would have been had there been no alleged material misstatements or omissions; (ii) the amount by which PPG shares were allegedly inflated by the alleged material misstatement and omissions; and (iii) the amount of alleged artificial inflation removed by the disclosures on April 19, 2018 and May 10, 2018. ¶ 82. Defendants almost certainly would have presented their own damages expert(s) to present conflicting conclusions and theories as to the reasons for PPG's share price declines on the alleged disclosure dates, requiring a jury to decide the "battle of the experts." *Id.* Courts have recognized that such a "battle of experts" is a significant litigation risk, and weights in favor of approving a settlement. *Amgen*, 2016 WL 10571773, at *3.

Finally, even if the Court certified the class as proposed by Lead Plaintiff and he prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari from the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. ¶ 87. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery even after having prevailed on their remaining claim at trial. *Id. See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

### 2.      The Risks of Maintaining Class Action Status Throughout Trial

At the time the Settlement was reached, Lead Plaintiff's motion for class certification was fully briefed, but not yet decided.  Although Lead Plaintiff believes his motion was meritorious, the Court may not have agreed.

Defendants raised a number of adequacy and typicality attacks, as well as arguments related to the predominance requirement of Rule 23(b)(3).  If the Court had accepted either of these predominance arguments—*i.e.*, that Lead Plaintiff and the proposed class could not invoke the fraud-on-the market theory of reliance or Defendants' *Comcast* argument on damages—the class would not have been certified unless Lead Plaintiff prevailed on appeal.  ¶ 86.

Furthermore, Rule 23 provides that a class certification order may be altered or amended any time before a decision on the merits.  Thus, in any class action suit, there is always a risk that a class will be modified or decertified prior to a decision on the merits.  *See, e.g., In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").  Thus, the risk of obtaining and maintaining class certification supports approval of the Settlement in this case.

### 3.      The Amount Obtained in the Settlement Supports Approval

The $25 million Settlement constitutes a meaningful percentage of the maximum possible recovery for the Settlement Class, especially taking into account the uncertainty, risks, and costs associated with any attempt to obtain a greater amount.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Moreover, a settlement is "not to be judged against a hypothetical or speculative measure of what

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION          Case No. 2:18-CV-04231-RGK-JEM

13

1   *might* have been achieved by the negotiators." *Officers for Justice v. Civil Serv.*

2   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

3   Here, as this Court preliminarily determined in its Preliminary Approval

4   Order, the Settlement Amount—$25 million in cash—is within the range of

5   reasonableness under the circumstances so as to warrant approval of the Settlement.

6   D.E. 121 at 8.  Lead Plaintiff's damages expert estimates that if Lead Plaintiff had

7   fully prevailed in each of his claims at both summary judgment and after a jury trial,

8   and if the Court and jury accepted Lead Plaintiff's damages theory, including proof

9   of loss causation as to each of the stock price drop dates alleged in this case—*i.e.*,

10  Lead Plaintiff's **best case scenario**, the total **maximum** damages would be $428.2

11  million.  Thus, the $25 million Settlement Amount represents approximately 5.8%

12  of the total **maximum** damages *potentially* available in this Action.  ¶ 89.

13  In comparison, the median recovery in securities class actions in 2018 was

14  approximately 2.6% of estimated damages, and the median recovery in securities

15  class actions from 1996 through 2018 was 1.8% of estimated damages ranging

16  between $400-$599 million.  *See* Ex. 4 (Stefan Boettrich and Svetlana Starykh,

17  Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA

18  Jan. 29, 2019)) at p. 36, Fig. 28 and p. 35, Fig. 27; *see also In re LJ Int'l Inc. Sec.*

19  *Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities

20  fraud class action settlement where recovery was 4.5% of maximum damages).

21  Moreover, as discussed *supra* in Section IV.C.2, Lead Plaintiff and Lead

22  Counsel were extremely cognizant of the risk that the Court could accept

23  Defendants' likely loss causation arguments, which would substantially diminish the

24  maximum recoverable damages available to the Settlement Class to between $17

25  million and $30.5 million.   Under this scenario, the $25 million Settlement

26  represents between **82% and 147%** of recoverable damages.  ¶ 90.  When viewed in

27  this context and in light of these substantial risks, the recovery is an extremely

28  favorable result for the Settlement Class.

### 4.    The Complexity, Expense, and Likely Duration of Litigation

Here, continuing litigation through the conclusion of fact and expert discovery, the class certification decision, summary judgment, trial, and appeals would have been very expensive and would have delayed Settlement Class Members' recovery, if any, for many years.[8] *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014). Regardless of the certainty or uncertainty of the ultimate outcome, there is no question that further litigation against the Defendants would likely have been expensive, complex, and protracted. *See*, *e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"); *Heritage Bond*, 2005 WL 1594403, at *6 (class actions have a well-deserved reputation as being the most complex).

The present value of a certain recovery now, as opposed to the mere ***chance*** for a greater one years later, supports approval of this Settlement that eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive little or no recovery. Consequently, this factor supports approval of the Settlement.

### 5.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of

---

[8] Though only a few securities class actions have gone to trial, the time between verdict and final judgment has been up to seven years. *See e.g.*, *Vivendi Universal, S.A. Sec. Litig.*, Case No. 02-cv-5571-RJH-HBP, Verdict Form, D.E. 998 (S.D.N.Y. Feb. 2, 2010) (jury verdict issued on Jan. 29, 2010) & Final Judgment Approving Class Action Settlement of All Remaining Claims, D.E. 1317 (S.D.N.Y. May 9, 2017) (Ex. 12).

payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).   Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund.   Here, JND Legal Administration ("JND"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[9]   Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

Second, as discussed in the accompanying Fee and Expense Application, Lead Counsel is applying for a percentage of the common fund fee award to compensate them for the services they have rendered on behalf of the Settlement Class.   The proposed attorneys' fees of 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.   More importantly, approval of the

---

[9] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶ 15.

requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶ 18.

Third, in accordance with Rule 23(e)(2)(C)(iv), and as Lead Plaintiff noted in his preliminary approval papers, the Parties entered into a confidential agreement which establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of PPG common stock, request exclusion (or "opt out") from the Settlement.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### D. The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitable relative to one another. Fed. R. Civ. P. 23(e)(2)(D).  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.   Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶ 103.  Lead Plaintiff will receive the same level of *pro rata* recovery, based on his Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members.

### E. The Positive Reaction of the Settlement Class Supports Settlement Approval

Though not included in Rule 23(e)(2), the reaction of the Settlement Class is

also a significant factor in assessing its fairness and adequacy. *Hanlon*, 150 F.3d at 1026. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members." *Omnivision*, 559 F. Supp. 2d at 1043.

Here, in accordance with the Court's Preliminary Approval Order, 271,555 copies of the Notice Packet were sent to potential Settlement Class Members and nominees, and the Summary Notice was published both in the national edition of *Investor's Business Daily* and transmitted over the *PR Newswire* on August 19, 2019. *See* Ex. 3 ("Ewashko Decl.") ¶¶ 12-13. JND also established a dedicated website, www.PPGIndustriesSecuritiesLitigation.com, to provide potential Settlement Class Members with information concerning the Settlement and access downloadable copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and the Amended Complaint. *Id.* ¶ 15. The website was operational beginning on August 5, 2019. *Id.* The website also lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's Settlement Hearing. As of September 11, 2019, there have been no objections and only 11 requests for exclusion have been received (4 of which are valid and would have otherwise been Settlement Class Members). ¶ 98; Ewashko Decl. ¶ 17 & Ex. C thereto.

As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers in support of the Settlement on October 7, 2019, after the deadline for requesting exclusions or objecting has passed. Lead Plaintiff's reply papers will address any requests for exclusion and objections received and/or filed.[10]

\*       \*       \*

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors support a finding that the Settlement is fair, reasonable, and adequate. Final

---

[10] Lead Plaintiff will submit an updated [Proposed] Judgment Approving Class Action Settlement, which will include the final list of requests for exclusion.

approval is, therefore, appropriate.

## V.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In the Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation.  Lead Plaintiff now requests final approval of the Plan of Allocation. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate."  *Omnivision*, 559 F. Supp. 2d at 1045.

The Plan of Allocation, as detailed in ¶¶ 99-106 of the Glancy Declaration, and set forth in the Notice (Ex. 3-A (Notice ¶¶ 49-67)), is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability asserted in the Action.  More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of PPG common stock was artificially inflated during the Settlement Class Period, due to Defendants' alleged materially false and misleading statements and omissions.  The Plan of Allocation is based on the premise that the decreases in the price of PPG common stock that followed the alleged corrective disclosures that occurred on April 19, 2018 and May 10, 2018 may be used to measure the alleged artificial inflation in the price of PPG common stock prior to these disclosures. ¶ 102; Notice ¶ 52.  An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of PPG common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants.

Lead Plaintiff and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members attributable to the conduct alleged in the AC.  ¶ 106.  To

date, no objections to the Plan of Allocation have been filed on this Court's docket.
¶ 107.  For these reasons, Lead Plaintiff respectfully requests that the Court approve
the proposed Plan of Allocation.

## VI.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

For all the reasons stated in the Preliminary Approval Order and Lead
Plaintiff's Unopposed Motion for Preliminary Approval of Settlement, Lead
Plaintiff respectfully requests that the Court grant final certification of the
Settlement Class under Rules 23(a) and (b)(3).  D.E. 121 at 3-5; D.E. 119 at 16-20.

## VII.  NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

For any class certified under Rule 23(b)(3), due process and Rule 23 require
that class members be given "the best notice practicable under the circumstances,
including individual notice to all members who can be identified through reasonable
effort."   Fed. R. Civ. P. 23(c)(2)(B).   The Notice provides all the necessary
information required by Rule 23(c)(2)(B) and satisfies the requirements of the
PSLRA, 15 U.S.C. § 78u-4(a)(7).  This Court has already found that the proposed
notice program is adequate and sufficient (*see* D.E. 121 at 6-7).  Lead Counsel and
JND carried out the notice program as proposed.   In sum, the notice program
detailed in ¶¶ 92-98 of  the Glancy aDeclaration and the Ewashko Declaration ¶¶ 2-
13 fairly apprises Settlement Class Members of their rights with respect to the
Settlement, and is the best notice practicable under the circumstances.

## VIII. CONCLUSION

For the reasons stated in this memorandum and in the Glancy Declaration,
Lead Plaintiff respectfully requests that the Court grant final approval of the
proposed Settlement and approve the proposed Plan of Allocation.

1    Dated: September 16, 2019       **GLANCY PRONGAY & MURRAY LLP**

2

3                             By: *s/ Lionel Z. Glancy*

4                             Lionel Z. Glancy
                                 Peter A. Binkow

5                             Robert V. Prongay
                                 Jason L. Krajcer

6                             Leanne H. Solish

7                             1925 Century Park East, Suite 2100
                                 Los Angeles, CA 90067

8                             Telephone: (310) 201-9150

9                             Facsimile: (310) 201-9160
                                 Email: lglancy@glancylaw.com

10

11                             *Lead Counsel for Lead Plaintiff*

12                             *and the Settlement Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.   On September 16, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on September 16, 2019, at Los Angeles, California.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy